# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BANNING LEWIS RANCH COMPANY, LLC, et al.,[1] | ) ) ) | Case No. 10-13445 (KJC) |
| | ) | |
| Debtors. | ) ) | (Joint Administration Pending) |

## DECLARATION OF BARRY MARCUS IN SUPPORT OF FIRST DAY MOTIONS

I, Barry Marcus, hereby declare as follows:

1. I am an authorized representative of Greenfield BLR Manager, LLC, the general partner of Greenfield BLR Partners, LP, the co-managing member of The Banning Lewis Ranch Company, LLC ("Banning"). Banning is the managing member of Banning Lewis Ranch Development I & II, LLC ("Devco" and together with Banning, the "Debtors").

2. To minimize the immediate adverse effects on the Debtors of filing for chapter 11 protection, the Debtors are filing a number of motions requesting various types of "first day" relief (collectively, the "First Day Motions"). I am familiar with the contents of each First Day Motions (including the exhibits and other attachments thereto), and I believe that the relief sought in each First Day Motion: (i) is necessary to enable the Debtors to operate in Chapter 11 with minimum disruption or loss of value, (ii) is critical to the Debtors' achievement of a successful sale or reorganization; and (iii) best serves the Debtors' estates and the interest of the Debtors' creditors.

3. I submit this declaration (the "Declaration") in support of the First Day Motions.[2] Except as otherwise indicated, all statements set forth in this affidavit are based upon: (i) my

---

[1] The Debtors in these proceedings, along with the last four digits of each Debtors' federal tax identification number, are The Banning Lewis Ranch Company, LLC (4090) and Banning Lewis Ranch Development I & II, LLC (3461). The Debtors' corporate headquarters and the service address for each Debtor is 4100 MacArthur Boulevard, Suite 100, Newport Beach, CA 92660.

personal knowledge, (ii) documents and other information prepared or collected by the management, employees, and professionals of the Debtors, (iii) my review of relevant documents, or (iv) my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this Declaration on behalf of the Debtors.

4. Part I of this Declaration describes the Debtors' business, capital structure and the circumstances surrounding the commencement of these chapter 11 cases. Part II sets forth the relevant facts in support of the First Day Motions.

## PART I

## OVERVIEW OF THE DEBTOR'S BUSINESS OPERATIONS, CAPITAL STRUCTURE, AND CIRCUMSTANCES SURROUNDING THE COMMENCEMENT OF THE CHAPTER 11 CASES

5. The Debtors commenced these cases by filing voluntary petitions on October 28, 2010 (the "Petition Date"). The Debtors are continuing in the possession of their property and have continued to operate and manage their businesses as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this case and no official committee has yet been appointed by the U.S. Trustee.

A. **Description of the Debtors' Business**

6. In June 2004, Banning Lewis Ranch Management Company, LLC ("Management")[3], Makar BLR Investors, LLC ("BLR Investors"), Greenfield BLR Partners, LP

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Motion.
[3] Management is the successor in interest to Makar Properties, LLC, the original signatory to the Operating Agreement.

-2-

("Greenfield"), and Farallon BLR Investors, LLC ("Farallon")[4] entered into the Operating Agreement that established Banning.

7. Banning was founded to develop approximately 20,000 acres of land in eastern Colorado Springs, Colorado. The land was ultimately to be developed as a community of some 76,000 residential units and approximately 79 million square feet of commercial space (the "Property").

8. In early 2005, Devco was created to own and develop the first portion of the Property to be developed. On or about March 31, 2005, Banning contributed approximately 2,700 acres of the Property to Devco and became Devco's 99.9% equity owner.[5]

9. Banning's primary business purpose is to own and manage its interest in Devco and to hold for investment the portion of the Property that Banning owns. Devco's primary business purpose is to own and develop the portion of the Property it owns, and to market and sell developed lots to merchant builders who then construct and sell houses on those lots. The Debtors do not have any employees; rather, the Debtors contract with a management company to secure, manage and market the Property.

10. The national downturn in the economy and, in particular, the decline in residential real estate, has severely impacted Banning and Devco. Revenues from lot sales are far below projections at the same time that the value of their holdings as collateral for loans has precipitously declined.

---

[4] Management is an enterprise controlled by Hadi Makarechian. Greenfield and Farallon are companies that invest the assets of major educational endowments and similar investors.

[5] The remaining, 0.1% interest was transferred to another Delaware limited liability company, MFG I and II, LLC ("MFG"), which is also owned by members of Banning, in the same percentages as Banning is owned.

11. To the extent the Debtors sell developed lots to builders, or sell other portions of the Property, the Debtors receive income from proceeds of the sale. The Debtors also have existing builder contracts for future lot sales.

**B.    Devco's Liabilities and Assets**

12. Devco's liabilities now far exceed the value of its assets. First, Devco has borrowed under a revolving loan (the "Revolving Loan") obtained from a group of lenders for whom KeyBank National Association ("KeyBank") is the agent. The amount currently owed under the Revolving Loan totals approximately $65.5 million. The Revolving Loan is secured by substantially all of the assets of Devco.

13. In addition to the Revolving Loan, Devco is burdened by a $105.3 million mezzanine loan (the "Mezzanine Loan") from Greenfield and Farallon, secured by the members' ownership interests in Banning.

14. Although disputed by Greenfield, Farallon, and the Debtors, Management has alleged a claim against Devco totaling approximately $16.0 million in management fees as of August 31, 2010.

15. Together, the undisputed Devco obligations outlined above total approximately $170.8 million, or $186.8 million if the disputed obligations are ultimately allowed.

16. Devco's assets comprise the land which remains unsold from the approximately 2,000 acres of land that were transferred to it by Banning. Approximately 1,000 lots have been developed for building, of which, about 500 have been sold to merchant builders. Merchant builders have constructed and sold approximately 200 homes on the lots that have been sold. The value of the remaining property is substantially less than Devco's current debt.

**C.    Banning's Liabilities and Assets**

17. Banning is also thoroughly insolvent. First, a second group of lenders, for whom

KeyBank is also agent, extended a $23.5 million term loan (the "Term Loan") to Banning. The Term Loan is secured by substantially all of Banning's property. Second, Banning guaranteed the Revolving Loan to Devco. Thus, in light of the tens of millions of dollars deficiency between the amount of the Revolving Loan and the maximum value of Devco's real estate, Banning will have an additional tens of million of debt to Devco's Revolving Loan lenders. Third, Banning owes Greenfield and Farallon another approximately $105.0 million under certain mezzanine loans. Fourth, Banning owes Greenfield and Farallon at least $42.6 million under the "Special Member Loans". Finally, though disputed by Greenfield, Farallon, and the Debtors, Management claims that it is entitled to a development fee from Banning totaling approximately $36.2 million. Taken together, the foregoing undisputed obligations of Banning total $171.1 million plus the deficiency claim on account of the revolving loan. If the disputed claim of Management is ultimately allowed, the Banning's liabilities increase to $207.3 million plus the deficiency claim on account of the revolving loan.

18. The value of Banning's assets - consisting principally of over 17,000 undeveloped acres of land – is substantially less than the $171.1 million in liabilities plus the deficiency claim on account of the revolving loan.

**D.     The Special Member Loans**

19. In February 2009, in response to the financial difficulties of Banning and Devco, Greenfield and Farallon began to make "Special Member Loans" pursuant to a Third Amendment to the Operating Agreement (the "Third Amendment"). As noted above, prior to the Petition Date, Greenfield and Farallon advanced approximately $35 million in Special Member Loans that now have a balance of $42.6 million including accrued interest. Management has taken the position that Greenfield and Farallon have an obligation to continue to make additional "Special Member Loans" to Banning. Greenfield and Farallon deny this obligation and believe

that the Third Amendment and the other operative documents authorize, but do not obligate, them to make Special Member Loans or any other loans or capital contributions. The Debtors have been informed that Greenfield and Farallon will not provide additional Special Member Loans.

E.  **Refusal to Provide Additional Financing and the Members' Subsequent Disputes**

21. As noted above, KeyBank is agent for lenders which are owed secured financing of approximately $88 million to Banning and Devco prior to September 2010. On or about September 21, 2010, KeyBank stated that it was no longer interested in further extending the maturity of, or otherwise restructuring, its debt. Indeed, KeyBank suggested to the Debtors, Management, Greenfield, and Farallon that the Debtors' assets were no longer worth the $88 million that KeyBank had provided.

22. On October 8, 2010, Greenfield and Farallon informed Management that, in light of the financial condition of the Debtors, they felt it would be an imprudent use of their investors' assets to extend further Special Member Loans or any other funding to the Debtors.

23. The absence of additional funding poses an imminent threat to the Debtors. The real-estate that Banning and Devco own require services to be performed and facilities to be maintained. If sources of funding cannot be secured, operations will cease, harming current residents and further damaging the value of the assets. This would result in a fire sale of assets at unreasonably low prices, seriously damaging the creditors of Debtors and the current residents of the developed Devco parcels.

24. Because the Debtors' existing debt to secured and unsecured creditors already far exceeds the value of their assets, no other financier, outside the protections of bankruptcy, will provide them with financing. But due to the protections provided bankruptcy "debtor in possession" lenders under Section 364 of the Code, financing for operating expenses should

become available and the Debtor is engaged in efforts to procure such financing in the near future.

F.  **Authorization of Bankruptcy Filing.**

25.  The majority of the Members of the Debtors approved resolutions dated October 27, 2010 authorizing the Debtors to file bankruptcy petitions and in furtherance of the bankruptcy cases, to hire Edward A. Phillips of Eisner-Amper, LLP as Chief Restructuring Officer ("CRO").

## PART II

## FIRST DAY MOTIONS

26.  To further their objectives, the Debtors expect to file a number of First Day Motions, outlined below, and proposed orders (the "Proposed Orders") and respectfully request that the Court consider entering the Proposed Orders granting such First Day Motions. I have reviewed each of the First Day Motions (including the exhibits thereto) and the facts set forth therein are true and correct to the best of my knowledge, information, and belief. Moreover, I believe that the relief sought in each of the First Day Motions and Proposed Orders (a) is vital to enable the Debtors to make the transition to, and operate in, chapter 11 with minimum interruption or disruption to their business or loss of productivity or value, and (b) constitutes a critical element in achieving the Debtors' goals for these chapter 11 cases.

27.  The Debtors will file the Debtors' Motion For An Order Directing Joint Administration Of The Debtors' Chapter 11 Cases. By this motion, the Debtors seek the joint administration and consolidation of their chapter 11 cases for procedural purposes only pursuant to section 105(a) of the Bankruptcy Code, Rule 1015(b) of the Bankruptcy Rules and Local Bankruptcy Rule 1015-1. The Debtors believe that, in light of their affiliated status and interrelated business operations, the joint handling of the administrative matters respecting these

cases – including, without limitation, the use of a single docket for matters occurring in the administration of the estates and the combining of notices to creditors – will aid in expediting these chapter 11 cases and rendering their administration more efficient and economical.

28. The Debtors will file the Debtors' Application for Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Cross & Simon, LLC as Bankruptcy Counsel *Nunc Pro Tunc* to the Petition Date. The Debtors desire to retain and employ Cross & Simon as bankruptcy counsel in these chapter 11 cases. The Debtors request that the Court enter an order authorizing the Debtors to employ and retain Cross & Simon as the Debtors' counsel, effective as of the Petition Date, to represent the Debtors in all phases of these chapter 11 cases.

29. The Debtors will file the Motion for Order Granting Debtors Additional Time to File Schedules and Statements. The Debtors request a brief extension of the time within which the Debtors must file their (a) schedules of assets and liabilities, schedules of current income and expenditures, and executory contracts and unexpired leases, and (b) statements of financial affairs (the "Schedules and Statements") for 30 days, up to and including December 10, 2010. The Debtors do not have any employees and are operated by their members. The Debtors have recently hired a CRO and the CRO is in the process of collecting the Debtors' books and records from the Debtors' members. The CRO has requested that each of the Debtors' members provide the information that is required for the filing of the Schedules and Statements. The Farrallon and Greenfield members have just begun providing the CRO and the Debtors' proposed counsel with the necessary information to prepare the Schedules and Statements. To date, Management has failed to cooperate with the CRO's and Debtor's counsel's information requests. The Debtors have made all efforts to prepare the Schedules and Statements and believe that, assuming they

receive appropriate cooperation and information from the Members, the short extension should provide enough time to finalize the Schedules and Statements.

30. The Debtors will file the Debtors' Motion for an Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals. The Debtors seek entry of an order pursuant to sections 105(a) and 331 of the Bankruptcy Code authorizing and establishing an orderly, regular process for allowance and payment of compensation and reimbursement for attorneys and other professionals whose services are authorized by this Court pursuant to sections 327, 1103 or 1107 of the Bankruptcy Code and who will be required to file applications for allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code.

31. The Debtors will file the Motion of the Debtors for an Order Authorizing the Debtors to Enter into an Agreement with Edward Phillips to Provide Financial and Operational Services Pursuant to 11 U.S.C. §§ 363(b) and 105(a). The Debtors seek authority from the Court to enter into an agreement with Edward Phillips, as of the Petition Date, employing Mr. Phillips as the Debtors' CRO.

I declare under penalty of perjury under the laws of the United States of America and the State Law of Connecticut that the foregoing is true and correct.

Dated this 4th day of November, 2010

/s/ *Barry Marcus*
Barry Marcus