# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| The Banning Lewis Ranch Development Company, LLC, | ) ) | Case No.: 10-13445 (KJC) |
| Debtor. | ) ) | |
| | ) | |
| In re: | ) ) | Chapter 11 |
| Banning Lewis Ranch Development I & II, LLC, | ) ) ) | Case No.: 10-13446 (KJC) |
| Debtor. | ) ) ) | **Objection Deadline: November 19, 2010 at 4:00 p.m. (proposed)** **Hearing Date: November 24, 2010 at 2:30 p.m. (proposed)** |

## MOTION OF COLORADO SPRINGS TO TRANSFER VENUE

City of Colorado Springs, a Colorado Municipal Corporation and Home Rule City, on behalf of its Enterprise Colorado Springs Utilities ("Colorado Springs"), by its attorneys Sherman & Howard L.L.C. and Sullivan Hazeltine Allinson LLC, hereby files this Motion to Transfer Venue (the "Motion"). In support of its Motion, Colorado Springs states:

### I. SUMMARY OF ARGUMENT

1. Under familiar principles of law governing the venue of bankruptcy cases, the United States Bankruptcy Court for the District of Colorado is the proper forum for these bankruptcy cases. Pursuant to Section 1412 of Title 28 of the United States Code, transferring the venue of these bankruptcy cases to Colorado would serve the interests of justice and the convenience of the parties for the following reasons:

   (a) the primary assets of the Debtors are a large real estate development located within Colorado Springs;

   (b) the orderly development of the Banning Lewis Ranch is essential to the City of Colorado Springs and to its citizens;

(c) the day-to-day business operations of the Debtors, *i.e.*, the development of Banning Lewis Ranch, are administered from Colorado;

(d) these bankruptcy cases can be administered more efficiently in Colorado;

(e) the majority of creditors in number, particularly relatively small trade creditors, are located in Colorado;

(f) Colorado law governs many important issues involving these Debtors including issues relating to inter-governmental agreements, annexation agreements, utility and infrastructure agreements, priority of liens, and rights of special districts;

(g) Colorado Springs has a very important interest in having local controversies decided by Colorado courts.

## II. PARTIES, JURISDICTION, AND VENUE

2. Banning Lewis Ranch Development I & II, LLC ("BLRD") and The Banning Lewis Ranch Co., LLC ("BLRC") (collectively, the "Debtors") filed their voluntary chapter 11 bankruptcy petitions on October 28, 2010. Both Debtors are limited liability companies formed under the laws of the State of Delaware. Both Debtors are authorized to conduct business in the State of Colorado.

3. No statutory committees have been formed, and no trustees or examiners have been appointed.

4. The City of Colorado Springs is a Colorado municipal corporation and home rule city. Colorado Springs Utilities is an enterprise of the City of Colorado Springs pursuant to Article X, Section 20 of the Colorado State Constitution and Article VII, Section 7-90 of the Charter of the City of Colorado Springs.[1] Colorado Springs is a party in interest in these bankruptcy cases.

---

[1] These sections are commonly known as the Taxpayer's Bill of Rights and restrict a governmental entity's ability to increase revenue through taxes or debt. Subjection to certain conditions, revenue generated by an enterprise (such as the Colorado Springs Utilities) is not included within the calculations of revenue under these sections.

2

5. This Court has jurisdiction over these bankruptcy cases pursuant to 28 U.S.C. § 1334.

6. Pursuant to 28 U.S.C. § 1408, these bankruptcy cases may be commenced in this Court only because each of the Debtors is a Delaware entity.

7. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

8. The statutory bases for the relief requested in this Motion are 11 U.S.C. § 105(a), 28 U.S.C. § 1412, and Fed.R.Bankr.P. 1014.

### III. PROCEDURAL HISTORY

9. These bankruptcy cases are in their infancy. No substantive orders have been entered by the Court. In fact, no substantive motions have been filed. Debtors have filed motions to retain counsel and a chief restructuring officer, motions for joint administration of their bankruptcy cases, motions to extend their deadlines to file schedules, and a motion for order establishing procedures to compensate professionals. A hearing on the motions filed by Debtors is scheduled for November 24, 2010.

10. It appears these bankruptcy cases are administratively insolvent. Debtors admit that BLRD's "liabilities now far exceed the value of its assets," and that BLRC "is also thoroughly insolvent." *See* Declaration of Barry Marcus In Support Of First Day Motions (Docket No. 6 in Case No. 10-13445) ("Marcus Declaration"), ¶¶ 12 and 17. Debtors and their lender, KeyBank National Association (which claims it has a senior lien on substantially all of Debtors' assets) has not agreed to the use of cash collateral and has not agreed to the terms of a DIP financing facility. *See* Statement and Reservation of Rights of KeyBank National Association, as Administrative Agent (Docket No. 18 in Case No. 10-13445).

11. It appears that very little preparation occurred before Debtors filed their bankruptcy cases. Mr. Marcus speculates, without providing any factual support whatsoever,

3

that "financing for operating expenses should become available and the Debtor is engaged in efforts to procure such financing in the near future." Id., ¶ 24.

## IV. FACTUAL BACKGROUND

12. Debtors are the developers of a more than 21,000 acre development on the east side of Colorado Springs, Colorado. The development is called Banning Lewis Ranch. Attached to this Motion as Exhibit A is a map showing the location of Banning Lewis Ranch within Colorado Springs. Debtors admit that their "primary business purpose" is to own and manage Banning Lewis Ranch. Debtors have no employees. Debtors contract with a management company, upon information and belief Banning Lewis Ranch Management Company, LLC, to manage the development of Banning Lewis Ranch. *See* Marcus Declaration, ¶ 9.

13. Debtors are the majority property owners within seven special districts within Banning Lewis Ranch. As a result, Debtors control the boards of these special districts. Under Colorado law, "special districts are political subdivisions of the state and are created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them." *See Johnson Hanes, Inc. v. Southwest Metropolitan Water and Sanitation District*, 725 P.2d 12, 13 (Colo. Ct. App. 1986); C.R.S. § 32-1-103(20) ("Special district means any quasi-municipal corporation and political subdivision organized or acting pursuant to the provisions of this article."). Among other things, the Banning Lewis Ranch metropolitan districts provide the funding for infrastructure development through, among other things, taxes and debt financing (although it does not appear the special districts have issued debt obligations as of yet). Attached to this Motion as Exhibit B is a graph depicting the special districts that the Debtors control within Banning Lewis Ranch.

14. Other than being the state under whose laws the Debtors are formed, these bankruptcy cases have no connection whatsoever to Delaware. Based upon the List of Creditors

4

Holding 20 Largest Unsecured Claims attached to the Debtors' bankruptcy petitions, not a single creditor is located in Delaware. Upon information and belief, the Debtors have no assets in Delaware.

15. By contrast, almost all of the Debtors' significant connections are with Colorado. On their bankruptcy petitions, each Debtor identifies the location of its principal asset as "Banning Lewis Ranch, Colorado Springs, El Paso, County, Colorado." Excluding what appear to be affiliated entities or entities that own Debtors' equity interests, the majority of the unsecured creditors of BLRD are located in Colorado. *See* List of Creditors Holding 20 Largest Unsecured Claims filed with petition in Case No. 10-13446.[2] This is no surprise because the Debtors' primary asset is a more than 21,000 development located in Colorado. Although the Debtors have not yet filed their schedules, it is very likely that the vast majority of the Debtors' trade creditors will be located in Colorado.

16. Colorado Springs is a party in interest in these bankruptcy cases. Colorado Springs and Debtors are parties to the following agreements:

 (a) Modified and Restated Wastewater Facilities Participation, Utilization, and Service Agreement, entered into the 10th day of February, 2009, by and between Colorado Springs Utilities, an enterprise of the City of Colorado Springs, a Colorado home rule city and municipal corporation, and The Banning Lewis Ranch Company, LLC and Banning Lewis Ranch Development I & II, LLC, as amended and modified from time to time (the "Wastewater Facilities Agreement");

 (b) Assignment Agreement entered into the 23rd day of June, 2010, by and between the City of Colorado Springs, on Behalf of Its Utility Enterprise, Colorado Springs Utilities, The Banning Lewis Ranch Company, LLC and Banning Lewis Ranch Development I & II, LLC, and Banning Lewis

---

[2] According to the List of Creditors Holding 20 Largest Unsecured Claims filed with BLRC's bankruptcy petitions, its only creditors are KeyBank and insiders.

5

Ranch Regional Metropolitan District, formerly known as Banning Lewis Ranch Metropolitan District No. 6 (the "Assignment Agreement");[3]

(c) Annexation Agreement made and entered the 23rd day of September 1988 and Recorded with the clerk and recorder of El Paso County, Colorado on September 23, 2008, at Book 5557, Page 405 (the "Annexation Agreement"); and

(d) Colorado Springs Utilities Electric Extension Agreement Banning Lewis Ranch, effective as of March 30, 2006, by and between Banning Lewis Ranch Development I & II, LLC and Colorado Springs Utilities, as amended.

## V.    ARGUMENT

17. The convenience of the parties and the interests of justice dictate that venue of these bankruptcy cases should be transferred to the United States Bankruptcy Court for the District of Colorado.

A. <u>The Applicable Statutes</u>

18. 28 U.S.C. § 1408 authorizes the filing of these bankruptcy cases in Delaware because both Debtors were formed under the laws of the State of Delaware. *See, e.g., In re Innovative Communication Co.*, 358 B.R. 120, 125 (Bankr. D. Del. 2006) ("Venue is appropriate in the state of incorporation").

19. Even when venue initially is proper in the court where a debtor files its bankruptcy case, a bankruptcy court "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." *See In re B.L. of Miami, Inc.*, 294 B.R. 325, 328 (Bankr. D. Nev. 2003); 28 U.S.C. § 1412; *see also* Fed.R.Bankr.P. 1014(a) ("If a petition is filed in the proper district, the court . . . may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for

---

[3] Pursuant to the Assignment Agreement, Debtors assigned the Wastewater Facilities Agreement to Banning Lewis Ranch Regional Metropolitan District, formerly known as Banning Lewis Ranch Metropolitan District No. 6, which then assigned the Wastewater Facilities Agreement to Banning Lewis Ranch Metropolitan District No. 1, pursuant to an Intergovernmental Assignment Agreement. Debtors remain obligated under the Wastewater Facilities Agreement in the event of a default by the Districts.

the convenience of the parties."); *see also Innovative Communication*, 358 B.R. at 127 (on motion to transfer venue, "the place of incorporation is not the controlling factor").

B.  Applicable Case Law Heavily Favors Venue in Colorado

20. Venue motions are decided based upon the specific facts of each case, weighed in light of the broad purposes of convenience and fairness. *See In re Eclair Bakery Ltd.*, 255 B.R. 121, 141 (Bankr. S.D.N.Y. 2000) (interests of justice is "a broad and flexible standard that must be applied on a case by case basis"); *In re Condor Exploration, LLC*, 294 B.R. 370, 378 (Bankr. D. Colo. 2003) ("When considering the interests of justice standard for purposes of determining whether to transfer the venue of a bankruptcy case, the court applies a broad and flexible standard, considering whether the transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness.") (citation omitted).

21. The factors courts often consider when evaluating the convenience of parties are:

   (a) proximity of creditors of every kind to the court;

   (b) proximity of the debtor;

   (c) proximity of witnesses who are necessary to the administration of the estate;

   (d) the location of the debtor's assets;

   (e) the economic administration of the estate; and

   (f) the necessity for ancillary administration in the event of liquidation.

*Innovative Communication*, 358 B.R. at 126 (citing *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979). As noted in *Innovative Communication*, the factors to be considered include both private interests and public interests. *See id.*

22. In addition, bankruptcy courts recognize the preference to have important matters of public concern decided by local courts. *See, e.g., Condor Exploration*, 294 B.R. at 378 (many

7

courts have included as a significant consideration, 'a state's interest in having local controversies decided within its borders'") (citation omitted). Debtors' control of the special districts, which are political subdivisions of the state under Colorado law, heavily favors venue in Colorado. *Cf. Innovative Communication*, 358 B.R. at 127 (noting the local public interest in the U.S. Virgin Islands is "great" where the debtors owned companies that function as the telephone, newspaper, and other public communication vehicles in the U.S. Virgin Islands).

23. Finally, many bankruptcy courts have held that the venue of a case involving the development of real estate belongs in the state where the real estate is located. *See, e.g., In re B.L. of Miami, Inc.*, 294 B.R. 325, 332 (Bankr. D. Nev. 2003) ("Where a debtor's assets consist solely of real property, as with Debtor in this case, courts 'have held that transfer of venue is proper because "[m]atters concerning real property have always been of local concern and traditionally are decided at the situs of the property.'") (citation omitted); *In re Pinehaven Assocs.*, 132 B.R. 982, 989 (Bankr. E.D.N.Y. 1991) ("There is ample authority for the proposition that a real estate case . . . can be most efficiently and economically administered in the bankruptcy court closest to its major asset, and that the Chapter 11 case can best unfold there.") (string cite omitted); *Condor Exploration*, 294 B.R. at 379 (noting that venue should be in the jurisdiction where debtor's oil and gas leases are located).

C. Application of Factors in This Case Mandates Transfer of Venue to Colorado

(a) Most Creditors are Located in Colorado.

24. Debtors are developers of Colorado real estate. It is very likely that the majority of their creditors are located in Colorado, including both private creditors and Colorado governmental entities.[4] The claims of insiders are not entitled to as significant consideration as

---

[4] Because Debtors have not yet filed their schedules, the best source of the location of creditors is the list of top 20 unsecured creditors filed with the bankruptcy petitions.

8

claims of outside creditors on a motion to transfer venue. *See In re B.L. of Miami*, 294 B.R. at 331 (discounting the significance of the claim of debtor's parent when considering whether to transfer venue).

      (b)      <u>Proximity of the Debtor.</u>

      25.      The Debtors' assets are located in Colorado and its business operations are conducted in Colorado. *See B.L. of Miami*, 294 B.R. at 331 (focusing on location of debtor's primary asset in analyzing proximity of the debtor). According to Debtors, their principal place of business is in California. That factor is not entitled to significant consideration because the choice of venue is between Colorado and Delaware. Moreover, many courts determine a debtor's principal place of business based upon an "operational test," including the location of day-to-day activities. *See Condor Exploration*, 294 B.R. at 374. Using an operational test, these Debtors' principal place of business is in Colorado.

      (c)      <u>Proximity of Witnesses Necessary to Administer the Estate Favors Colorado.</u>

      26.      Because Debtors' real estate is located in Colorado and many creditors are located in Colorado, many of the witnesses who will testify concerning issues important to the administration of the Debtors' estates are located in Colorado.

      27.      Colorado Springs is aware of no witness necessary to the administration of the estate that is located in Delaware. The Debtor has filed motions to retain professionals who are located in Delaware and Pennsylvania, and it appears that individuals that represent holders of the Debtors' equity interests may be located in Connecticut and California. The location of Debtors' professionals is not entitled to significant consideration on a motion to transfer venue. *See Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.)*, 282 B.R. 140, 146 (Bankr. D. Del. 2002) (convenience of counsel is not relevant to the determination of whether to transfer venue).

(d) <u>The Debtor's Assets are in Colorado.</u>

28. As stated above, the Debtors' assets are approximately 20,000 acres in Colorado Springs.

(e) <u>The Estate can be Administered Most Efficiently in Colorado.</u>

29. Based on the location of the Debtors' assets, creditors, and witnesses (as well as the substantive law that will govern many of the issues in these bankruptcy cases), these bankruptcy cases will be administered most efficiently in Colorado.

(f) <u>Ancillary Administration.</u>

30. Based upon the facts of these bankruptcy cases, a liquidation (whether through a section 363 sale or otherwise), is a realistic possibility. If the Debtors' assets must be liquidated, Colorado would have the "paramount interest" in the assets. *See Innovative Communications*, 358 B.R. at 128 n.16. In addition, a Colorado chapter 7 trustee would more efficiently administer the case than a Delaware chapter 7 trustee. *See Condor Exploration*, 294 B.R. at 380; *see also In re Abacus Broadcasting Corp.*, 154 B.R. 682, 684 (Bankr. W.D. Tex. 1993) (in deciding to transfer venue, noting: "Were it necessary to convert this case to chapter 7, the U.S. Trustee would routinely appoint a panel trustee in El Paso, but the trustee would then have to administer assets in a city 1,000 miles away"). Similarly here, if the bankruptcy cases were converted to a chapter 7 case for liquidation, it would be much easier for a Colorado chapter 7 trustee to administer these cases and Colorado would have the paramount interest in the liquidation of a large real estate development located in Colorado.

D. <u>Based Upon Important Matters of Local Concern to Colorado, These Bankruptcy Cases should be Administered by a Colorado Court</u>

31. As already stated, bankruptcy cases involving real estate developments should be administered in the state where the real estate is located. Bankruptcy cases in which

governmental units have a significant stake are also best administered in the local jurisdiction. *See Condor Exploration*, 294 B.R. at 379 ("regulatory agencies, local governmental units and general-creditor suppliers must play a crucial role in any bankruptcy case").

32. The interests of justice favor venue in the jurisdiction whose substantive law governs the issues in the case. *See, e.g., DHP Holdings II Corp. v. The Home Depot, Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 264, 275-76 (Bankr. D. Del. 2010) (agreeing that "local judges are more familiar with the applicable state law"); *Pinehaven Assocs.*, 132 B.R. at 1412 ("this inquiry would include looking into the desirability of having a judge familiar with applicable law hear and determine issues arising in the case").

33. In addition, a Colorado bankruptcy judge is better suited to handle a bankruptcy case for Debtors whose only business activities are in Colorado. The somewhat colorful language of the court in the *Abacus Broadcasting* case is highly relevant to this Motion:

> In bankruptcy especially, judicial notice is a jurisprudentially sound thing to do. We do not evaluate cases in splendid isolation from the outside world, nor should we. The enterprise that seeks reorganization must satisfy the court that it is a likely candidate for reorganization, that it has a fighting chance of surviving, even prospering, in the economic community in which it operates. How much more difficult it is for a judge to make such an evaluation without any personal experience with at least the general tenor of that economic community. What, for example, does a judge in Chicago, or Detroit, or Los Angeles, really know about the survivability of a restaurant on the Riverwalk in San Antonio? What do I know of the prospects of a small manufacturing enterprise in South Los Angeles? Can a judge in Pittsburgh have any real sense of the likelihood of reorganization of an oil drilling venture whose most valuable prospects are horizontal wells to be drilled in the Austin Chalk? What do I really know about the market for commercial boats operating out of Miami harbor? Granted a court cannot premise its decisions just on the 'gut feel' for the community (nor should it). It still requires hard evidence, in the form of testimony and the like. But that is not to say that the court's familiarity with milieu is not highly relevant, for it is. Better, then, that in evaluating a request for transfer of venue, the court take into account the extent to which a judge 'on the ground' as it were might more effectively

and efficiently (and perhaps even more fairly) administer the case than might a judge far removed from the debtor's operations.

*Abacus Broadcasting*, 154 B.R. 682, 685-86 (Bankr. W.D. Tex. 1993).

34. Finally, Delaware bankruptcy courts have consistently held that a debtor's choice of forum must give way to the interests of justice and convenience of the parties when other relevant factors favor venue in another jurisdiction. *See In re First New England Dental Centers, Inc.*, Case No. 98-347 (PJW) (transferring venue and noting: "this Chapter 11 case is not a national case, *i.e.*, one where assets and parties in interest with substantial claims are scattered throughout the country"); letter op. at 9-10 (Bankr. D. Del. March 20, 1998) (attached hereto as Exhibit C); *In re Ernst Home Center, Inc., et al.*, Case Nos. 96-1088 and 96-1089 (PJW) (Jointly Administered), portion of transcript of hearing on August 28, 1996, at 3 (Bankr. D. Del. 1996) (attached hereto as Exhibit D) (transferred chapter 11 case to location of Debtors' "nerve center"); *see also In re Windsor Energy U.S. Corp., et al.*, Case Nos. 98-1933 and 98-1934 (PJW) (Jointly Administered), portion of transcript of hearing on September 28, 1998, at 123 (Bankr. D. Del. 1998) (attached hereto as Exhibit E) (transferring case to state of principal operating subsidiary's operations because transfer would cause no inconvenience to debtor or "major players"). Here, these bankruptcy cases are not "national cases." Further, they are clearly centered around Colorado. Under these circumstances, venue should be transferred to the Colorado Bankruptcy Court.

35. These bankruptcy cases involve Colorado real estate, Colorado creditors (both private and public entities), and local issues of particular concern to Colorado. Both the convenience of the parties and the interests of justice weigh heavily in favor of venue in Colorado.

36. In short, venue of these cases should be in Colorado because Colorado has the "paramount interest" in these bankruptcy cases.

## VI. CONCLUSION

37. For all of the foregoing reasons, the venue of these bankruptcy cases should be transferred to Colorado.

Dated: November 12, 2010
Wilmington, Delaware

SULLIVAN • HAZELTINE • ALLINSON LLC

*/s/ William A. Hazeltine*
William A. Hazeltine (No. 3294)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
whazeltine@sha-llc.com

and

Peter A. Cal (Pro Hac Vice Motion pending)
Mark L. Fulford (Pro Hac Vice Motion pending)
SHERMAN & HOWARD L.L.C.
633 17th Street, Suite 3000
Denver, CO 80202
Phone: 303-297-2900
Fax: 303-298-0940
E-Mail:   pcal@shermanhoward.com
          mfulford@shermanhoward.com

*Attorneys for City of Colorado Springs, a Colorado Municipal Corporation and Home Rule City, on Behalf of Its Enterprise Colorado Springs Utilities*