# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-13445 (KJC) |
| THE BANNING LEWIS RANCH COMPANY, LLC, *et al.*,[1] | ) ) | (Joint Administration Pending) |
| | ) | |
| Debtors. | ) | Hearing Date: November 17, 2010 at 1:30 p.m. |
| | ) | Objections Due: November 17, 2010 at 1:30 p.m. |

## MOTION OF THE DEBTORS PURSUANT TO SECTIONS 361, 363(c) AND 363(e) OF THE BANKRUPTCY CODE, RULES 4001(b) AND (d) OF THE BANKRUPTCY RULES AND LOCAL RULE 4001-2 FOR: (A) ENTRY OF INTERIM ORDER (i) APPROVING INTERIM USE OF CASH COLLATERAL, (ii) PROVIDING FOR ADEQUATE PROTECTION, (iii) SCHEDULING FINAL HEARING ON USE OF CASH COLLATERAL, AND (iv) APPROVING FORM AND MANNER OF NOTICE OF THE FINAL HEARING; AND (B) ENTRY OF FINAL ORDER APPROVING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

The above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submit this motion (the "Motion") pursuant to Sections 361, 363(c) and 363(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for (a) entry of an interim order (the "Interim Order"), substantially in the form annexed hereto, (i) approving the interim use of certain cash (the "Cash Collateral") for the payment of expenses critical to the current operation of the Debtors' business and the administration of their estates, (ii) providing for adequate protection, (iii) scheduling a hearing on the final use of Cash Collateral (the "Final Hearing"), and (iv) approving the form and manner of notice of the Final Hearing; and (b) entry

---

[1] The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification number, are The Banning Lewis Ranch Company, LLC (4090) and Banning Lewis Ranch Development I & II, LLC (3461). The Debtors' corporate headquarters and the service address for each Debtor is 4100 MacArthur Boulevard, Suite 100, Newport Beach, CA 92660.

of a final order (the "Final Order") approving the use of Cash Collateral and providing adequate protection. In support of this Motion, the Debtors respectfully represents:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M). Venue of this case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 361, 363(c) and 363(e) of the Bankruptcy Code.

## BACKGROUND

3. On October 28, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors intend to continue in the possession of their property and assets and the manage their businesses as a debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the declaration of Barry Marcus (the "Marcus Declaration"), fully incorporated by reference.

4. No trustee, examiner or official committee of unsecured creditors has been appointed in these cases to date.

5. The Debtors own and maintain approximately 20,000 acres of mostly undeveloped land located in Colorado Springs, Colorado (the "Property"). In early 2005, Banning Lewis Ranch Development I & II, LLC was created to own and develop the first portion of the Property to be developed. On or about March 31, 2005, The Banning Lewis Ranch

Company, LLC contributed approximately 2,700 acres of the Property to Banning Lewis Ranch Development I & II, LLC. Banning Lewis Ranch Development I & II, LLC's primary business purpose is to own and develop the portion of the Property that it owns, and to market and sell developed lots to merchant builders who then construct and sell houses on those lots. The Banning Lewis Ranch Company, LLC's primary business purpose is to own and manage its interest in Banning Lewis Ranch Development I & II, LLC and to hold, for investment purposes, the remainder of the Property. The Debtors do not have any employees; rather, the Debtors contract with a management company to secure, manage and market the Property.

6. Prior to the Petition Date, the Debtors obtained loans from a group of lenders for which KeyBank National Association ("KeyBank") acts as agent. On information and belief, the Debtors have granted KeyBank a security interest in considerably all of the assets of the Debtors, including the Property and the Debtors' cash.

7. To the extent the Debtors sell lots to builders, or sell other portions of the Property, the Debtors receive income from proceeds of the sale. The Debtors also have existing builder contracts for future lot sales. The Debtors do have cash in their bank accounts from sales prior to the Petition Date, as well as cash from loan proceeds. As of the Petition Date, the Debtors have approximately $130,000 in cash on hand, located in bank accounts at KeyBank and Wells Fargo.[2] The Debtors intend to use portions of this cash, with KeyBank's consent, to pay operating expenses of the Property, including maintaining, securing and managing the Property. The Debtors have prepared a budget for the next thirty days (the "Cash Collateral Budget"), a copy of which is attached hereto as Exhibit "A". The Debtors are in the process of preparing a budget that will extend throughout the remainder of the chapter 11 cases.

---

[2] The Debtors have opened debtor-in-possession bank accounts and are in the process of transferring funds into those accounts.

9. Absent an immediate ability to access cash, the Debtors will have no ability to secure, maintain and otherwise manage the Property, which should be paramount to creditors in these cases.[3] The Debtors need the ability to pay, *inter alia*, the salaries of their property managers located in Colorado Springs, Colorado and the proposed Chief Restructuring Officer, telephone and T1 line expenses, offsite storage and data back-up fees. As a result, absent an ability to fund operations, the Debtors believe the collateral of KeyBank could be severely impaired.

10. KeyBank has consented to the Debtors' use of Cash Collateral on an interim basis. A stipulation to that effect is attached hereto as Exhibit "B" (the "Stipulation").

## RELIEF REQUESTED

11. The Debtors respectfully request that the Court authorize, on an interim and final basis, the Debtors' use of Cash Collateral pursuant to the terms and conditions of the Interim Order. The Debtors further seek an order deeming KeyBank adequately protected for the Debtors' use of Cash Collateral due to the fact that KeyBank is fully over-secured in the Property and other assets of the Debtors, the Debtors propose granting replacement liens in their assets as they are replenished, and the Debtors propose making payments to KeyBank, to the extent practicable and permitted by the Court.

## SUMMARY OF ESSENTIAL TERMS

12. The Interim Order contains the following salient provisions, without limitation:

Terms of Use:

- The Debtors are authorized to use Cash Collateral on an interim basis for the period from the Petition Date through December 21,

---

[3] Concurrently with this Motion, the Debtors are actively seeking DIP financing to fund operations and expenses

2010.

- The Debtors' use of Cash Collateral cannot exceed the monthly amounts set forth in the Cash Collateral Budget except as provided in the Interim Order.

Adequate Protection:

- Granting KeyBank replacement liens up to the amount of the Collateral Diminution in value of Cash Collateral in any other assets that are purchased or earned after the Petition Date. For purposes of this Motion, "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value of the Cash Collateral, from and after the Petition Date for any reason, including without limitation, depreciation, sale, loss or use of the Cash Collateral, whether in accordance with the terms and conditions of this the Stipulation or otherwise.

## APPLICABLE AUTHORITY

13. Pursuant to Section 363(c)(2) of the Bankruptcy Code, a debtor in possession may use cash collateral with the consent of all parties having an interest in the cash collateral or with the approval of the Court. See 11 U.S.C. § 363(c)(2)(A) and (B). By obtaining approval to use cash collateral, a debtor can continue to operate its business and maintain and enhance the value of its lender's collateral. See In re River Oaks Ltd. P'ship, 166 B.R. 94 (E.D. Mich. 1994); In re T.H.B. Corp., 85 B.R. 192, 195 (Bankr. D. Mass 1988) ("The stream of cash collateral will likely remain at an approximate even level over a sustained period, with new proceeds replacing old. The constant nature of this stream gives the [banks] protection for [their] cash collateral.");

---

until the Debtors' bankruptcy cases are resolved.

In re Constable Plaza Assocs., L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor entitled to use cash collateral to operate and maintain office building, thereby protecting prepetition lender's collateral).

14. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property used or proposed to be used by the debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. See 11 U.S.C. §363(e). Section 361 states that adequate protection under section 363 may be provided by granting additional or replacement liens or by granting other relief only to the extent that there is a decrease in the value of the collateral. See 11 U.S.C. § 361.

15. Bankruptcy Rule 4001(b) supplements section 363(c) and authorizes the Court to enter an order approving a debtor's use of cash collateral. Rule 4001(b) provides that a final hearing on the motion to use cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary hearing on such a motion on an expedited basis and to authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the debtor's estate. See Fed.R.Bankr.P. 4001(b)(2).

16. Bankruptcy Rule 4001(b) authorizes the Court to approve use of cash collateral as set forth in the Stipulation.

17. Pursuant to Bankruptcy Rules 4001(b), the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and authorize the Debtors to use Cash Collateral on an interim basis pursuant to the terms and conditions of the Stipulation.

## NEED FOR USE OF CASH COLLATERAL

18. On information and belief, KeyBank has asserted a lien the Debtors' cash. The

Debtors seek authorization to use Cash Collateral to fund the payment of all operating expenses incurred on and after the Petition Date, as set forth in the Stipulation and the Cash Collateral Budget attached thereto.

19. The Debtors' need to use Cash Collateral during the course of this case is most compelling. The failure of the Debtors to obtain immediate use of cash collateral would have a materially adverse effect on the Debtors' estates and their creditors. Without the immediate use of cash collateral, the Debtors will be unable to pay the expenses associated with securing and maintaining the Property (the collateral) or fund this bankruptcy case. Thus, Debtors' business operations and sole asset will be severely disrupted; importantly, KeyBank's collateral could be severely diminished absent lack of security and maintenance.

20. Since the Petition Date, the Debtors and third-parties have discussed implementation of a DIP financing facility. Additionally, the Debtors and KeyBank have discussed a DIP facility. Pending finalization of DIP financing, KeyBank has consented to the Debtors' use of Cash Collateral to fund administrative expenses incurred by the Debtors during the pendency of these chapter 11 cases, including, without limitation, (i) professional fees and expenses allowed by the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, (ii) fees payable under 28 U.S.C. § 1930 and related costs, (iii) the salaries of the Debtors' property managers located in Colorado Springs, Colorado and the proposed Chief Restructuring Officer, (iv) telephone and T1 line expenses, (v) offsite storage and data back-up fees, and (vi) other charges incurred in administering the Debtors' chapter 11 cases.

21. In sum, without immediate access to Cash Collateral, the Debtors' ability to maintain the Property will be crippled, which will cause immediate and irreparable harm. The ability of the Debtors to remain a viable entity and reorganize under chapter 11 of the

Bankruptcy Code therefore depends upon obtaining the relief requested herein.

## ADEQUATE PROTECTION

22. At present, KeyBank consents to the Debtors use of Case Collateral consistent with the Stipulation and Cash Collateral Budget. The Debtors believe that KeyBank is the only entity that has an interest in the Cash Collateral within the meaning of section 363(c)(2)(A) of the Bankruptcy Code.

23. Pursuant to the Interim Order, KeyBank derives significant protection from the preservation of the value of the Property and other assets of the Debtors. Moreover, the Debtors will grant KeyBank replacement liens in any assets, in accordance with the Stipulation.

24. Based upon the above and any arguments and evidence that may be submitted at the hearing on this Motion, the Debtors respectfully submit that they should be permitted to use Cash Collateral and to grant adequate protection to KeyBank as provided in the Stipulation.

## NOTICE

25. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to KeyBank; (iii) each of the Debtors' twenty (20) largest unsecured creditors; and (iv) any parties requesting notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

26. In addition, the Debtors propose to serve notice of the (a) entry of the order approving the Stipulation and (b) the Final Hearing upon: (i) the Office of the United States Trustee; (ii) counsel to KeyBank; (iii) each of the Debtors' twenty (20) largest unsecured creditors; (iv) counsel for any official committee appointed in this case; and (v) each person that has filed and served a request for notice in these chapter 11 cases, no later than two (2) business day after entry of the order approving the Stipulation.

## **NO PRIOR REQUEST**

27. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtors request entry of an order (i) approving the Stipulation and (ii) scheduling a Final Hearing on the Debtors' use of Cash Collateral and approving the form and manner of notice of such Final Hearing.

Dated: November 12, 2010
      Wilmington, Delaware

CROSS & SIMON, LLC

By: _____
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
913 N. Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
(302) 777-4200
(302) 777-4224 Facsimile
kmann@crosslaw.com

*Proposed counsel to the Debtors and Debtors-in-Possession*