# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE BANNING LEWIS RANCH COMPANY, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-13445 (KJC) |
| In re:<br><br>BANNING LEWIS RANCH DEVELOPMENT I & II, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-13446 (KJC)<br><br>(Joint Administration Pending) |

## STIPULATION AUTHORIZING
## USE OF CASH COLLATERAL

Banning Lewis Ranch Development I & II, LLC ("Devco") and The Banning Lewis Ranch Company, LLC ("BLRC", together with Devco, the "Debtors") and KeyBank National Association, as Administrative Agent ("Agent"), by and through their undersigned counsel, hereby stipulate and agree to an interim order authorizing the Debtors' use of Agent's and the Lenders' (as defined below) cash collateral (as that term is defined in section 363 of the Bankruptcy Code) ("Cash Collateral") on the terms and subject to the conditions contained in this Stipulation and Interim Order (the "Stipulation").

WHEREAS, Devco is the borrower under that certain Senior Secured Revolving Credit Agreement dated as of September 7, 2007 (as amended, the "Revolver Credit Agreement") by and among Devco as borrower, Agent and the lenders thereto (the "Revolver Lenders");

WHEREAS, BLRC guaranteed payment of Devco's obligations under the Revolver Credit Agreement;

WHEREAS, BLRC is the borrower under that certain Senior Term Loan Agreement dated as of September 7, 2007 (as amended, the "Term Loan Agreement") by and among BLRC, Agent and the lenders thereto (the "Term Lenders", together with the Revolver Lenders, the "Lenders");

WHEREAS, subject to paragraph one (1) below, Devco's obligations under the Revolver Credit Agreement are secured by first priority liens on substantially all of Devco's assets;

WHEREAS, subject to paragraph one (1) below, BLRC's obligations under the Term Loan Agreement are secured by first priority liens on substantially all of BLRC's assets;

WHEREAS, on October 28, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code;

WHEREAS, the Debtors do not currently have a source of post-petition funding ("DIP Financing"), although Agent and the Debtors, and the Debtors and third parties have been discussing, and continue discussions, regarding a potential DIP Financing facility;

WHEREAS, the Debtors cannot meet their post-petition obligations absent DIP Financing or use of Cash Collateral;

WHEREAS, absent the consensual use of Cash Collateral, the Debtors will not be able to maintain operations, and serious and irreparable harm to the Debtors, their estates, and the collateral securing the obligations under the Revolver Credit Agreement and the Term Loan Agreement would occur; and

WHEREAS, the Debtors and Agent have agreed to entry of this Stipulation to permit the Debtors to use Agent's and Lenders' Cash Collateral on an interim basis and subject to the terms and conditions outlined below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Debtors and Agent, on its own behalf and on behalf of the Lenders as follows:

1. <u>Acknowledgement of Indebtedness and Liens</u>. The Debtors stipulate that, as of the Petition Date, their obligations to Agent and the Lender under the Revolver Credit Agreement, the Term Loan Agreement, and the agreements, instruments, and documents the Debtors executed and delivered in connection thereto, constitute allowed secured claims to the extent permitted by section 506(a) of the Bankruptcy Code, and allowed unsecured claims to the extent they are not allowed secured claims, respectively, in amounts not less than the following:

    (a) Under the Revolver Credit Agreement, $67,840,767.23, consisting of $65,486,866.74 principal, $280,717.73 interest, $13,182.76 other charges, and $2,060,000 letters of credit (the "<u>Prepetition Revolver Debt</u>"); and

    (b) Under the Term Loan Agreement, $23,631,556.27, consisting of $23,500,000 principal, $127,866.12 interest, and $3,690.15 other charges (the "<u>Prepetition Term Debt</u>" and collectively, with the Prepetition Revolver Debt, the "<u>Prepetition Debt</u>").

The Debtors further stipulate that (i) Agent holds valid and perfected first priority liens and security interests (the "<u>Prepetition Devco Liens</u>") in substantially all of Devco's assets and all proceeds and products thereof (the "<u>Devco Prepetition Collateral</u>"), to secure the Prepetition Revolver Debt (ii) Agent holds valid and perfected first priority liens and security interests (the "<u>Prepetition BLRC Liens</u>" and collectively with the Prepetition Devco Liens, the "<u>Prepetition Liens</u>") in substantially all of BLRC's assets and all proceeds and products thereof (the "<u>BLRC Prepetition Collateral</u>" and collectively with the Devco Prepetition Collateral, the "<u>Prepetition Collateral</u>"), to secure the Prepetition Term Debt, and (iii) the parties acknowledge that the value

3

of the Devco Prepetition Collateral is equal to or exceeds the maximum amount of the Cash Collateral authorized to be used pursuant to this Stipulation and the value of the BLRC Prepetition Collateral is equal to or exceeds the maximum amount of the Cash Collateral authorized to be used pursuant to this Stipulation. The Debtors further stipulate that the Prepetition Liens are not subject to avoidance, subordination, recharacterization or defense pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

2. Notwithstanding anything contained herein to the contrary, the extent, validity, perfection and enforceability of the Prepetition Liens are for all purposes subject to, and only to, the rights of any statutory committee of unsecured creditors appointed in these cases (the "Committee"), or the right of any creditor, to file a complaint pursuant to Bankruptcy Rule 7001, seeking to invalidate, subordinate or otherwise challenge the validity or priority of the Prepetition Liens or the validity of the Prepetition Debt; provided, however, that if such complaint is not timely filed within the post-petition period ending on the latter of seventy-five (75) days from the entry of the Order approving this Stipulation or sixty (60) days after the formation of an Official Committee of Unsecured Creditors, if any, (i) the Debtors' obligations on account of the Prepetition Debt, and the Prepetition Liens, shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, perfected and senior to all other liens upon and claims against the Prepetition Collateral to the extent provided herein, and such finding shall be binding on all parties in interest in these cases. Nothing in this Stipulation confers standing on any third party or Committee (if one is appointed) to assert any claim on behalf of any Debtor or relieves the Committee from any requirement under the Bankruptcy Code or otherwise to obtain authorization from the Bankruptcy Court prior to asserting any claim on behalf of any Debtor.

3. <u>Consent to Interim Use of Cash Collateral</u>. Subject to the terms and conditions set forth in this Stipulation, and upon entry of an order of the Bankruptcy Court approving this Stipulation, Agent, on its behalf and on behalf of the Lenders, hereby authorizes and consents to the Debtors' use of Cash Collateral from the date hereof through and including December 21, 2010 (the "<u>Budget Period</u>"), unless such use is terminated earlier as set forth below.

4. <u>Use of Cash Collateral</u>. During the Budget Period, the Debtors shall use Cash Collateral solely to fund the expenses set forth in the budget attached hereto as Exhibit "A" (as such budget may be modified, in a non-material fashion, with the prior written consent of Agent, the "<u>Budget</u>"). The Debtors shall be permitted to use Cash Collateral by withdrawing funds from amounts on deposit in the Wachovia accounts identified in the Budget.

5. <u>Adequate Protection Liens</u>. As adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined below), and as an inducement to Agent and Lenders to permit Debtors' use of Cash Collateral as provided in this Stipulation, the Debtors hereby grant to Agent, on its behalf and on behalf of the Lenders: (i) valid, binding, enforceable, non-avoidable and perfected first-priority replacement liens and security interests (collectively, the "<u>Post-Petition Liens</u>") in and on (a) the Prepetition Collateral and (b) all other of the Debtors' now owned and hereafter-acquired real and personal property, assets and rights, of any kind or nature, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise (collectively, the "<u>Post-Petition Collateral</u>", together with the Prepetition Collateral, the "<u>Collateral</u>"), senior to any other security interests or liens, subject only to (x) the Prepetition Liens, (y) any non-avoidable, valid, enforceable and perfected security interests and rights that existed, or are deemed to exist, as of the Petition Date (if any) which are senior to the Prepetition Liens, and (ii)

an allowed superpriority administrative expense claim with priority over all other administrative expense claims in these cases as specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c), 503(b), 507(b), 726(b), 1113 and/or 1114 of the Bankruptcy Code, which superpriority administrative expense claim shall have recourse to and be payable from all pre-petition and post-petition property of the Debtors, including, without limitation, causes of action arising under the Bankruptcy Code (including all proceeds of the Debtors' rights in and claims and causes of action under sections 541, 542, 544, 545, 547, 548, 549, 550, 551, 522(b) and 553 of, and any other avoidance actions under the Bankruptcy Code. For purposes of this Stipulation, "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value of the Cash Collateral used pursuant to this Stipulation, from and after the Petition Date for any reason, including without limitation, depreciation, sale, loss or use of the Cash Collateral, whether in accordance with the terms and conditions of this Stipulation or otherwise.

6. <u>Automatic Perfection</u>. Without the necessity of the filing of Uniform Commercial Code financing statements, mortgages, deeds of trust or other documents, this Stipulation, once approved by the Bankruptcy Court, shall be sufficient evidence of Agent's perfected Post-Petition Liens. Notwithstanding the foregoing, the Debtors are authorized and directed to execute such documents including, without limitation, mortgages, deeds of trust, pledges and financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by Agent to provide further evidence of the perfection of the Post-Petition Liens as provided herein. A certified copy of this Stipulation may, in the discretion of Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all such filing

and recording offices are hereby authorized and directed to accept such certified copy of this Stipulation for filing and recording.

7. <u>Reporting Requirements</u>. The Debtors agree to furnish Agent with all reports and financial information reasonably requested by Agent. Agent and its advisors shall have access to Debtors' premises and the right to inspect and copy the Debtors' books and records upon reasonable prior notice.

8. <u>Insurance</u>. The Debtors will maintain insurance coverage on the Collateral as required by the agreements, instruments, and documents governing the Prepetition Debt. Such insurance policies will name Agent as a loss payee and additional insured under provisions that preclude the insurers from asserting any defenses against Agent that the insurers may have against the Debtors.

9. <u>Termination Date</u>. The Debtors' use of Cash Collateral shall terminate on the earliest to occur of (a) December 21, 2010; (b) dismissal or conversion of one or both of the Debtors' cases; (c) entry of an order by the Court granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than Agent with respect to any of the Collateral without the consent of Agent; and (d) appointment or election of a trustee or examiner with expanded powers beyond Bankruptcy Code Section 1104.

10. <u>Good Faith and Reasonableness</u>. The adequate protection arrangements agreed to hereunder have been negotiated in good faith and at arms' length, and the terms of such adequate protection are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment.

11. <u>Reservation of Rights</u>. This Stipulation and the transactions contemplated hereby shall be without prejudice to the rights of Agent to seek different adequate protection, move to

vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert these cases, or to take any other action and to appear and be heard in any matter raised in these cases.

12. **No Obligation to Lend.** Nothing contained in this Stipulation shall be construed to obligate Agent or any of the Lenders to make any loans or advances to the Debtors or to consent to or permit the use of any of the Collateral (including any remaining Cash Collateral) or Post-Petition Collateral except as set forth herein.

13. **Binding Nature.** The provisions of this Stipulation shall be binding upon any trustee appointed during these cases or upon a conversion to Chapter 7, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting either or both of these cases to a case or cases under Chapter 7, or dismissing either or both of these cases, or any order which may be entered confirming or consummating any plan of reorganization, and the terms and provisions of this Stipulation, as well as the priorities in payment, liens and security interests granted pursuant to this Stipulation, shall continue in these and any superseding cases under the Bankruptcy Code. If an order dismissing one or both cases is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the claims and liens granted pursuant to this Stipulation shall continue in full force and effect and shall maintain their priorities as provided herein until all adequate protection obligations and administrative claims granted have been satisfied; and (ii) notwithstanding such dismissal, this Court shall retain jurisdiction to the fullest extent possible for the purposes of enforcing the claims, liens and security interests granted in this Stipulation.

14. **Final Hearing.** A final hearing to consider approval of this Stipulation shall be held on Dec 21, 2010 at 11:30 a.m./~~p.m.~~ Eastern Time. The Debtors shall promptly

8

mail copies of this Stipulation to all parties requesting notices in these cases. Objections to the relief sought at the final hearing shall be filed and served so as to be received by counsel to the Debtors and counsel to Agent on or before 4:00 p.m. Eastern Time on Dec 14, 2010.

**STIPULATED AND AGREED:**

| | |
|---|---|
| **CROSS & SIMON, LLC** | **BUCHANAN INGERSOLL & ROONEY PC** |
| /s/Christopher P. Simon | /s/ Mary F. Caloway |
| Christopher P. Simon (No. 3697) | Mary F. Caloway (No. 3059) |
| Kevin S. Mann (No. 4576) | Mona A. Parikh (No. 4901) |
| 913 North Market Street, 11th Floor | The Brandywine Building |
| P.O. Box 1380 | 1000 West Street, Suite 1410 |
| Wilmington, Delaware 19899-1380 | Wilmington, Delaware 19801-1054 |
| Tel: (302) 777-4200 | Tel: (302) 552-4200 |
| Fax: (302) 777-4224 | Fax: (302) 552-4295 |
| Email: csimon@crosslaw.com | Email: mary.caloway@bipc.com |
| kmann@crosslaw.com | mona.parikh@bipc.com |
| | |
| *Proposed Counsel for Debtors and Debtors in Possession* | *Counsel to KeyBank National Association, as Administrative Agent* |

# Exhibit A

**Banning Lewis Ranch Company, LLC**
**Banning Lewis Ranch Development I & II, LLC**

Preliminary Cash Collateral Budget 11/11/10-12/21/10

|  | 11/11/2010 & 12/21/2010 |
|---|---|
| **Lot Sales** | |
| **Revenues** | |
| Lot Sales | - |
| Grazing Leases | $ 4,500 |
| **Total Revenues** | 4,500 |
| | |
| **Disbursements** | |
| Consultants (included in Engineering) | - |
| Consultants (Excluding Engineering) | |
| Subtotal Consultants | - |
| | |
| Project-level Legal | |
| Rent/Parking | |
| Equipment Leases | |
| Offsite Storage/Disaster Recovery | 525 |
| Communications | 1,116 |
| Other | |
| Subtotal Proj. Mgmt/Admin | 1,641 |
| | |
| Other Finance | |
| **Total Soft Costs** | 1,641 |
| Salaries/Consultants | 31,000 |
| Chief Restructuring Officer | 65,000 |
| Contingency | |
| **Total Disbursements** | 97,641 |
| | |
| **LESS: Reimbursements** | |
| Total | - |
| | |
| **Total Net Disbursements** | 97,641 |
| | |
| **Net Cash Flow** | (93,141) |

| | |
|---|---|
| **Beginning Cash-BLRD** | 133,715 |
| **Ending Cash-BLRD** | $ 40,575 |
| **Beginning/Ending Cash-BLRC** | $ 6,968 |

| | |
|---|---|
| BLRC-Wells Fargo to be trf to Wachovia | 4,728 |
| BLRD-Wells Fargo to be trf to Wachovia | 93,610 |
| BLRC-Key Bank | 2,240 |
| BLRD-Key Bank | 40,106 |