# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-13445 (KJC) |
| THE BANNING LEWIS RANCH | ) | |
| COMPANY, LLC, *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Hearing Date: December 21, 2010 at 11:30 a.m.** |
| | ) | **Objections Due: December 14, 2010 at 4:00 p.m.** |

## DEBTORS' MOTION SEEKING PROCEDURES FOR THE SALE OF BUILDING LOTS PURSUANT TO 11 U.S.C. § 363

The above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submit this motion (the "Motion"), seeking entry of an Order approving procedures for the sale of building lots during the pendency of these bankruptcy proceedings. In support of this Motion, the Debtors respectfully state as follows:

### BACKGROUND

1. On October 28, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors remain in possession of their properties and assets and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the declaration of Barry Marcus (the "Marcus Declaration")[Docket No. 6], fully incorporated herein by reference.

---

[1] The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification number, are The Banning Lewis Ranch Company, LLC (4090) and Banning Lewis Ranch Development I & II, LLC (3461). The Debtors' corporate headquarters and the service address for each Debtor is 4100 MacArthur Boulevard, Suite 100, Newport Beach, CA 92660.

2.  No trustee, examiner or official committee of unsecured creditors has been appointed or requested in these cases to date.

3.  In June 2004, The Banning Lewis Ranch Company, LLC ("Banning") was founded to develop approximately 20,000 acres of land in eastern Colorado Springs, Colorado (the "Property"). The land was ultimately to be developed as a community of some 76,000 residential units and approximately 79 million square feet of commercial space.

4.  In early 2005, Banning Lewis Ranch Development I & II, LLC ("Devco") was created to own and develop the first portion of the Property to be developed. On or about March 31, 2005, Banning contributed approximately 2,700 acres of the Property to Devco (the "Devco Property") and became Devco's 99.9% equity owner.

5.  Banning's primary business purpose is to own and manage its interest in Devco and to hold, for investment purposes, the portion of the Property that is still owned by Banning.

6.  Devco's primary business purpose is to own and develop the Devco Property and to market and sell developed lots to merchant builders who then construct and sell houses on those lots.

7.  Devco receives proceeds from builders when it sells developed lots in the Devco Property. At present Devco intends to use the net cash proceeds received from such lot sales, with the consent of KeyBank National Association, as Administrative Agent ("Agent") under that certain Senior Secured Revolving Credit Agreement dated as of September 7, 2007 (as amended, the "Revolver Credit Agreement") by and between Devco, Agent and the lender parties thereto (the "Lenders") to fund operating expenses in accordance with a budget to be agreed upon in connection with debtor-in-possession financing ("DIP Financing").

## JURISDICTION

8. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district in accordance with 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a), 363, 365, 1107 and 1108 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9006 and 9014 of the Bankruptcy Rules, and Rules 2002-1(b), 6004-1 and 9006-1 of the Local Rules.

## RELIEF REQUESTED

9. Devco seeks authority to sell building lots on the Devco Property in accordance with the procedures outlined herein. Devco could arguably sell the lots in the ordinary course of its business without the need to obtain Court approval. However, out of an abundance of caution, and in order to maintain transparency, Devco proposes that the Court approve the procedures outlined in this Motion and order that sales made pursuant to these procedures shall be made free and clear of liens, claims and encumbrances pursuant to Section 363 of the Bankruptcy Code.

## BASIS FOR RELIEF

10. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor-in-possession is given the rights of a trustee pursuant to Section 1107(a) of the Bankruptcy Code. See 11 U S.C. § 1107(a). Moreover, Section 105(a) of the Bankruptcy Code provides that the bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

11.     The paramount goal for any proposed sale of property of a bankruptcy estate is to maximize the proceeds received by the estate. See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 B.R. 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); Integrated Resources, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is well-established principle of bankruptcy law that the objective of bankruptcy sales and the Debtors' duty with respect to such sales is to obtain the highest price or overall greatest benefit possible for the estate.") (quoting In re Atlanta Packaging Products, Inc., 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

12.     Courts in this Circuit have held that a sale of a debtor's assets pursuant to section 363 of the Bankruptcy Code is appropriate where the transaction represents a reasonable business judgment on the part of the debtor. See In re Tempo Technology Corp., 202 B.R. 363 (D. Del. 199), aff'd without opinion, 141 F.3d 1155 (3d Cir. 1998). A debtor-in-possession's decision to use, sell, or lease assets must be based upon the sound business judgment of the debtor in possession. See Official Committee of Unsecured Creditors of LTV Aerospace and Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court determining a section 363(b) application must find from the evidence presented before it a good reason to grant such application); see also Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143 (2d Cir. 1986); Committee of Equity Sec. Holders v. Lionel Corp. (In re Liionel Corp.), 722 F.2d 1063, 1071 (2d cir. 1983); In re Exaeris Inc., 380 B.R. 741, 744 (Bankr. D. Del. 2008) ("The sale of assets which is not in the debtor's ordinary course of business requires proof that: (1) there is a sound business purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has

provided adequate and reasonable notice; and (4) the buyer has acted in good faith."), citing In re Delaware & Hudson Railway Co., 124 B.R. 169, 176 (D. Del. 1991).

13. "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). Thus, absent a showing of bad faith, self-interest, or gross negligence, courts will uphold a board's decisions as long as they are attributable to any rational business purpose. Id. at 656.

14. "Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the [Winning] Bidder is proceeding in good faith." In re Delaware & Hudson Railway Co., 124 B.R. 169, 176 (D. Del. 1991).

15. Devco sells lots in the ordinary course of its business. In lieu of filing separate and multiple motions for approval every time a lot sale is scheduled, Devco requests, by this Motion, approval of procedures governing such sales so that Devco's business may continue to operate smoothly and the interests of all parties to the sales are preserved and protected. These procedures will apply only in cases where Devco proposes a sale in an arm's-length transaction.

That is, the buyers shall have no affiliation with the Debtors or any of the Debtors' principals and each of the sales completed under these proposed procedures shall have been negotiated by Devco in the ordinary course of its business and in good faith. Devco will honor all valid pre-petition deposits, if any, made by buyers in connection with these lot sales. Devco will also honor contracts it entered into both prior to and after the Petition Date for the sale of lots (the "Sales Contracts"). Devco will provide Agent with any and all information related to each lot sale as is currently required under the Revolver Credit Agreement and will otherwise comply with the Revolver Credit Agreement terms applicable to such sales.

16. 17. Banning Lewis Ranch Management Company, LLC ("BLRM") has asserted certain mechanics' liens, under Colorado law, against the Debtors' Property. BLRM has indicated to the CRO that it will not object to releases for lot sales pertaining to its purported mechanics' liens and will waive any claim to the proceeds of each such sale.

18. Devco will also use the proceeds of sales of lots to pay the customary costs of each closing, including, without limitation, state and county transfer taxes, legal and recording fees, charges for preparation of deeds and other documents, sales commissions, utility charges, property taxes, sewer connection fees, and courier fees.

19. Devco will make its best effort to procure releases in customary form from all the persons paid as set forth above.

20. Devco seeks an Order which will allow it to sell lots free and clear of liens and encumbrances pursuant to the foregoing procedures without further approval from this Court. Within thirty (30) days after each closing, Devco shall provide notice to all parties who have requested notice under Bankruptcy Rule 2002 of (a) the name(s) of the buyers; (b) the purchase price; and (c) the names and amount paid to every party which received proceeds from the sale.

This disclosure may, but is not required to, take the form of a "settlement sheet" typically used in residential real estate transactions.

21. Failure to proceed to settlement and satisfy claims and charges related to the construction and settlement will have a detrimental effect on the Debtors' estates. Devco's breach of the Sales Contracts could result in claims for damages, or equitable proceedings to compel settlement. Failure to close with a buyer who is ready, willing and eager to purchase a lot will deprive Devco's estate of valuable proceeds, proceeds which will be used to reduce claims against the estate, and facilitate the Debtors' exit from these chapter 11 proceedings.

22. The procedures outlined above and Devco's sale of lots in the ordinary course of business during the pendency of the Chapter 11 proceedings are justified by sound business reasons and are in the best interests of Devco, its creditors and its estate. Therefore, pursuant to section 363(b) of the Bankruptcy Code, Devco requests approval of the sales procedures and sales as set forth herein.

### ***The Lot Sales Satisfy the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims and Interests.***

23. Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate only if---

    1. applicable non-bankruptcy law permits sale of such property free and clear of such interests;

    2. such entity consents;

    3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    4. such interest is in bona fide dispute; or

    5. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363.

24. As quoted above, section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." The term "any interest," as used in section 363(f) is not defined in the Bankruptcy Code. Folger Adam Security v. DeMatteis/MacGregor, JV, 209 F.3d 252, 259 (3d Cir. 2000). The Third Circuit, in addressing the scope of the term "any interest," observed that, while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." Folger Adam, 209 F.3d at 258. (*citing* 3 Collier on Bankruptcy ¶ 363.06[1]).

25. The Third Circuit, relying upon the Fourth Circuit case of In re Leckie Smokeless Coal Co., 99 F.3d 573, 581-82 (4th Cir. 1996), held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute"). Folger Adam, 209 F.3d at 258.

26. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of lots free and clear of all liens, claims, rights, interest or encumbrances. See Citicorp Homeowners Servs., Inc. v. Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988).

### *The Lot Sales are Conducted in Good Faith Under Section 363(m) of the Bankruptcy Code.*

27. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the

appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

28. While the Bankruptcy Code does not define "good faith," the Third Circuit in In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986) stated:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted).

29. As set forth herein, Devco sells lots in the ordinary course of its business. These proposed sales will be negotiated at arm's length with persons not affiliated with the Debtors. Thus the lots sales will be made entirely in good faith. Accordingly, Devco respectfully requests that any Order entered by the Court approving the sales be effective immediately upon entry pursuant to Bankruptcy Rule 6004(h).

### *Provisions Highlighted Pursuant To Local Bankruptcy Rule 6004-1(b)(iv)*

30. The proposed sales of lots will be made pursuant to individual Sales Contracts with each merchant builder. The Sales Contracts are rolling contracts that allow the merchant builders to purchase lots over time. Each Sales Contract will identify the buyer(s), the purchase price, the specific lot(s) to be purchased and sold, any rights which buyer(s) shall have with respect to common areas, a deadline for closing, and other standard provisions.

31. It is anticipated that parties with claims against the lots to be sold, including lien holders and persons who provided goods or services in connection with the construction of the lots who may be entitled to mechanics' liens, will provide releases in connection with the sales.

32. The buyers will be required to submit good faith deposits which may be forfeited if the buyers fail to complete settlement or perform their other obligations under their Sales Contracts with Devco.

33. Devco's use of the proceeds of the sales is discussed in detail above.

34. Devco also seeks to have the procedures and sales exempted from the fourteen-day stay rule of Bankruptcy Rule 6004(h). Devco has one or more lots which may go to closing in December, 2010 and several set to close in January, 2011. Further delays could severely inconvenience buyers, who may have to make alternative arrangements. The buyers' financing arrangements could also be jeopardized if closings are delayed. Furthermore, while it is important for Devco to be able to continue to sell lots in the ordinary course of its business, the impact of any one sale will not be significant on Devco's estate or individual creditors. The merchant builders are actively marketing and selling the purchased lots to homebuyers. Continuing to market and sell lots to the merchant builders will help to maintain the value of Devco's assets. Accordingly, Devco believes there is cause justifying relief from the stay requirement of Bankruptcy Rule 6004(h).

## NOTICE

35. Notice of this Motion is being provided to the Office of the United States Trustee, all parties who have requested notice pursuant to Bankruptcy Rule 2002, and all persons known to have asserted claims against the Property. The Debtors assert that such service is appropriate under the circumstances.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court approve the procedures outlined in this motion for the sale of lots, that any Order

approving the procedures be effective immediately, and for such other and further relief as is just and proper.

Dated: December 6, 2010

CROSS & SIMON, LLC

By: _____
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
Michael J. Joyce (No. 4563)
Joseph Grey (No. 2358)
913 N. Market St.
11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
Ph: (302) 777-4200
Fax: (302) 777-4224
kmann@crosslaw.com
jgrey@crosslaw.com

*Attorneys for Debtors and Debtors-in-Possession*