# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BANNING LEWIS RANCH | ) | |
| COMPANY, LLC, *et al.*,[1] | ) | Case No. 10-13445 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 AND 507: (1) APPROVING SECURED POSTPETITION FINANCING; (2) GRANTING LIENS AND PROVIDING SUPERPRIORTY ADMINISTRATIVE EXPENSE STATUS; (3) MODIFYING AUTOMATIC STAY

THIS MATTER having come before the Court upon the motion (the "DIP Motion")[2] of

the debtors and debtors in possession (the "Debtors") in the above-captioned Chapter 11 case

(the "Case").

(a) seeking entry of a final order (the "Final Order") authorizing the Debtors, pursuant to

sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 365 and 507 of title 11 of

the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules

2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the (Bankruptcy Rules"),

and Del. Bankr. L.R. 4001-2, for the Debtor *inter alia*,

---

[1] The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification number, are The Banning Lewis Ranch Company, LLC (4090) and Banning Lewis Ranch Development I & II, LLC (3461). The Debtors' corporate headquarters and the service address for each Debtor is 4100 MacArthur Boulevard, Suite 100, Newport Beach, CA 92660.

[2] Capitalized terms not defined herein have the meaning ascribed to them in the DIP Motion and/or Loan Documents, as applicable.

(1) to obtain secured, superpriority post-petition financing ("DIP Financing") not to exceed an aggregate principal amount of $3,500,000 upon entry of this Final Order (the "Commitment"), plus accrued interest on the aggregate principal amount upon the terms and conditions set forth in the Loan Documents (as defined below), from BDL Investors, LLC and Greenfield BLR Finance Partners, L.P. (collectively, the "DIP Lenders"), and for the Debtors to execute the Debtor in Possession Credit Agreement with respect to the DIP Financing substantially in the form attached as **Exhibit B** to this Final Order (as it may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Credit Agreement"); and for the Debtors to execute a promissory note (the "Note") and the Pledge and Security Agreement ("Post-Petition Pledge and Security Agreement") each in substantially the form attached to the DIP Credit Agreement (the DIP Credit Agreement, the Note, the Post-Petition Pledge and Security Agreement and all ancillary documents at any time executed in connection therewith, collectively, the "Loan Documents");

(2) to grant, on a final basis, the DIP Lenders: (i) a first priority, perfected Lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon (1) all Banning's Collateral that is not subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the of the Case(s), (2) all Devco's Collateral that is not subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the of the Case(s), and (3) any rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof, provided, however, that notwithstanding the foregoing, the

Prepetition Lenders[3] shall retain all rights to assert that any request to exercise the DIP Lenders' rights to surcharge the Prepetition Lenders' Collateral should not be granted by the Bankruptcy Court; and (ii) a perfected Lien, pursuant to Section 364(c)(3) and 364(d)(1) of the Bankruptcy Code: (1) upon all of Banning's Collateral that is (a) junior in priority and payment only to the Key Bank Term Loan Lien and Key Bank Term Loan up to the value of the Key Bank Term Loan Collateral, and (b) senior in priority and payment as to any other liens (other than the Key Bank Term Loan Lien) on Banning's Collateral, and (2) upon all Devco's Collateral that is (a) junior in priority and payment only to the KeyBank Revolving Loan Lien and Key Bank Revolving Loan up to the value of the Key Bank Revolving Loan Collateral, and (b) senior in priority and payment as to any other liens (other than the Key Bank Revolving Loan Liens) on Devco's Collateral; (iii) an allowed administrative expense claim in the Cases that shall be granted Superpriority Claim status pursuant to Section 364(c)(1) of the Bankruptcy Code, provided, however, that any such Superpriority Claim status shall be in all respects subject and junior to the superpriority expense claims granted to Key Bank and the Prepetition Lenders pursuant to the Cash Collateral Stipulation (as defined below); (iv) authorizing the Debtors to execute and deliver the Security Documents to the DIP Lenders and to reasonably cooperate with the DIP Lenders in obtaining for the DIP Lenders valid and perfected security interests and liens as security for the Obligations as set forth herein (the "DIP Obligations").

---

[3] "Prepetition Lenders" means the lenders under the Key Bank Revolving Loan Agreement (as defined in the DIP Credit Agreement) and the Key Bank Term Loan Agreement (as defined in the DIP Credit Agreement).

The Court having considered the DIP Motion and the attached thereto, any declarations and/or affidavits submitted in support of the DIP Motion, in support of the chapter 11 petitions and first day motions, the exhibits attached thereto, the Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the final hearing held on December 21, 2010 (the "Final Hearing"); and adequate notice of the Final Hearing having been provided in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Final Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all the objections to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED ON THE RECORD ESTABLISHED AT THE FINAL HEARING THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1. On October 28, 2010 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

2. The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

3. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceeding on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    As of the date hereof, the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in this Case pursuant to section 1102 of the Bankruptcy Code (a "Statutory Committee").

5.    On November 17, 2010, the Court entered an Order [Docket No. 55] approving the Stipulation Authorizing Use of Cash Collateral (the "Cash Collateral Stipulation") pursuant to which the Debtors are authorized to use the Prepetition Lenders' cash collateral through December 21, 2010.

6.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth herein, the Debtors admit, stipulate, acknowledge, agree to and shall be bound by the following (collectively paragraphs 7 through 17 below, referred to herein as the "Debtors' Stipulations.")

7.    The Debtors cannot operate solely through the use of Cash Collateral. The need of each of the Debtor's to obtain credit pursuant to the DIP Facility is immediate and critical as each of the Debtors does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the DIP Facility.

8.    The Debtors' access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Facility is vital to maximizing the value of each of the Debtor's estates. Without access to the DIP Facility, the Debtors lack sufficient funds to pay administrative expenses or maintain their operations pending a sale of assets. As a result, without access to DIP Financing, the estate of each of the Debtors would suffer immediate and irreparable harm and would have no option but to convert the Case to one under Chapter 7.

9. Given its current financial condition, financing arrangements, and capital structure, although the Debtors have sought, and received offers from the proposed DIP Lenders and the Debtor's Prepetition Lenders, the Debtors are unable to obtain financing from sources other than the DIP Lenders[4] on terms more favorable than the DIP Facility. The Debtors has been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors has also been unable to obtain credit: (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; or (b) secured by a lien on property of each of the Debtors and its estate that is not otherwise subject to a lien.

10. Although the CRO received multiple offers from the DIP Lenders and the Prepetition Lenders, the CRO and Debtors believe that financing on a postpetition basis is not otherwise available without granting the DIP Lenders: (i) a first priority, perfected Lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon (1) all Banning's Collateral that is not subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the of the Case(s), (2) all Devco's Collateral that is not subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the of the Case(s), and (3) any rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof, provided, however, that notwithstanding the foregoing, the Prepetition Lenders shall retain all rights to assert that any request to exercise the DIP Lenders' rights to surcharge the Prepetition Lenders' Collateral should not be granted by the Bankruptcy Court; and (ii) a perfected Lien, pursuant to Section 364(c)(3) and 364(d)(1) of the Bankruptcy Code: (1) upon all of Banning's Collateral that is (a) junior in priority and payment only to the Key Bank Term Loan Lien and Key Bank Term Loan

---

[4] The DIP Lenders are affiliates of insiders of the Debtors.

up to the value of the Key Bank Term Loan Collateral, and (b) senior in priority and payment as to any other liens (other than the Key Bank Term Loan Lien) on Banning's Collateral, and (2) upon all Devco's Collateral that is (a) junior in priority and payment only to the KeyBank Revolving Loan Lien and Key Bank Revolving Loan up to the value of the Key Bank Revolving Loan Collateral, and (b) senior in priority and payment as to any other liens (other than the Key Bank Revolving Loan Liens) on Devco's Collateral; (iii) an allowed administrative expense claim in the Cases that shall be granted Superpriority Claim status pursuant to Section 364(c)(1) of the Bankruptcy Code, provided, however, that any such Superpriority Claim status shall be in all respects subject and junior to the superpriority expense claims granted to Key Bank and the Prepetition Lenders pursuant to the Cash Collateral Stipulation (as defined below); and (iv) the other protections set forth in this Final Order and the Loan Documents.

11.    As a condition to the entry into the DIP Credit Agreement, the extension of credit under the DIP Facility, the DIP Lenders require, and the Debtors have agreed that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the Loan Documents. The Debtors may use the proceeds to pay expenses incurred by each of the Debtor's estate in the ordinary course of business, and consistent with amounts set forth in the Budget, or to pay the fees or expenses of the DIP Lenders and their counsel owing by the Debtors. The Debtors shall not use the proceeds of any Loan for any purpose other than payment of the expenses of the estate and expenses incurred by the Debtors in the ordinary course of business.

12.    The DIP Lenders shall, upon the entry of this Final Order, be entitled to and receive (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code; and (b) upon to entry of this Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

13.     The DIP Lenders are willing to provide financing to the Debtors subject to: (a) the entry of this Final Order; (b) approval of the terms and conditions of the DIP Facility and the Loan Documents and satisfaction of all conditions precedent in the Loan Documents; and (c) entry of findings by this Court that such financing is essential to each of the Debtor's estate, that the DIP Lenders are extending credit to the Debtors pursuant to the Loan Documents in good faith, and that the DIP Lenders' claims, super-priority claims, security interests, liens, rights, and other protections granted pursuant to this Final Order and the Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, re-argument or reconsideration of this Final Order or any other order, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider this Final Order or any other order.

14.     The terms and conditions of the DIP Facility and the Loan Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility, and the DIP Liens were negotiated in good faith and at arms' length among the Debtors, and the DIP Lenders. Credit under the DIP Facility is to be extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and therefore, the DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

15.     At the Final Hearing, the Debtors sought approval of the proposed postpetition financing arrangements pursuant to this Final Order, which Final Order shall be in form and substance satisfactory to the DIP Lenders, approving such postpetition financing arrangements.

16.     Notice of the Final Hearing and Final Order were provided in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014.  Notice of the Final Hearing requested in the DIP Motion was provided by the Debtors, whether by fax, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) each of the Debtor's thirty largest unsecured creditors; (iii) counsel to the Prepetition Lender; and (vi) counsel to the DIP Lenders.

17.     Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.     The DIP Motion is granted on a final basis and the Loan Documents are authorized and approved on a final basis, subject to the terms and conditions set forth in this Final Order.

2.     All objections to the entry of the DIP Motion, if any, to the extent not withdrawn or resolved are hereby overruled.

3.     The terms of the Loan Documents are hereby ratified and confirmed, except to the extent amended or modified by this Final Order.  The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the Loan Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the Loan Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the Loan Documents. Subject to the terms of the Loan Documents and this Final Order, the Debtors are

hereby authorized and directed to pay (in cash or in kind as applicable) the principal, interest, fees, expenses and other amounts described in the Loan Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval to the extent provided in the Loan Documents including, without limitation, closing fees, unused facility fee, commitment fees, servicing fees, audit fees, structuring fees, administrative agent's fees, the fees and disbursements of the DIP Lenders (including the fees and expenses of the DIP Lenders' attorneys, advisers, accountants, and other consultants, collateral examination, monitoring and appraisal fees, financial advisory fees, indemnification, and any other reimbursement of fees and expenses, all of which fees and expenses shall constitute obligations under the DIP Credit Agreement), whether or not the transactions contemplated hereby are consummated, all to the extent provided in the Loan Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries (unless otherwise agreed by the DIP Lenders that such recoveries be used to replace certain assets), condemnations or otherwise shall be deposited and applied as required by this Final Order and the Loan Documents.

4.     Upon execution and delivery, the Loan Documents shall represent valid and binding obligations of the Debtors, enforceable, in accordance with the terms of the Loan Documents, against the Debtors, their estates, and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any proceedings superseding or related to any of the foregoing.

5.     Subject to the terms and conditions set forth in the Loan Documents, DIP Facility, and this Final Order, and in order to prevent immediate and irreparable harm to each of the

Debtor's estates, the Debtors are hereby authorized to borrow from the DIP Lenders, up to $3,500,000 upon entry of this Final Order. Authorization is hereby granted for the proceeds of the Loan to be used to meet each of the Debtor's obligations, in a manner consistent with the terms of the Loan Documents and this Final Order and to pay when due expenses of the types and in amounts set forth in the DIP Credit Agreement.

6.     As collateral for the Loan, upon entry of this Final Order, the DIP Lenders are granted, pursuant to sections 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507(b) of the Bankruptcy Code, a continuing, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interest in and liens (the "DIP Liens") on all rights, title and interests of the Debtors in property of any kind, real and personal, tangible and intangible, and any property acquired by the Debtors in the future, including but not limited to, future profits earned by the Debtors or proceeds from the sale of any of Debtor's property in the future (the "DIP Collateral").

7.     The DIP Liens shall constitute: (i) a first priority, perfected Lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon (1) all Banning's Collateral that is not subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the of the Case(s), (2) all Devco's Collateral that is not subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the of the Case(s), and (3) any rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof, provided, however, that notwithstanding the foregoing, the Prepetition Lenders shall retain all rights to assert that any request to exercise the DIP Lenders' rights to surcharge the Prepetition Lenders' Collateral should not be granted by the Bankruptcy Court; and (ii) a perfected Lien, pursuant to Section 364(c)(3) and 364(d)(1) of the Bankruptcy Code: (1) upon all of Banning's Collateral that is (a)

junior in priority and payment only to the Key Bank Term Loan Lien and Key Bank Term Loan up to the value of the Key Bank Term Loan Collateral, and (b) senior in priority and payment as to any other liens (other than the Key Bank Term Loan Lien) on Banning's Collateral, and (2) upon all Devco's Collateral that is (a) junior in priority and payment only to the KeyBank Revolving Loan Lien and Key Bank Revolving Loan up to the value of the Key Bank Revolving Loan Collateral, and (b) senior in priority and payment as to any other liens (other than the Key Bank Revolving Loan Liens) on Devco's Collateral.

8.      Notwithstanding anything to the contrary in this Final Order or the DIP Credit Agreement, the DIP Lenders and Prepetition Lenders reserve all rights with respect to the determination of the date upon which the value of the Key Bank Term Loan Collateral and the Key Bank Revolving Loan Collateral should be determined, including, but not limited, to the valuation of such collateral for the purpose of determining priority of the Liens granted under Section 2.10 of the DIP Credit Agreement. For the avoidance of doubt, the DIP Lenders reserve all rights to assert that the date for such valuation should be the Petition Date and the Prepetition Lenders reserve the right to assert that another date is appropriate.

9.      Except as set forth in paragraph 7 above, the DIP Liens shall be prior and senior to all liens and encumbrances of all other secured creditors in and to such Collateral granted, or arising, after the Petition Date. The Debtors shall not assert a claim under Bankruptcy Code § 506(c) for any costs and expenses incurred in connection with the preservations, protection or enhancement of, or realization by the DIP Lenders upon the collateral. The DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

10. Upon entry of this Final Order, there shall be a Carve-Out. The Carve-Out provides: "Carve Out": To the extent the Borrowers do not have unencumbered cash to pay the following items, the Lender's Liens and Prepetition Lenders' Liens on the Collateral will be subject to the following carve outs: (a) the payment of (i) professional fees and disbursements allowed by order of the Bankruptcy Court and to the extent such fees were incurred by either of the Borrowers prior to the Termination Date up to the amount for such professional fees set forth in the Budget through the Termination Date, and (ii) professional fees and expenses allowed by order of the Bankruptcy Court and incurred by the statutory committee of unsecured creditors, if any, and any reasonable disbursement (other than attorneys' or other professional fees) of any member of the statutory committee of unsecured creditors, if any, to the extent such professional fees and expenses were incurred prior to the Termination Date up to the amount for such fees set forth in the Budget through the Termination Date, provided, however, that the Carve-Out shall not extend to any fees incurred by the Statutory Committee to assert any claims or other actions against the Prepetition Lenders' pre-petition claims or liens, and (b) the payment of unpaid fees pursuant to 28 U.S.C. § 1930 and any fees payable to the Clerk of the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Carve Out is subject to a maximum equal to the total unpaid and outstanding amount of fees and expenses set forth in subparts (a) and (b) above plus $150,000. Provided however, and notwithstanding anything herein to the contrary, upon an Event of Default, DIP Lenders shall remain obligated to fund any unpaid fees and expenses set forth in (a) and (b) above up to (y) the lesser of (i) the amount incurred prior to the Event of Default and (ii) the amount for such fees and expenses set forth in the Budget (as it may be amended pursuant to this Agreement) through the Event of Default, plus (z) $150,000.

Notwithstanding anything herein to the contrary, the Carve Out shall be subject to the rights of the Lenders, Key Bank and Prepetition Lenders to any and all fee requests and applications.

11.      Upon entry of this Final Order, subject to the Carve-out, the DIP Lenders are granted an allowed administrative expense claim in the Cases that shall be granted Superpriority Claim status pursuant to Section 364(c)(1) of the Bankruptcy Code, provided, however, that any such Superpriority Claim status shall be in all respects subject and junior to the superpriority expense claims granted to Key Bank and the Prepetition Lenders pursuant to the Cash Collateral Stipulation.

12.      Upon entry of this Final Order, the DIP Lenders shall be entitled to any rights or proceeds allowed under Section 506(c) of the Bankruptcy Code, provided, however, that notwithstanding the foregoing, the Prepetition Lenders shall retain all rights to assert that any request to exercise the DIP Lenders' rights to surcharge the Prepetition Lenders' Collateral should not be granted by the Court.

13.      Upon entry of this Final Order, the Debtors are explicitly authorized to execute and deliver the Security Documents to the DIP Lenders and to reasonably cooperate with the DIP Lenders in obtaining for the DIP Lenders valid and perfected security interests and liens for the Obligations set forth herein.

14.      The DIP Lenders shall not have any obligation to make any loan or advance under the Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable Loan Documents and this Final Order have been satisfied in full or waived in writing by the DIP Lenders.

15.      From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the Loan

Documents and in compliance with the Budget. A copy of the initial Budget is annexed as **Exhibit A** hereto.

16.     Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility, the Loan Documents, and in accordance with the Budget.

17.     The Loan Documents may from time to time be amended, modified or supplemented in a non-material manner by the parties thereto without notice or a hearing if: (a) the amendment, modification, or supplement is: (i) in accordance with the Loan Documents; (ii) beneficial to the Debtors; and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided by fax or email) of the amendment, modification or supplement is provided, at least five days prior to the effective date of such amendment, to counsel for any Statutory Committee and the U.S. Trustee; and (c) the amendment, modification or supplement is filed with the Court; provided, however, that consent of any Statutory Committee or the U.S. Trustee, and approval of the Court are not necessary to effectuate any such amendment, modification, or supplement. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of any DIP Document shall be effective unless set forth in writing, signed on behalf of the Debtors and the DIP Lenders; and in the case of material modifications, waivers or amendments, approved by the Court on notice.

18.     The Budget and any modifications to, or amendment or update of, the Budget shall be in the form and substance acceptable to and approved by the DIP Lenders. The Budget may be amended or modified in writing from time to time only with the written consent of the DIP Lenders and without need for approval by this Court. Notwithstanding the foregoing, and

for the avoidance of doubt, any amendment to the DIP Agreement or DIP Budget that increases the total Commitment by more than 10% shall require court approval after notice to all parties in interest, including Key Bank.

19.   The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as to the extent necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens; (b) permit the Debtors to perform such acts as the DIP Lenders may request in their sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Lenders under the Loan Documents, the DIP Facility and this Final Order; and (d) authorize the Debtors to pay, in accordance with and subject to the terms of the Loan Documents, and the DIP Lenders to retain and apply, payments made in accordance with the terms of this Final Order.

20.   This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens by operation of law without the necessity of any further action by the DIP Lenders or filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lenders to the priorities granted herein. Notwithstanding the foregoing, the DIP Lenders are authorized to file, as they deem necessary or advisable in their sole discretion, such financing statements, mortgages, notices and other instrument or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and all such financing statements, mortgages,

notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence or perfect the DIP Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Lenders, all such financing statements, mortgages, titles insurance policies, notices, instruments, and other documents as the DIP Lenders may reasonably request. The DIP Lenders may, in their sole discretion, file a photocopy of this Final Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument, or similar document.

21.     If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Case or any Successor Case, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) in violation of the Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such financing is secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lenders up to the amounts outstanding under the DIP Facility and subject to the lien and payment priorities set forth in the Loan Documents.

22.     Until the indefeasible payment in full in cash of all DIP Obligations and the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, the Debtors shall maintain the cash management system in effect as of the Petition Date, as modified by any

order that may be entered by the Court which has been first agreed to by the DIP Lenders or as otherwise required by the Loan Documents.

23. The Debtors shall not sell, transfer, lease, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence) or as expressly permitted in the Loan Documents, it being understood that any sale, transfer, lease or other disposition of any of the Debtors or all or substantially all of the assets or properties of any or all of the Debtors shall at all times require the prior written consent of the DIP Lenders.

24. Upon the Termination Date all DIP Obligations shall be immediately due and payable and all commitments to extend credit under the DIP Facility will terminate.

25. The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein shall constitute an event of default under this Final Order, unless waived in writing by the DIP Lenders (the "Events of Default"). DIP Lenders shall provide notice of any such waivers to Key Bank, Associated Bank, Banning Lewis Ranch Management Company, LLC and counsel for the City of Colorado Springs.

26. Immediately upon the occurrence and during the continuation of an Event of Default as defined in Section 6.1 of the DIP Credit Agreement, the DIP Lenders shall provide the Borrowers, any Statutory Committee of unsecured creditors, Key Bank and counsel to Key Bank, Associated Bank and counsel to Associated Bank, Banning Lewis Ranch Management, LLC and its counsel, counsel for the City of Colorado Springs, and the U.S. Trustee with written notice (via email or facsimile) specifying the Event of Default and the basis therefor and informing such parties that the DIP Lenders intend to exercise their remedies under the Final Order, the Security Documents and hereunder five (5) Business Days after the Borrowers' receipt of such notice. To the extent that relief from the stay is necessary for the DIP Lenders to exercise a particular remedy, the DIP Lenders shall

be required to obtain relief from the Bankruptcy Court, including relief from the automatic stay to allow them to exercise all remedies under the Final Order, the Security Documents and Loan Documents and including relief to: (a) terminate the Commitment and thereafter cease to make Loans to the Debtors; (b) by written notice to the Debtors (a "Notice of Acceleration"), with a copy to KeyBank, declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be due and payable; and/or (c) take any other action or exercise any other right, power or remedy permitted to the DIP Lenders under the Loan Documents or the Final Order or by operation of law, including, without limitation, (i) commencing judicial or nonjudicial foreclosure proceedings against the Collateral, (ii) accepting the Collateral in partial or full satisfaction of the Obligations in accordance with applicable law, including, without limitation, Sections 9-620 through 9-622 of the Delaware Uniform Commercial Code (Del. Code Ann. Tit. 6 §§ 9-620 to 9-622), (iii) enforcing the DIP Lenders' security interest in the Collateral by means of one or more public or private sales thereof, and (iv) exercising any or all of the rights of a secured party pursuant to applicable law. All rights, powers and remedies of the DIP Lenders in connection with each of the Loan Documents may be exercised at any time or from time to time, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity. The Lender shall be permitted to request an expedited hearing with respect to such relief and the Borrowers shall not oppose Lender's request for an expedited hearing before the Bankruptcy Court for such relief.

27. To the extent that the DIP Lenders obtain relief from the automatic stay under Section 362 of the Bankruptcy Code in order to enable the DIP Lenders to exercise their rights or remedies pursuant to Sections 6.2(a) of the DIP Credit Agreement, such exercise shall be subject to the rights and obligations of Key Bank to the extent the Lien granted to the DIP Lenders in Section 2.10 is junior to the Key Bank Term Loan Lien or Key Bank Revolving Loan Lien

pursuant to such Section, and, upon the DIP Lenders' successful foreclosure on its interest in the Collateral pursuant to such relief, the automatic stay under Section 362 of the Bankruptcy Code shall be of no further force and effect with respect to the Collateral.

28.     The DIP Lenders have acted in good faith in connection with this Final Order and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby. Any liens or claims granted to the DIP Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

29.     The Debtors shall indemnify and hold harmless the DIP Lenders from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance and administration of this Final Order, the DIP Credit Agreement and the other Loan Documents and the proposed use of the Loan proceeds provided that the Debtors shall have no obligation hereunder to the DIP Lenders with respect to indemnified liabilities arising from the gross negligence or willful misconduct of the DIP Lenders.

30.     Without limiting the rights of access and information afforded the DIP Lenders under the Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Lenders reasonable access to the Debtors' premises and their books and records in accordance with the Loan Documents, as the case may be, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, by consenting to entry of this Final Order, the Debtors have authorized their independent certified public accountants, financial advisors, restructuring advisers, investment bankers and consultants to cooperate, consult with, and provide to the DIP Lenders all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtors.

31.     Subject to the Carve-Out, the DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed: (i) to obligate the DIP Lenders, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; or (ii) as consent to the allowance of any professional fees or expenses of any Case Professionals.

32.     The DIP Facility, the DIP Collateral, and the Cash Collateral may not be used to pay Ineligible Professional Expenses. "Ineligible Professional Expenses" means any fees or expenses incurred by any Person, including a Statutory Committee or any Debtor in (A) preventing, hindering or delaying the applicable DIP Lenders's enforcement or realization upon any of the Collateral once an Event of Default has occurred, (B) using or seeking to use cash collateral not in compliance with the Budget or this Final Order, whichever is in effect at the

time of reference thereto, or selling any other Collateral, in each case without the DIP Lenders' consent, (C) incurring Indebtedness not permitted by the DIP Credit Agreement.

33.     Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

34.     Upon entry of this Final Order, no costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the DIP Lenders or any of their respective claims or the DIP Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the affected DIP Lenders, and no such consent shall be implied, directly or indirectly, from any action, inaction, or acquiescence by any such agents or lender.

35.     The DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

36.     The DIP Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lenders. The DIP Lenders shall have the right to credit bid any and all amounts due under the DIP Loan at any sale of the Debtors' assets.

37.     The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of liquidation, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of liquidation.

38.     Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Lenders' right to seek any other or supplemental relief in respect of any Debtor, or (b) any of the rights of the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Case or any Successor Case, conversion of any of the Case to a case under Chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.  Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable, or otherwise) of the DIP Lenders is preserved.

39.     The failure of the DIP Lenders to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lenders.

40.     Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lenders, all other creditors of the Debtors, the Statutory Committee or any other court appointed committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or any Successor Case.

41.     Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without prior written consent from the DIP Lenders (i) any modification, stay, vacatur or amendment to this Final Order (and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lenders); or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind of nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) (except for KeyBank's superpriority expense claim pursuant to the Cash Collateral Stipulation) in the Case or any Successor Case equal or superior to the DIP Liens (and subject to the senior KeyBank Liens described in the Loan Documents); (b) without the prior written consent of the DIP Lenders, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens (subject to the senior Key Bank Liens as described in the Loan Documents).

42.     The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of liquidation in the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Lenders pursuant to this Final Order and/or the Loan Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain their priority as provided by this Final Order until all DIP Obligations

have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions concerning the indemnification of the DIP Lenders shall continue in the Case, or in any Successor Case, following dismissal of the Case or any Successor Case, and following termination of the Loan Documents and/or the repayment of the DIP Obligations.

43.    Notwithstanding anything to the contrary in this Final Order or the DIP Credit Agreement, the Liens granted to the DIP Lenders shall be junior to any liens of the City of Colorado Springs which arise under applicable state and local law, to the extent applicable law grants the liens of the City of Colorado Springs priority over other liens and to the extent that relation back is permitted under applicable law.

44.    Nothing in this Final Order or the Credit Agreement shall be deemed to prejudice the right of any party to object at any time, including with respect to bid and sale procedures, to the appropriate level of information to be provided to any potential bidder, including, but not limited to, the DIP Lender or their affiliates.

45.    In the event of any inconsistency between the terms and conditions of the Loan Documents and this Final Order, the provisions of this Final Order shall govern and control.

46.    This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

47.    The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: Dec 22 , 2010

Wilmington, Delaware

The Honorable Kevin J. Carey
United States Bankruptcy Judge