contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan; and

(xii)   Enter an Order concluding the Chapter 11 Case.

The foregoing list is illustrative only and not intended to limit in any way the Court's exercise of jurisdiction. If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including without limitation the matters set forth in this Article, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### G.   **Miscellaneous Provisions**

#### 1.   **Exemption From Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment or any lease or sublease, or the making or delivery of any deed or other instrument of transfer or assignment and/or assumption under, in furtherance of, or in connection with the Plan, including, without limitation, any agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

#### 2.   **Payment of Statutory Fees**

All fees payable on or before the Effective Date pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

#### 3.   **Modification or Withdrawal of the Plan**

The Plan may be amended, modified, supplemented or withdrawn by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Court may otherwise direct Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.[21]   In addition, after the Confirmation Date, so

---

[21] If the Stalking Horse Purchaser is not the ultimate purchaser of the Banning assets, the Debtors anticipate that they will amend the Plan in a non-material fashion prior to the Confirmation Date. If such a change is made to the Plan, the Debtors will not re-solicit votes on the Plan. Additionally, if the Sales Transactions entered into by the Debtors require, or if the ultimate purchaser of either the Banning assets or the Devco assets requires, a change in the terms of the Plan in a non-material fashion prior to the Confirmation Date, the Debtors will make

long as such action does not materially adversely affect the treatment of holders of Claims under the Plan, Debtors or the Plan Agent may institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan..

### 4. Governing Law

Except as set forth in a controlling document, unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

### 5. Filing or Execution of Additional Documents

On or before the Effective Date, the Debtors or Plan Agent shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 6. Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Debtors or Plan Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions thereunder shall be subject to any such withholding and reporting requirements.

### 7. Waiver of Rule 62 (a) of the Federal Rules of Civil Procedure

The Debtors may request that the Confirmation Order include (a) a finding the Rule 62(a) of the Federal Rules of Bankruptcy Procedure shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after the entry of the Confirmation Order.

### 8. Headings

Headings used in the Plan are for convenience and reference only and shall not constitute a Part of the Plan for any purpose,

### 9. Exhibits and Schedules

All Exhibits and Schedules to the Plan and Disclosure Statement are incorporated into and constitute a part of the Plan and Disclosure Statement as if set forth herein.

---

such modification and will not re-solicit votes on the Plan. For example, if, at Auction, the Debtors receive bids higher than anticipated for their assets, the change in the amounts to be disbursed to creditors will require modification of the Plan, but will not require re-solicitation of votes.

## 10. Notices

All notices, requests and demand hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(e)    If to Debtors:
The Banning Lewis Ranch Company, LLC
c/o EisnerAmper LLP
101 West Avenue,
Jenkintown, Pennsylvania 19046
Attention: Edward A. Phillips

<u>And</u>:

Christopher P. Simon, Esq.
Kevin S. Mann, Esq.
Joseph Grey, Esq.
Cross & Simon, LLC
913 N. Market Street
11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
Ph: (302) 777-4200
Fax: (302) 777-4224
Email: <u>kmann@crosslaw.com</u>

## 11. Conflict

The terms of the Plan shall govern in the event of any inconsistency with the summaries of the Plan set forth in the Disclosure Statement.

## 12. Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, trustee, administrator, successor or assign of such Person.

## 13. Saturday, Sunday or Legal Holiday

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 14. Post-Effective Date Effect of Evidences of Claims or Equity Interests

Notes, bonds, stock certificates and other evidences of Claims against or Equity Interests in the Debtors, and all Instruments of the Debtors (in either case, other than those executed and delivered as contemplated hereby in connection with the consummation of the Plan), shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan.

### 15. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan that does not govern the treatment of Claims or Equity Interests provided for herein or the conditions to the Effective Date is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted, Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination, and shall provide, that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

### 16. Balloting

Each holder of an Allowed Claim or an Allowed Equity Interest entitled to vote on the Plan will receive a ballot. The ballot will contain two boxes, one indicating acceptance of the Plan and the other indicating rejection of the Plan. Holders of Allowed Claims or Allowed Equity Interests who elect to vote on the Plan must mark one or tire other box pursuant to the instructions contained on the ballot- Any executed Ballot that does not indicate acceptance or rejection of the Plan will be considered a non-vote and will not be counted as an acceptance or rejection of the Plan,

### 17. No Admissions or Waiver of Objections

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claims classification. The Debtors is not bound by any statements herein or in the Disclosure Statement as judicial admissions.

### 18. Survival of Settlements

All Court-approved settlements shall survive consummation of the Plan, except to the extent that any provision of any such settlement is inconsistent with the Plan, in which case the provisions of the Plan shall supersede such inconsistent provision of such settlement.

## VIII. PROJECTIONS AND VALUATION ANALYSIS

The Debtors are selling their assets and have not developed financial projections as they will cease operations.

## IX. CONFIRMATION PROCEDURE

### A. <u>Solicitation of Votes</u>

**BEFORE VOTING, YOU SHOULD READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS, INCLUDING THE PLAN AND ITS EXHIBITS, IN THEIR ENTIRETY.**

You may vote on the Plan by completing and mailing the enclosed ballot to Cross & Simon, LLC at the following address:

> Cross & Simon, LLC
> Attention: Kevin S. Mann, Esq.
> 913 N. Market St., 11th Floor
> P.O. Box 1380
> Wilmington, DE 19899-1380

You should use the ballot sent to you with this Disclosure Statement to cast your vote for or against the Plan. You may NOT cast ballots or votes orally or by facsimile. In order for your ballot to be considered by the Bankruptcy Court, it must be received at the above address no later than the time designated in the notice accompanying this Disclosure Statement.

Only holders of Allowed Claims in Impaired classes are entitled to vote on the Plan. In addition, the Court set _____, 2011 as the record date for voting on the Plan and for receiving distributions under the Plan. Persons holding Claims transferred after such date will not be permitted to vote on the Plan. An Impaired Class of Claims accepts the Plan if at least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of the Allowed Claims in the Class that are actually voted are cast in favor of the Plan, Claimants who do not vote are not counted as having voted either for or against the Plan. Pursuant to the provisions of Section 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith.

A Claimant's failure to vote on the Plan will not affect such Claimant's right to a Distribution under the Plan.

As discussed in detail below, if the voting members of an Impaired class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount and one-half (1/2) in number of Allowed Claims actually voted in that class, the Plan, at a minimum, must provide that each member of such class will receive property of a value as of the Effective Date, that is not less than the amount such class members would receive or retain if the Debtors' estate were liquidated under chapter 7 of the Bankruptcy Code.

The Debtors may dispute Proofs of Claim that have been filed or that the Debtors listed as disputed, unliquidated or contingent in their Schedules filed with the Bankruptcy Court.

Persons whose Claims are disputed may vote on, or otherwise participate in, Distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. The Debtors' Schedules, which list the Claims and whether such Claims are disputed, can be inspected at the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware, 19801.

## B.     **The Confirmation Hearing**

The Bankruptcy Code requires the Court, after notice, to hold a confirmation hearing.     The Confirmation Hearing with respect to the Plan has been scheduled for _____, 2011, Eastern Time, before the Honorable Kevin J. Carey at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801. The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing. Any objection to confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim or number of shares of common stock of the Debtors or other Equity Interests held by the objector. Any such objection must be filed with the Court and served so that it is received by the Court and the parties listed above on or before _____, 2011, at 4:00 p.m.  Eastern Time.

## C.     **Confirmation**

This Disclosure Statement and the appropriate Ballot are being distributed to all creditors who are entitled to vote on the Plan, There is a separate ballot designated for each impaired class in order to facilitate vote tabulation; however all Ballots are substantially similar in form and substance and the term "Ballot" is used without intended reference to the Ballot of any specific class of claims or equity interests.

The Bankruptcy Code requires that, in order to confirm the Plan, the Court must make a series of findings concerning the Plan and the Debtors, including, without limitation, that (i) the Plan has classified Claims and Equity Interests in a permissible manner, (ii) the Plan complies with applicable provisions of the Bankruptcy Code, (iii) the Debtors have complied with applicable provisions of the Bankruptcy Code, (iv) the Debtors have proposed the Plan in good faith and not by any means forbidden by law, (v) the disclosure required by Section 1125 of the Bankruptcy Code has been made, (vi) the Plan has been accepted by the requisite votes of creditors (except to the extent that cram down is available under Section 1129(b) of the Bankruptcy Code), (vii) the Plan is feasible and Confirmation is not likely to be followed by the for further financial liquidation of the Debtors, (viii) the Plan is in the "best interests" of all Holders of Claims or Equity Interests in an impaired Class in that it provides to such Holders on account of their Claims or Equity Interests property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain in a Chapter 7 liquidation, unless each Holder of a Claim or Equity Interest in such Class has accepted the Plan, (ix) all fees

and expenses payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on Confirmation, have been paid or the Plan provides for the payment of such fees on the Effective Date, and (x) the Plan provides for the continuation after the Effective Date of all retiree benefits, as defined in Section 1114 of the Bankruptcy Code, at the level established at any time prior to Confirmation pursuant to Sections 1114(e)(1)(B) or 1114(g) of the Bankruptcy Code for the duration of the period that the Debtors have obligated themselves to provide such benefits.

A plan is accepted by an Impaired class of claims if holders of at least two-thirds in dollar amount and more than one-half in number of claims of that class vote to accept the Plan. A plan is accepted by an impaired class of interests if holders of at least two-thirds of the number of shares in such class vote to accept the Plan. Only those holders of claims or interests who actually vote count in these tabulations.

In addition to this voting requirement, Section 1129 of the Bankruptcy Code requires that a plan be accepted by each holder of a claim or interest in an impaired class or that the Plan otherwise be found by the bankruptcy court to be in the best interests of each holder of a claim or interest in such class. In addition, each impaired class must accept the Plan for the Plan to be confirmed without application of the "fair and equitable" and "unfair discrimination" tests in Section 1129(b) of the Bankruptcy Code discussed below.

The Bankruptcy Code contains provisions authorizing the confirmation of a plan even if it is not accepted by all impaired classes, as long as at least one impaired class of claims (without including any acceptance of the Plan by an insider) has accepted it. These so-called "cram down" provisions are set forth in Section 1129(b) of the Bankruptcy Code. As indicated above, a plan may be confirmed under the cram down provisions if, in addition to satisfying the other requirements of Section 1129 of the Bankruptcy Code, it (i) is "fair and equitable" and (ii) "does not discriminate unfairly" with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. The "fair and equitable" standard, also known as the "absolute priority rule," requires, among other things, that unless a dissenting class of claims or a class of interests receives full compensation for their allowed claims or allowed interests, no holder of claims or interests in any junior class may receive or retain any property on account of such claims. The Bankruptcy Code establishes different "fair and equitable" tests for secured creditors, unsecured creditors and equity holders, as follows:

(a) Secured Creditors: either (i) each impaired secured creditor retains their liens securing their secured claim and receives on account of their secured claim deferred cash payments having a present value equal to the amount of their allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of their allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds, and the liens against such proceeds are treated in accordance with clause (i) or (ii) of this subparagraph (a).

(b) Unsecured Creditors: either (i) each impaired unsecured creditor receives or retains under the Plan or liquidation property of a value equal to the amount of their allowed claim, or (ii) the holders of claims and equity interests that are junior to the claims of the non-accepting class do not

receive any property under the Plan on account of such claims and equity interests.

(c) Equity Holders: either (i) each equity holder will receive or retain under the Plan of Liquidation property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock or (b) the value of the stock, or (ii) the holders of interests that are junior to the non-accepting class will not receive any property under the Plan of Liquidation.

The "fair and equitable" standard has also been interpreted to prohibit any class senior to a dissenting class from receiving under a plan more than 100% of their allowed claims. The requirement that a plan not "discriminate unfairly" means, among other things, that a dissenting class must be treated substantially equally with respect to other classes of equal rank.

The Debtors believe that, if necessary, the Plan may be crammed down over the dissent of certain Classes of Claims and Equity Interests, in view of the treatment proposed for such Classes. If necessary and appropriate, the Debtors intend to amend the Plan to permit cram down of dissenting Classes of Claims or Equity Interests. There can be no assurance, however, that the requirements of Section 1129(b) of the Bankruptcy Code would be satisfied even if the Plan treatment provisions were amended or withdrawn as to one or more Classes. The Debtors believe that the treatment under the Plan of the Holders of Claims and Equity Interests will satisfy the "fair and equitable" test since, although no distribution will be made in respect of Equity Interests in such Classes and, as a result, such Classes will be deemed pursuant to Section 1126 of the Bankruptcy Code to have rejected the Plan, no Class junior to such non-accepting Classes will receive or retain any property under the Plan.

In addition, the Debtors do not believe that the Plan unfairly discriminates against any Class that may not accept or otherwise consent to the Plan. A plan of liquidation "does not discriminate unfairly" if (i) the legal rights of a no accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similarly situated to those of the non-accepting class, and (ii) no class receives payments in excess of that which it is legally entitled to receive for their claims or equity interests. The Debtors believe the Plan does not discriminate unfairly.

Debtors anticipate that at least one Impaired Class of Claims will vote to accept the Plan. However, certain Classes of Claims are Impaired and deemed to reject the Plan because they are not anticipated to receive or retain any property or interest.

THE DEBTORS INTEND TO SEEK CONFIRMATION OF THE PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE.

Subject to the conditions set forth in the Plan, a determination by the Court that the Plan is not confirmable pursuant to Section 1129 of the Bankruptcy Code will not limit or affect the Debtors' ability to modify the Plan to satisfy the Confirmation requirements of Section 1129 of the Bankruptcy Code.

1. **Feasibility**

Section 1129(a)(l) of the Bankruptcy Code requires as a condition for Confirmation that the Court determine that the Plan is not likely to be followed by the need for further financial reorganization or liquidation, of the Debtors, unless such liquidation or reorganization is proposed in the Plan. The Debtors believe that the Plan satisfies this requirement. The Debtors' Plan proposes the complete liquidation of their assets and therefore requires no further operating capital. The Sale Transaction will produce sufficient cash to make the distributions anticipated under the Plan. Upon the Effective Date, the Debtors will cease operation and thus do not anticipate any further income, other than the preserved causes of action listed above.

To the extent that any such claims exist, the Stalking Horse Purchaser's bid includes up to $100,000 to be paid towards Administrative, Priority Tax, and Priority Claims.

As described above, the Debtors are currently plaintiffs in certain Avoidance Actions captioned, *Banning and Devco v. Banning Lewis Ranch Management Company, LLC* (Case No. 11-50219 (KJC)), *Banning and Devco v. Scott R. Baugh d/b/a Scott Baugh & Associates* (Case No. 11-50385 (KJC)), and *Banning and Devco v. The Lebovic Law Firm* (Case No. 11-50370 (KJC)). The total amount claimed in these adversary proceedings is $2,257,176.74. The Debtors are in settlement negotiations with Scott R. Baugh and The Lebovic Law Firm and anticipate that their matters will be settled shortly with the defendants making payments to the Debtors' estates. The Debtors are confident in their position in the action against Management and anticipate a considerable amount of the transfers made to Management being returned to the estates for distribution to the Debtors' creditors. Any funds received by the Debtors pursuant to these Avoidance Actions, or any other such actions that the Debtors may file, will be used to make distributions to the Debtors' general unsecured creditors and convenience class claimants. The Debtors' estimate that the claims making up the Convenience Classes will total no more than $60,000. The Debtors estimate that the proceeds of these Avoidance Actions will, at least, be sufficient to pay the claims of the Convenience Classes. The Debtors are hopeful that, after payment is made to the members of the Convenience Classes, funds will remain to make distributions to general unsecured creditors.

The Secured Claims of the Term Lenders will be protected in that the Stalking Horse Purchaser can and will continue to make payments under the Term Loan. Additionally, the Term Lenders will retain their liens in the relevant collateral.

Additionally, should there be competitive bidding for the Debtors' assets (which is likely, based on the feedback received by Eastdil), it is certainly possible that Cash could be available from the Sale Transactions to make further distributions to the Debtors' unsecured creditors.

2. **Best Interests Test/Liquidation Analysis**

With respect to each Impaired Class of Claims and Equity Interests, Confirmation of the Plan requires that each holder of a Claim or Equity Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than

the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. To determine what holders of Claims and Equity Interests of each impaired Class would receive if the Debtors were liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case. The Cash amount that would be available for satisfaction of Unsecured Claims and Equity Interests would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of the Debtors augmented by the unencumbered Cash held by the Debtors at the time of the commencement of the liquidation case. Such Cash amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative and priority claims that might result from the termination of the Debtors' business and the use of chapter 7 for the purposes of liquidation.

The Debtors' cost of liquidation under chapter 7 would include the fees payable to a trustee in bankruptcy, as well as those fees that might be payable to attorneys and other professionals that such a trustee might engage. In addition, claims would arise by reason of the breach or rejection of obligations incurred and executory contracts assumed or entered into by the Debtors during the pendency of the Chapter 11 Case. The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 Case, including unpaid expenses incurred by the Debtors during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay prepetition Unsecured Claims.

To determine if the Plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the Debtors' unencumbered assets and properties, after subtracting the amounts attributable to the foregoing claims, are then compared with the value of the property offered to such Classes of Claims and Equity Interests under the Plan.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Cases including (i) the increased costs and expenses of a liquidation under chapter 7 from fees payable to a trustee in bankruptcy and professional advisors to such trustee, (ii) the erosion in value of assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail and (iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Case, the Debtors have determined that confirmation of the Plan will provide each holder of an Allowed Claim or Equity Interest with a recovery that is not less than such holder would receive pursuant to liquidation of the Debtors under chapter 7.

The Debtors also believe that the value of any distributions to each class of Allowed Claims in a chapter 7 case would be less than the value of distributions under the Plan because such distributions in a chapter 7 case would not occur for a substantial period of time. It is likely that distribution of the proceeds of the liquidation could be delayed for years after the completion of such liquidation in order to resolve Claims and prepare for distributions. In the

likely event litigation was necessary to resolve Claims asserted in the chapter 7 case, the delay could be prolonged.

The Debtors' Liquidation Analysis as well as historical financials dating back to 2008 are attached hereto as Exhibit "D". The information set forth in Exhibit "D" provides a summary of the liquidation value of the Debtors' assets, assuming a chapter 7 liquidation in which a trustee appointed by the Court would liquidate the assets of the Debtors' estates. Reference should be made to the Liquidation Analysis for a complete discussion and presentation of the Liquidation Analysis.

Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by the Debtors' management, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management. The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, the values reflected might not be realized if the Debtors was, in fact, to undergo such a liquidation. The chapter 7 liquidation period is assumed to be a period of more than one year, allowing for, among other things, the (i) discontinuation of operations, (ii) selling of assets and (iii) collection of receivables.

## X.    EFFECTIVENESS OF THE PLAN

### A.    <u>Conditions to Confirmation</u>

The conditions to Confirmation shall be the following:

(a)    The satisfaction of the requirements of 11 U.S.C § 1129;

(b)    The Court shall have entered an Order acceptable in form and substance to the Debtors and Buyer(s) that expressly approves and authorizes the Debtors to enter into the Sale Transaction(s);

(c)    The Confirmation Order shall (i) be acceptable in form and substance to the Debtors and Buyer(s) and (ii) expressly authorize and direct the Debtors to perform the actions that are conditions to the effectiveness of the Plan; and

(d)    Each of the events and actions required by the Plan to occur or to be taken prior to Confirmation shall have occurred or have been taken, or the Debtors or the party whose obligations are conditioned by such occurrences and/or actions, as applicable, shall have waived such occurrences or actions.

### B.    <u>Conditions To Effective Date</u>

The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied in full or waived: (l) the Confirmation Order shall have become a Final Order; (2) all authorizations, consents and regulatory approvals (including,

without limitation, any approvals required under regulations relating to the change in ownership of the Debtors upon the Effective Date) required, if any, for the Plan's effectiveness shall have been obtained; (3) the Debtors and Buyer shall have satisfied all conditions and implemented and consummated the Sale Transaction, provided, however, that if the Sale Transaction is contingent upon the occurrence of the Effective Date of the Plan, the Effective Date shall be deemed to have occurred immediately prior to the consummation of the Sale Transaction; and (4) all other actions and documents necessary to implement the treatment of creditor Claims shall have been effected or executed or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

Debtors intend to proceed with consummation of the Plan as soon as practicable after the Court enters orders: (1) confirming the Plan and; (2) approving the Sale Transaction.

### C. Waiver of Conditions

The Debtors may waive any or all of the other conditions set forth in the Plan without leave of or order of the Court, except for the entry of a final Confirmation Order, and without any formal action. The Debtors reserve the right to amend or revoke the Plan.

### D. Effect of Failure of Conditions

In the event that the Effective Date does not occur, upon notification submitted by the Debtors to the Court: (a) the Confirmation Order shall be vacated, (b) no Distributions under the Plan shall be made, (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

### E. Vacatur of Confirmation Order

If an order denying Confirmation of the Plan is entered, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (c) prejudice in any manner any right, remedy or claim of the Debtors; or (d) be deemed an admission against interest by the Debtors.

## XI. POST-EFFECTIVE DATE DEBTORS

### A. Capitalization and Structure of Post-Effective Date Debtors

The Plan is premised upon a Sale Transaction resulting from the process established pursuant to the Bid Procedures Motions and the auction to be conducted in accordance therewith. After the Sale Transaction, the Debtors will assume, assign and transfer all or substantially all of the remaining assets of the Debtors and the plan agent (the "Plan

Agent") will administer the windup of the Post Effective Date Debtors' affairs. For a more detailed description of the Debtors' post-Effective Date capital structure or the structure of the windup of their affairs, please refer to Article V of the Plan.

## B. Management of the Post-Effective Date Debtors

The Plan Agent shall be appointed by the Debtors. It is anticipated that the Debtors will appoint Edward A. Phillips, the Debtors' current Chief Restructuring Officer, as the Plan Agent, subject to an agreement with the Debtors. The Plan Agent shall report directly to any remaining members of the Debtors' management and shall have a fiduciary duty to the Post Effective Date Debtors. Mr. Phillips is not aware of any conflicts that would prevent him from acting as Plan Agent. Should any conflict arise, the Plan allows the Plan Agent to take any action necessary to effectuate the Plan, which would include hiring conflicts counsel or other professionals, and consultants.

On the Effective Date, the Plan Agent shall begin acting for the Post Effective Date Debtors in the same fiduciary capacity as applicable to a board of directors, subject to the provisions hereof. The Plan Agent shall be compensated at the rate to be disclosed at or prior to the Confirmation Hearing, plus reimbursement for actual and necessary expenses incurred in connection with the performance of his duties, without the need for Court approval. It is anticipated that the Plan Agent will either be compensated on a contingency basis or will receive a retainer though the DIP Financing. The Plan Agent shall not be liable for any action he or she takes or omits to take that he or she believes in good faith to be authorized or within his or her rights or powers unless it is determined by a court of competent jurisdiction that such action or inaction was the result of gross negligence or willful misconduct. All distributions to be made to holders of Allowed Claims under the Plan shall be made by the Plan Agent, who shall deposit and hold all Cash and other assets in trust for the benefit of holders of Allowed Claims (including Professionals). The duties and powers of the Plan Agent shall include the following:

(a)     To exercise all power and authority that may be exercised, commence all proceedings that may be commenced and take all actions that may be taken by any officer, director or shareholder of the Post Effective Date Debtors with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including consummating the Plan and all transfers hereunder on behalf of the Post Effective Date Debtors, and prosecuting any preserved causes of action;

(b)     To maintain all accounts, invest cash of the Post Effective Date Debtors, make interim and final distributions and take other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtors or Post Effective Date Debtors;

(c)     To take all steps necessary to wind up the affairs of the Debtors and Post Effective Date Debtors and to terminate the corporate existence of the Debtors;

(d)     To prosecute objections to Claims and compromise or settle any Claims (disputed or otherwise);

(e) To make decisions regarding the retention or engagement of Professionals or other Persons by the Post Effective Date Debtors and to pay, without court order, all reasonable fees and expenses accruing after the Effective Date;

(f) To file with the Court the reports and other documents required by the Plan or otherwise required to close the Chapter 11 Case; and

(g) To take all other actions not inconsistent with the provisions of the Plan which the Plan Agent deems reasonably necessary or desirable in connection with the administration of the Plan.

Although the Plan Agent is authorized to take any and all of the above actions, the Debtors only expect that the Plan Agent will work on matters related to the resolution and release of any escrowed funds, prosecute claims objections, prosecute any preserved causes of action (as defined herein), and make distributions to holders of allowed Claims. Any funds that the Plan Agent recovers shall be first used to compensate the Plan Agent and then shall be distributed to holders of allowed Claims.

Following the Effective Date, the Post Effective Date Debtors shall not engage in any business activities or take any actions, except those necessary to effectuate the Plan, including, but not limited to, selling, transferring, liquidating or abandoning the remaining assets of the estate and winding up the affairs of the Post Effective Date Debtors. On and after the Effective Date, the Plan Agent may, in the name of the Post Effective Date Debtors, take such actions without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Plan Agent may, without application to or approval of the Court, pay the charges that it incurs after the Effective Date for Professional fees and expenses that, but for the occurrence of the Effective Date, would constitute allowed Administrative Claims.

## XII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A. Liquidation Under Chapter 7

If no plan is confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by chapter 7. A discussion of the effects a chapter 7 liquidation would have on the recoveries of holders of Claims and Equity Interests and the Debtors' liquidation analysis are set forth herein. The Debtors believe that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for in the Plan because of (a) the likelihood that the Debtors' assets would have to be sold or otherwise disposed of in a less orderly fashion over a shorter period of time, (b) additional administrative expenses involved in the appointment of a trustee, and (c) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of executory contracts in connection with a cessation of the Debtors' operations.

The Debtors' respective estates have not been substantively consolidated. Most, if not all of the general unsecured claims of trade creditors and vendors are the responsibility of Devco. However, the secured claims of Devco outweigh the assets of Devco and general unsecured creditors would not receive any recovery should the Devco assets be liquidated under chapter 7. The Banning assets are similarly encumbered by large amounts of secured debt. While it is likely that there would be some small recovery to unsecured creditors, it would certainly be less than that envisioned by the Plan. Also, the sale of the Debtors assets through the Plan will result in a much higher return than that under chapter 7. A liquidation under chapter 7 would likely result in a fire sale, yielded worse results than the proposed Plan sale, or a foreclosure by the Debtors' secured creditors.

## B. **Alternative Plans of Liquidation**

If the Plan is not confirmed, the Debtors could attempt to formulate a different plan, however, without funding, the Debtors' options would likely be extremely limited. With respect to an alternative plan, the Debtors have explored various alternatives in connection with the formulation and development of the Plan. The Debtors believe that the Plan, as described herein, enables creditors to realize the most value under the circumstances. In the proposed liquidation under chapter 11, the Debtors' assets would be sold, to the extent necessary, in an orderly fashion over a more extended period of time than in a liquidation under chapter 7, possibly resulting in somewhat greater (but indeterminate) recoveries than would be obtained in chapter 7. Further, if a trustee were not appointed, because such appointment is not required in a chapter 11 case, the expenses for professional fees would most likely be lower than those incurred in a chapter 7 case. Although preferable to a chapter 7 liquidation, the Debtors believe that any alternative liquidation under chapter 11 is a much less attractive alternative to creditors and Equity Interest holders than the Plan because of the greater return provided by the Plan.

## C. **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed if there is a default in performance under the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revert in the Chapter 7 estate. The automatic stay will be re-imposed upon the re-vested property, but only to the extent that relief from stay was not previously authorized by the Court during these cases.

The Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the Confirmation Order if the Confirmation Order was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

## D. **Final Decree**

Once the Debtors' estates have been fully administered as referred to in Bankruptcy Rule 3019, Debtors, the Plan Agent, or such other party as the Court shall designate

in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.


## XIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The Debtors are unaware of any tax consequences to their creditors from the implementation of this Plan. However, the Debtors have not conducted any investigation or analysis of potential tax consequences. Creditors should consult with their tax own advisors.


## XIV. CONCLUSION

Based on the information in this Disclosure Statement, the Debtors believe that confirmation of the Plan is in the best interests of the Debtors, their estates and holders of Claims against and Interests in the Debtors. Accordingly, the Debtors ask that Creditors and Interest Holders vote in favor of the Plan on the enclosed ballot and return the ballot as described above and on the ballot.

### RECOMMENDATION

**THE DEBTORS RECOMMEND THAT YOU VOTE TO "ACCEPT" THE PLAN.**

**THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY OF THE AVAILABLE ALTERNATIVES AND THAT THE PLAN IS DESIGNED TO PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN ANY OTHER FORM OF LIQUIDATION. THE DEBTORS BELIEVE THAT ANY OTHER ALTERNATIVE WOULD CAUSE SIGNIFICANT DELAY AND UNCERTAINTY, AS WELL AS ADDITIONAL ADMINISTRATIVE COSTS.**

Respectfully submitted,

**BANNING LEWIS RANCH DEVELOPMENT I &
II, LLC**, a Delaware limited liability company

By: THE BANNING LEWIS RANCH
COMPANY, LLC, a Delaware limited
liability company, their Manager


By: */s/ Edward A. Phillips*
    Edward A. Phillips, Chief Restructuring Officer


**THE BANNING LEWIS RANCH COMPANY LLC,**
a Delaware limited liability company


By: */s/ Edward A. Phillips*
    Edward A. Phillips, Chief Restructuring Officer


**CROSS & SIMON, LLC**


By: */s/ Kevin S. Mann*
    Christopher P. Simon (No. 3697)
    Kevin S. Mann (No. 4576)
    Joseph Grey (No. 2358)
    David G. Holmes (No. 4718)
    913 N. Market Street, 11th Floor
    P.O. Box 1380
    Wilmington, Delaware 19899-1380
    Telephone: (302) 777-4200
    Facsimile: (302) 777-4224
    kmann@crosslaw.com

    *Counsel to the Debtors and Debtors-in-Possession*


Dated: May 16, 2011
    Wilmington, Delaware