## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-13445 (KJC) |
| THE BANNING LEWIS RANCH | ) | |
| COMPANY, LLC, *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## AMENDED JOINT PLAN OF LIQUIDATION FOR THE BANNING LEWIS RANCH COMPANY, LLC AND BANNING LEWIS RANCH DEVELOPMENT I & II, LLC

Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
Joseph Grey (No. 2358)
David G. Holmes (No. 4718)
Cross & Simon, LLC
913 N. Market Street
11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
Ph: (302) 777-4200
Fax: (302) 777-4224
Email: kmann@crosslaw.com

*Counsel to Debtors and Debtors-in-Possession*

Dated: May 25, 2011

---

[1] The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification number, are The Banning Lewis Ranch Company, LLC (4090) and Banning Lewis Ranch Development I & II, LLC (3461). The Debtors' corporate headquarters and the service address for each Debtor is 101 West Avenue, Jenkintown, Pennsylvania 19046.

# TABLE OF CONTENTS

Page No.

ARTICLE I. INTRODUCTION ...................................................................1

ARTICLE II. DEFINITION OF TERMS AND RULES OF INTERPRETATION ......................2

Section 2.01      Definition of Terms.............................................................2

Section 2.02      Interpretation And Computation of Time ........................................16

        (a)      Defined Terms. ..............................................................16

        (b)      Rules of Interpretation. .......................................................16

        (c)      Time Periods. ...............................................................16

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................16

ARTICLE IV. GENERAL PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................................................................23

Section 4.01      Unclassified Claims. ...........................................................23

        (a)      Administrative Claims. ........................................................23

           (b) General ...................................................................24

           (c)      Payment of Statutory Fees. ...................................................24

           (d)      Bar Date For Administrative Claims. ......................................24

               i)      General Provisions. .....................................................24

               ii)      Professionals. .........................................................24

               iii)      Ordinary Course Liabilities.........................................25

               iv)      Tax Claims. ...........................................................25

        (e)      Treatment of Priority Tax Claims. ............................................25

Section 4.02      Treatment of Classified Claims Against and Equity Interests in Debtors. .....................................................................26

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS ...................................30

Section 5.01      General Treatment of Executory Contracts .......................................30

ARTICLE VI. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ........31

Section 6.01      Overview of Plan Implementation ...............................................31

Section 6.02      Sale Agreement ...............................................................32

Section 6.03      Distribution ..................................................................32

Section 6.04      Vesting of Assets .............................................................33

Section 6.05      Preservation of Causes of Action................................................33

Section 6.06      Corporate Action..............................................................33

Section 6.07        Management of Post Effective Date Debtors.................................................34

Section 6.08        Disbursing Agent ................................................................................................35

Section 6.09        Releases.................................................................................................................35

Section 6.10        Injunction ............................................................................................................36

Section 6.11        No Liability For Solicitation Or Participation .................................................36

Section 6.12        Limitation of Liability........................................................................................36

Section 6.13        Objections to Claims..........................................................................................37

Section 6.14        Other Documents And Actions..........................................................................37

ARTICLE VII. CONFIRMATION AND EFFECTIVE DATE CONDITIONS..........................37

Section 7.01        Conditions To Confirmation...............................................................................37

Section 7.02        Conditions To Effective Date ............................................................................38

Section 7.03        Waiver of Conditions..........................................................................................38

Section 7.04        Effect of Failure of Conditions .........................................................................38

Section 7.05        Vacatur of Confirmation Order..........................................................................39

ARTICLE VIII. CONFIRMABBLITY OF PLAN AND CRAMDOWN....................................39

ARTICLE IX. PROVISIONS REGARDING VOTING AND DISTRIBUTIONS
          UNDER THE PLAN AND TREATMENT OF DISPUTED,
          CONTINGENT AND UNLIQUIDATED CLAIMS AND EQUITY
          INTERESTS ...................................................................................................39

Section 9.01        Voting of Claims and Equity Interests..............................................................39

Section 9.02        Method of Distributions Under the Plan............................................................39

             (a)      Distributions Under the Plan..............................................................39

             (b)      Timing and Methods of Distributions................................................40

                   (i)      Compliance with Tax Requirements.......................................40

                   (ii)     Pro Rata Distribution ..............................................................41

                   (iii)    Distribution Record Date ........................................................41

Section 9.03        Special Procedures for Lost, Stolen, Mutilated or Destroyed
             Instruments..........................................................................................................41

Section 9.04        Failure to Surrender Cancelled Instrument .......................................................42

Section 9.05        Undeliverable or Unclaimed Distributions .......................................................42

Section 9.06        Disputed Claims; Reserve and Estimations ......................................................42

             (a)      Treatment of Disputed Claims............................................................42

             (b)      Creation of Disputed Claims Reserve................................................43

    (c)    Distributions on Account of Disputed Claims Once They Are Allowed ........................................................................................43

Section 9.07    Setoffs ...........................................................................................43

ARTICLE X. IMPLEMENTATION AND EFFECT OF CONFIRMATION OF THIS PLAN ..................................................................................................44

Section 10.01    Effect of Confirmation of the Plan.................................................44

ARTICLE XI. RETENTION OF JURISDICTION.........................................................44

ARTICLE XII. MISCELLANEOUS PROVISIONS .....................................................45

Section 12.01    Exemption From Transfer Taxes ...................................................45

Section 12.02    Payment of Statutory Fees .............................................................46

Section 12.03    Modification or Withdrawal of the Plan .........................................46

Section 12.04    Governing Law ...............................................................................46

Section 12.05    Filing or Execution of Additional Documents................................46

Section 12.06    Withholding and Reporting Requirements ....................................46

Section 12.07    Waiver of Rule 62(a) of the Federal Rules of Civil Procedure........46

Section 12.08    Headings ........................................................................................47

Section 12.09    Exhibits and Schedules .................................................................47

Section 12.10    Notices ...........................................................................................47

Section 12.11    Conflict ..........................................................................................48

Section 12.12    Successors And Assigns ................................................................48

Section 12.13    Saturday, Sunday Or Legal Holiday ..............................................48

Section 12.14    Post-Effective Date, Effect of Evidences of Claims, Or Equity Interests ........................................................................................48

Section 12.15    Severability of Plan Provisions......................................................48

Section 12.16    Balloting.........................................................................................48

Section 12.17    No Admissions or Waiver of Objections ........................................49

Section 12.18    Survival of Settlements .................................................................49

Section 12.19    Plan Supplement ...........................................................................49

# ARTICLE I.

## INTRODUCTION

The Banning Lewis Ranch Company, LLC and Banning Lewis Ranch Development I & II, LLC (collectively, the "Debtors") hereby propose the following Plan of Liquidation (defined herein as the "Plan") for the resolution of their outstanding Claims and Equity Interests. Reference is made to the Joint Disclosure Statement Accompanying Plan of Liquidation for the Banning Lewis Ranch Company, LLC and Banning Lewis Ranch Development I & II, LLC under Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement") for a discussion of the Debtors' history, business, properties and results of operations, and for a summary of the Plan and certain related matters.

All holders of Claims and Equity Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. No materials, other than the Disclosure Statement, the exhibits and schedules attached thereto or referenced therein, have been approved by the Debtors for use in soliciting acceptances or rejections of the Plan.

On April 27, 2011, the Debtors filed the Motion of The Banning Lewis Ranch Company, LLC for an Order: (A) Approving Procedures for the Sale of the Debtor's Assets, (B) Scheduling Auction and Hearing to Consider Approval of Sale, (C) Approving Notice of Respective Dates, Times and Places for Auction and Hearing on Approval of (I) Sale and (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Notice of Sale Process and of Approval Hearing, (E) Approving the Agreement with Stalking Horse Purchaser and (F) Granting Related Relief [Docket No. 266] and the Motion of Banning Lewis Ranch Development I & II, LLC for an Order: (A) Approving Procedures for the Sale of the Debtor's Assets, (B) Scheduling Auction and Hearing to Consider Approval of Sale, (C) Approving Notice of Respective Dates, Times and Places for Auction and Hearing on Approval of (I) Sale and (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Notice of Sale Process and of Approval Hearing, and (E) Granting Related Relief [Docket No. 267] (collectively, the "Bid Procedures Motions"). Pursuant to the Bid Procedures Motions, the Debtors sought entry of Orders establishing procedures to govern the participation in an auction with respect to the sale of the substantially all of the assets of the Debtors (the "Bid Procedures Orders"). The Court entered the Bid Procedures Orders on May 23, 2011.

**AT THE AUCTION, THE DEBTORS WILL SELECT THE HIGHEST AND BEST SALE TRANSACTION(S) WHICH WILL BE IMPLEMENTED PURSUANT TO THIS PLAN. AS SUCH, FOLLOWING THE AUCTION, THIS PLAN MAY BE MODIFIED, PURSUANT TO 11 U.S.C. § 1127, TO SPECIFICALLY IMPLEMENT THE SELECTED SALE TRANSACTION(S), INCLUDING, BUT NOT LIMITED TO THE TREATMENT OF SPECIFIC CREDITORS' CLAIMS, AND THE ASSUMPTION OF CERTAIN DEBTS BY A PURCHASER OF ONE OR MORE OF THE DEBTORS' ASSETS.**

THE PLAN IS THE RESULT OF A THOROUGH MARKETING EFFORT AND BANKRUPTCY COURT APPROVED PROCEDURES FOR THE SOLICITATION OF A SALE TRANSACTION. THE DEBTORS BELIEVE THE PLAN REPRESENTS THE BEST POSSIBLE RETURN TO HOLDERS OF CLAIMS AND EQUITY INTERESTS. THE DEBTORS STRONGLY URGE YOU TO READ THE DISCLOSURE STATEMENT AND VOTE IN FAVOR OF THE PLAN.

Notwithstanding anything herein to the contrary, all statements in this Plan and the accompanying Disclosure Statement concerning the history of the Debtors' business, the past or present financial condition of the Debtors, transactions to which the Debtors were or are party, or the effect of confirmation of the Plan on secured creditors, unsecured creditors or equity security holders are attributable exclusively to the Debtors and not to any other party.

## ARTICLE II.

## DEFINITION OF TERMS AND RULES OF INTERPRETATION

**Section 2.01     Definition of Terms**

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

*Administrative Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a type specified under section 503(b) and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of its businesses, including, without limitation, all compensation and reimbursement of expenses to the extent Allowed by the Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtors under section 1930 of chapter 123 of Title 28 of the United States Code.

*Allowed* means a Claim against or Equity Interest in the Debtors to the extent that:

    a.  a proof of the Claim or Equity Interest

       i.  is timely Filed and served upon the Debtors and no objection to the Claim or Equity Interest is Filed within the time fixed by the Court

for such objections; *or*

    ii. is *deemed* Filed under applicable law (e.g., filed on the Schedules as non-contingent, non-disputed and liquidated) or pursuant to a Final Order of the Court and no objection to the Claim or Equity Interest is Filed within the time fixed by the Court for such objections; *or*

    iii. is Allowed pursuant to subparagraph b of this definition; *or*

    iv. is Allowed under the Plan.

    b. If the Debtors files an objection to a proof of Claim or Equity Interest within a time fixed by the Court, the Claim or Equity Interest shall be Allowed to the extent of

    i. any amount of such Claim or Equity Interest to which the Debtors did not object; or

    ii. any amount otherwise authorized by Final Order or the Plan.

***Allowed Administrative Claim,***

***Allowed Priority Tax Claim,***

***Allowed Secured Claim,***

***Allowed DIP Credit Facility Claim,***

***Allowed Resident Deposit Account Claim,***

***Allowed Senior Indebtedness Claim,***

***Allowed Guaranty Claim,***

***Allowed Subordinated Indebtedness Claim* and**

***Allowed General Unsecured Claim***

all have correlative meanings.

***Allowed Class Claim***

means an Allowed Claim in the particular Class described.

| | |
|---|---|
| ***Allowed Class Equity Interest*** | means an Allowed Equity Interest in the particular Class described. |
| ***Amended and Restated Senior Secured Term Loan Agreement*** | means that certain Amended and Restated Senior Secured Term Loan Agreement with respect to the New Term Loan, to be dated as of the Effective Date, among the Stalking Horse Purchaser, the Term Lenders and to the extent necessary Banning, which shall be in form and substance acceptable to the Stalking Horse Purchaser. The Amended and Restated Senior Secured Term Loan Agreement shall be in form and substance substantially similar to the terms of the Existing Term Loan Agreement; provided however, that: (i) the "Maturity Date" shall be September 7, 2019, (ii) the applicable interest rate shall be either the 1 or 3 month Libor, as selected by the Purchaser from time to time upon the expiration of the current Libor period, plus 200 basis points, (iii) the aggregate principal amount of the New Term Loan as of the Effective Date shall be equal to the amount of the Allowed Term Lenders' Claims (which shall equal the principal amount, plus accrued interest and other arrearages arising under the Term Loan) as of the Effective Date, and (iv) any provisions that reference or implicate the Revolving Loan (as defined in the Term Loan Agreement) shall be deleted. A copy of the Amended and Restated Senior Secured Term Loan Agreement shall be included in the Plan Supplement. |
| ***Avoidance Actions*** | means any action brought by the Debtors to recover or avoid any preferential payments made to creditors, including, but not limited to the cases captioned, *Banning and Devco v. Banning Lewis Ranch Management Company, LLC* (Case No. 11-50219 (KJC)), *Banning and Devco v. Scott R. Baugh d/b/a Scott Baugh & Associates* (Case No. 11-50385 (KJC)), and *Banning and Devco v. The Lebovic Law Firm* (Case No. 11-50370 (KJC)). |
| ***Ballots*** | Means each of the ballot forms distributed with the Disclosure Statement to each holder of an Impaired Claim or Impaired Equity Interest (other than to holders of Impaired Equity Interests deemed to have rejected the Plan or otherwise not entitled to vote on the Plan), upon which is to be indicated, among |

other things, acceptance or rejection of the Plan.

| | |
|---|---|
| ***Bankruptcy Code*** | means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as in effect on the date hereof or hereafter amended if such amendments are made applicable to the Chapter 11 Case. |
| ***Bankruptcy Rules*** | means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, and local rules of the Court, as the context may require. |
| ***Banning*** | means The Banning Lewis Ranch Company, LLC. |
| ***Banning Distributable Assets*** | means the amount remaining of the cash proceeds of the Sale Transaction for the assets of Banning, and any other assets of Banning, including any proceeds from any Avoidance Actions (the Debtors are currently plaintiffs in Avoidance Actions captioned, *Banning and Devco v. Banning Lewis Ranch Management Company, LLC* (Case No. 11-50219 (KJC)), *Banning and Devco v. Scott R. Baugh d/b/a Scott Baugh & Associates* (Case No. 11-50385 (KJC)), and *Banning and Devco v. The Lebovic Law Firm* (Case No. 11-50370 (KJC))). These Banning Distributable Assets will be distributed to those creditors of Banning holding Allowed Claims in the Banning Convenience Class Claims (Class 7A), City of Colorado Springs, CO Claims (Banning) (Class 4A), and Banning General Unsecured Claims (Class 8A). The Banning Distributable Assets will first be used to make Distributions to the Banning Convenience Class Claims (Class 7A) then distributed in a *pro rata* fashion between the remaining beneficiaries. |
| ***Business Day*** | means any day on which commercial banks are open for business, and not authorized to close, in the City of Wilmington, Delaware, except any day designated as a legal holiday in Bankruptcy Rule 9006(a). |
| ***Buyer*** | means the party or parties, other than the Debtors and their subsidiaries, to the Sale Agreement. |
| ***Cash*** | means legal tender of the United States of America and equivalents. |

| | |
|---|---|
| ***Chapter 11 Case*** | means the Chapter 11 cases commenced by the Debtors on the Commencement Date. |
| ***Claim*** | means a claim against the Debtors, whether or not asserted or Allowed, as defined in section 101(5) of the Bankruptcy Code. |
| ***Claims Objection Deadline*** | means the last day for Filing objections to Claims to be established by order of the Bankruptcy Court. |
| ***Class*** | means a class of Claims or Equity Interests designated pursuant to the Plan. |
| ***Clerk*** | means the Clerk of the Court. |
| ***Collateral*** | means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim as of the Commencement Date, which Lien is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law. |
| ***Commencement Date*** | means October 28, 2010, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases. |
| ***Confirmation*** | means the conclusion of the Confirmation Hearing. |
| ***Confirmation Date*** | means the date on which the Confirmation Order is entered on the Docket. |
| ***Confirmation Hearing*** | means the hearing to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code. |
| ***Confirmation Order*** | means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code. |
| ***Convenience Class Claims*** | Means a Claim, against the Debtors, that would otherwise be a General Unsecured Claim and that is greater than $0 and less than or equal to $10,000 in Allowed Amount; provided, however, that a General Unsecured Claim originally Allowed in an amount in excess of $10,000 may not be sub-divided into multiple claims of $10,000 or less for purposes of |

receiving treatment as a Convenience Class Claim. A holder of a General Unsecured Claim Allowed in an amount in excess of 10,000 may elect to reduce its claim to an amount equal to $10,000 and be treated as a Convenience Class Claim rather than a General Unsecured Claim.

***Court***

means, (a) the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to section 157 of Title 28 of the United States Code, the United States District Court for the District of Delaware; and (c) any other court having jurisdiction over the Chapter 11 Cases.

***Debtors***

shall have the meaning ascribed to it in Article I of the Plan.

***Debtors In Possession***

means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

***Devco***

means Banning Lewis Ranch Development I & II, LLC.

***Devco Distributable Assets***

means the amount remaining of the cash proceeds of the Sale Transaction for the assets of Devco, and any other assets of Devco, including any proceeds from Avoidance Actions (the Debtors are currently plaintiffs in Avoidance Actions captioned, *Banning and Devco v. Banning Lewis Ranch Management Company, LLC* (Case No. 11-50219 (KJC)), *Banning and Devco v. Scott R. Baugh d/b/a Scott Baugh & Associates* (Case No. 11-50385 (KJC)), and *Banning and Devco v. The Lebovic Law Firm* (Case No. 11-50370 (KJC))). These Devco Distributable Assets will be distributed to those creditors of Devco holding Allowed Claims in the Devco Convenience Class Claims (Class 7B), City of Colorado Springs, CO Claims (Devco) (Class 4B), and Devco General Unsecured Claims (Class 8B). The Devco Distributable Assets will first be used to make Distributions to the Devco Convenience Class Claims (Class 7B) then distributed in a *pro rata* fashion between the remaining beneficiaries.

| | |
|---|---|
| ***Devco Purchaser*** | means the entity, if any, which is the proposed Buyer of Banning Lewis Ranch Development I & II, LLC's assets pursuant to a Sale Transaction. |
| ***DIP Credit Facility*** | means the Credit Agreement dated as of December 22, 2010 by and between the Debtors and BDL Investors, LLC and Greenfield BLR Finance Partners, L.P., the lenders thereto, as approved by order of the Bankruptcy Court authorizing and governing such facility. |
| ***DIP Credit Facility Claims*** | means any Claims arising under the DIP Credit Facility and any orders of the Bankruptcy Court related thereto. |
| ***DIP Lender*** | means BDL Investors, LLC and Greenfield BLR Finance Partners, L.P., collectively, the DIP Credit Facility lenders. |
| ***Disbursing Agent*** | means the Person responsible for making Distributions under the Plan. The Plan Agent, or a designee, will serve as Disbursing Agent. |
| ***Disclosure Statement*** | means the Joint Disclosure Statement Accompanying Plan of Liquidation for the Banning Lewis Ranch Company, LLC and Banning Lewis Ranch Development I & II, LLC under Chapter 11 of the United States Bankruptcy Code, as such Disclosure Statement may be amended, modified or supplemented from time to time. |
| ***Disputed*** | means any Claim which has not been Allowed pursuant to the Plan or a Final Order, and |

> a. If no proof of claim has been filed by the applicable deadline, a Claim that has been or hereafter is listed on the Schedules but not specifically listed as disputed, contingent or un-liquidated, but as to which the Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order, or as to which a party in interest has requested the Filing of an amendment to the Schedules; *or*

> b. If a proof of claim or request for payment of an Administrative Expense Claim has been filed by

the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent or un-liquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors which has not been withdrawn or determined by a Final Order.

*Distribution*

means a distribution to a holder of an Allowed Claim pursuant to this Plan.

*Distribution Record Date*

means the Confirmation Date.

*Docket*

means the docket in the Chapter 11 Case maintained by the Clerk.

*Effective Date*

means the later of (i) eleven days following entry of the Confirmation Order, subject to the conditions set forth herein and (ii) satisfaction of all conditions set forth herein. If the Court enters an Order making Bankruptcy Rule 7062 inapplicable to the proceedings respecting the Confirmation Order or otherwise determining that the Effective Date may occur immediately following Confirmation, then the Effective Date will be one business day after the Confirmation Date. If (1) a stay of the Confirmation Order is in effect and/or (2) all conditions to the Effective Date have not been satisfied or, if waivable, not waived by the party for whose benefit such condition exists, the Effective Date shall be extended to the first Business Day on which no such stay is in effect and/or all such conditions have been satisfied or waived, as applicable; provided, that in no event shall the Effective Date be later than one hundred twenty (120) days after the Confirmation Date; and provided further that the Court may extend the deadline for the Effective Date to occur. For purposes of the Plan and the Disclosure Statement "as soon as practicable" shall mean within 30 days

of the date performance is otherwise due.

**Effective Date Payments**

means all payments which must be made on the Effective Date or as soon as practicable thereafter.

**Equity Interest**

means any equity interest in the Debtors of any kind or nature, including, without limitation, any interest represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest.

**Estate**

means the estates created in the Debtors' Chapter 11 Cases under Section 541 of the Bankruptcy Code.

**Existing Term Loan Agreement**

means the existing Senior Secured Term Loan Agreement By and Among Banning and the Term Lenders, dated September 7, 2007, as amended from time to time.

**File** or **Filed**

means filed with the Court in the Chapter 11 Cases.

**Final Distribution Date**

means, in the event there exist on the Effective Date any Disputed Claims classified in Classes entitled to receive a Distribution under this Plan, twenty (20) Business Days after the date that all such Disputed Claims have been resolved by Final Older. In the event that no Disputed Claims exist on the Effective Date, such term shall mean twenty (20) Business Days after the Effective Date.

**Final Order**

means an order or judgment of the Court as entered on the Docket in the Chapter 11 Cases, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**General Unsecured Claim**

means any Claim that is not a Priority Tax Claim, DIP Credit Facility Claim, Secured Claims of Term Lenders, Secured Claim of Revolver Lenders, Other Secured Claim, Priority Claim, Convenience Class Claim, Subordinated Claim, Intercompany Claim, or

Equity Interest Claims.

| | |
|---|---|
| ***Holder*** | means the Holder of a Claim or Equity Interest. |
| ***Impaired*** | means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code. |
| ***Indebtedness*** | means any Claim relating to liabilities and obligations, contingent or otherwise, of Debtors (i) in respect of borrowed money, (ii) evidenced by bonds, notes, or other similar instruments, (iii) evidenced by a letter of credit or a reimbursement obligation of Debtors with respect to any letter of credit; but excluding obligations (other than written guaranties) arising out of contingent liabilities incurred in the ordinary course of business. |
| ***Instrument*** | means any share of stock, security, promissory note or other "instrument," within the meaning of that term, as defined in section 9105(l)(i) of the Uniform Commercial Code. |
| ***Intercompany Claims*** | means all Claims asserted by each of the Debtors by or against any other Debtor, non-Debtors subsidiary, or non-Debtors affiliate of the Debtors. |
| ***Lien*** | has the meaning set forth in section 101(37) of the Bankruptcy Code. |
| ***Litigation Claims*** | means any claims or causes of action held or asserted by the Debtors. |
| ***Local Bankruptcy Rules*** | means the local rules of the Court, as applicable from time to time in the Chapter 11 Cases. |
| ***New Term Loan*** | means the senior secured term loan facility to take effect on the Effective Date and which will be issued to the Term Lenders. The New Term Loan shall be governed by the Amended and Restated Senior Secured Term Loan Agreement to be dated as of the Effective Date, among the Stalking Horse Purchaser, the Term Lenders and to the extent necessary Banning, which agreement shall be in form and substance acceptable to the Stalking Horse Purchaser. The aggregate principal amount of the New Term Loan as of the Effective Date shall be |

equal to the amount of the Term Lenders' Allowed Claims (which shall equal the principal amount, plus accrued interest and other arrearages arising under the Term Loan) as of the Effective Date. The New Term Loan, as provided in the Amended and Restated Senior Secured Term Loan Agreement, shall (i) have a "Maturity Date" of September 7, 2019, and (ii) bear and pay interest at the market interest rate which shall be either the 1 or 3 month Libor, as selected by the Purchaser from time to time upon the expiration of the current Libor period, plus 200 basis points.

*Order*

means an order or judgment of the Court as entered on the Docket.

*Other Priority Claim*

means any Claim, other than an Administrative Claim or a Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

*Other Subordinated Claims*

means Claims, that are subordinated pursuant to Section 510(b) of the Bankruptcy Code.

*Person*

means any individual, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, government or political subdivision, official committee appointed by the United States Trustee, unofficial committee of creditors or equity holders, or other entity (as defined in the Bankruptcy Code).

*Petition Date*

shall have the same meaning as Commencement Date.

*Plan*

means this Chapter 11 plan of liquidation as it may be amended or modified, from time to time, together with all addenda, exhibits, schedules, supplements or other attachments, if any.

*Plan Agent*

means the person selected by the Debtors, at or prior to the Confirmation Hearing to oversee the wind up of the Debtors' affairs and the administration of the Post Effective Date Debtors following the Effective Date, or any successor thereto approved by the Court as the representative of the Post Effective Date

Debtors for purposes of administering the Plan.

**Plan Supplement**

means the forms of documents specified in Section 12.19 of the Plan.

**Post Effective Date Debtors**

shall mean the Debtors in their post Effective Date status.

**Post petition Tax Claims**

means Administrative Claims and other Claims by a governmental unit for taxes against the Debtors (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Commencement Date through and including the Effective Date.

**Priority Claim**

means an Allowed Claim entitled to priority under sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code, and includes Priority Tax Claims.

**Priority Tax Claims**

means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**Pro Rata**

means, with respect to any Distribution on account of an Allowed Claim or Allowed Equity Interest, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim or Allowed Equity Interest in a Class to the amount of such Allowed Claim or Allowed Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Allowed Equity Interests in such Class to the amount of all Allowed Claims or Allowed Equity Interests in such Class, respectively.

**Property**

shall mean the real property located in Colorado Springs, Colorado which is owned by Debtors.

**Purchaser**

shall have the same meaning as Buyer.

**Reinstated**

means, (a) with respect to a Claim, (i) the Debtors shall cure any default with respect to such Claim that occurred before or after the Commencement Date, (ii) the maturity of such Claim shall be reinstated as such maturity existed before any such default, (iii) the Holder of such Claim shall be compensated for any damages incurred as a result of any reasonable reliance by the Holder on any right

to accelerate its Claim, and (iv) the legal, equitable, and contractual rights of such Holder will not otherwise be altered and (b) with respect to an Equity Interest, the legal, equitable and contractual rights of the Holder of such Equity Interest will not be altered.

**Revolver Credit Agreement**

means that certain Senior Secured Revolving Credit Agreement dated as of September 7, 2007, as amended, by and among Devco as borrower, KeyBank National Association and the lenders thereto.

**Revolving Lenders**

means those lenders under the Revolving Credit Agreement.

**Sale Agreement**

means the agreement with the Buyer and all related documents to be in effect on and after the Effective Date whereby the Buyer will purchase all or substantially all of the Debtors' assets as a going concern in return for the consideration provided for in the Sale Agreement.

**Sale Transaction**

means a transaction pursuant to which a Buyer purchases all or substantially all of the Debtors' assets as a going concern.

**Scheduled**

means set forth on the Schedules.

**Schedules**

means the schedules of assets and liabilities filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any amendments and modifications thereto through the Confirmation Date.

**SEC**

means the United States Securities and Exchange Commission.

**Secured Claim**

means any Claim secured by a lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

means BLR GF LLC, an newly formed entity formed by and affiliated with Greenfield BLR

| | |
|---|---|
| ***Stalking Horse Purchaser*** | Finance Partners, L.P. and BDL Investors, LLC, the proposed Buyer of The Banning Lewis Ranch Company, LLC's assets pursuant to an Asset Purchase Agreement. |
| ***Tax Claim*** | means any unsecured Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code. |
| ***Term Lenders*** | means those lenders under the Term Loan. |
| ***Term Loan*** | means the loan provided by the Term Lenders pursuant to the Senior Secured Term Loan Agreement By and Among Banning and the Term Lenders dated September 7, 2008, as amended from time to time. |
| ***Tort Claim*** | means any Claim related to personal injury, property damage, products liability, wrongful death, employment litigation, or other similar Claims against the Debtors which allegedly arose out of events which occurred, in whole or in part, prior to the Commencement Date. |
| ***Transaction Proceeds*** | means the consideration from or as a result of a Sale Transaction or cash, to the extent such is available for distribution to Holders of Allowed Claims. |
| ***UCC*** | means the Uniform Commercial Code, as enacted in Delaware and in effect and as modified or amended at any relevant time. |
| ***Unimpaired*** | means with reference to a Class of Claims or Equity Interests, that the Class is not Impaired. An Unimpaired Class is not entitled to vote on the Plan. |
| ***Voting Deadline*** | means the date on which Ballots must be <u>received</u> by the Debtors' counsel. For purposes of the Plan, the Voting Deadline is _____, 2011 at 4:00 p.m. (Prevailing Eastern Time), or, if the Voting Deadline is extended by Court Order, the latest date on which a Ballot will be accepted. |

## Section 2.02    Interpretation And Computation of Time

(a)    Defined Terms.

Any term used in the Plan that is not defined in the Plan, either in Article II (Definitions) or elsewhere, but that is used in the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, as the case may be.

(b)    Rules of Interpretation.

For purposes of the Plan: (a) whenever it appears appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms, or conditions that is material to a party to such document shall not be made without such party's consent; (c) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or (to the extent otherwise permitted, hereafter) may be amended, modified or supplemented from time to time; (d) unless otherwise specified in a particular reference, all references in the Plan to paragraphs, Articles and Exhibits are references to paragraphs, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to Articles and paragraphs are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) all exhibits to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, provided that they are Filed no later than the commencement of the Confirmation Hearing.

(c)    Time Periods.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following is a designation of the Classes of Claims and Equity Interests under the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Class or Classes. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest is an Allowed Claim or Allowed Equity

Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date; a Claim or Equity Interest that is not an Allowed Claim or Allowed Equity Interest is not in any Class. A Disputed Claim or Disputed Equity Interest, to the extent that it subsequently becomes an Allowed Claim or Allowed Equity Interest, shall be included in the Class for which it would have qualified had it not been disputed. Notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim or Equity Interest that is not an Allowed Claim or an Allowed Equity Interest.

THE FOLLOWING TREATMENT IS SUBJECT TO, AND CONTINGENT UPON APPROVAL BY THE COURT OF THIS PLAN, AND THE SALE OF THE DEBTORS' ASSETS IN BANNING UNDER 11 U.S.C. §§ 1123 AND 1129, AND THE SALE OF THE DEBTORS' ASSETS IN DEVCO, EITHER UNDER 11 U.S.C. § 363 OR 11 U.S.C. §§ 1123 AND 1129. IN THE EVENT NO PARTY BIDS ON THE ASSETS OF DEVCO, THIS PLAN WILL BE MODIFIED TO EXCLUDE THE TREATMENT OF CLAIMS AGAINST DEVCO.

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| --- | Administrative Claims | Debtors do not anticipate that there will be any Administrative Claims. To the extent that there are Administrative Claims, they will be paid in full in Cash on the Effective Date or as soon as practicable thereafter, or in accordance with the terms and conditions of transactions or agreements relating to obligations incurred in the ordinary course of business during the pendency of the Chapter 11 Cases or assumed by Buyer. The total amount of Administrative Claims is estimated to be $0 as they are to be paid in the ordinary course of business. To the extent that any such claims exist, the Stalking Horse Purchaser's bid includes up to $100,000 to be paid towards Administrative, Priority Tax, and Priority Claims. | 100% |
| --- | Priority Tax Claims | Debtors do not anticipate that there will be any Priority Tax Claims. To the extent that there are Priority Tax Claims, they will be paid in full in Cash on the Effective Date or as soon as practicable thereafter, or in accordance | 100% |

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|-------|------------------------------------------|-----------|--------------------|
| | | with the terms and conditions of transactions or agreements relating to obligations incurred in the ordinary course of business during the pendency of the Chapter 11 Cases or assumed by Buyer. The total amount of Priority Tax Claims is estimated to be $0 as they are to be paid in the ordinary course of business. To the extent that any such claims exist, the Stalking Horse Purchaser's bid includes up to $100,000 to be paid towards Administrative, Priority Tax, and Priority Claims. | |
| 1 | DIP Credit Facility Claims | Unimpaired. Pursuant to the Asset Purchase Agreement with the Stalking Horse Purchaser for the Debtors' assets in Banning, the lenders under the DIP Credit Facility will waive their rights to repayment of the DIP Credit Facility.[2] | 100% |
| 2 | Secured Claims of Term Lenders against Banning[3] | Impaired.[4] The Term Lenders shall, pursuant to § 1129(b)(2), (i) retain their security interest and liens against the Banning Assets, and (ii) receive deferred cash payments in an amount equal to the Allowed amount of their claim pursuant to the terms of the New | 100% |

---

[2] To the extent that the Stalking Horse Purchaser is not the successful bidder at the Auction, any higher and better bid would likely, absent consent of the DIP Facility Lender, be required to repay the obligations still outstanding under the DIP Credit Agreement through the date of termination of the DIP Credit Agreement, plus any additional funding necessary to reach closing of the Sale Transaction..

[3] Defined below.

[4] To the extent that the Stalking Horse Purchaser is not the successful bidder at the Auction, any higher and better bid would likely be required to satisfy the obligations to the Term Lenders in accordance with 11 U.S.C. § 1129(b)(2)(A)(i), or, alternatively, in accordance with 11 U.S.C. § 363. Still alternatively, the Term Lenders may consent to other treatment. In any such event, the Plan will be modified to address the contemplated treatment of the Term Lenders.

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|-------|------------------------------------------|-----------|--------------------|
| | | Term Loan and in accordance with the terms and conditions of the Amended and Restated Senior Secured Term Loan Agreement. | |
| 3 | Secured Claims of Revolver Lenders against Devco | Impaired. The Debtors anticipate that the Secured Claims of the Revolver Lenders under the Revolver Credit Agreement will be impaired, and paid the amount received for the purchase of the Devco assets, after an auction, if any, for the Devco assets.[5] Any amount received by the Revolver Lenders will be in full and final satisfaction of the Revolver Lenders' secured claim and liens. | Unknown |
| 4A | City of Colorado Springs, CO Claims (Banning) | Impaired. The City will retain any interest that it has in any letters of credit and performance bonds posted by the Debtors prior to the Effective Date, provided however, that the Debtors shall not pay any further premiums or renew or extend terms of any such letters of credit or performance bonds which shall expire pursuant to their terms. On the Effective Date, or as soon as practicable thereafter, the City of Colorado Springs will receive its *pro rata* share of the Banning Distributable Assets. The Banning Distributable Assets will first be used to make Distributions to the Banning Convenience Class Claims (Class 7A) then distributed in a *pro rata* fashion between the City of Colorado Springs, CO Claims (Banning) (Class 4A), and Banning General Unsecured Claims (Class 8A). | Unknown |

---

[5] In the event no party bids on the Debtors' assets in Devco, the Plan will be modified to exclude any treatment of claims against Devco.

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|-------|------------------------------------------|-----------|--------------------|
| 4B | City of Colorado Springs, CO Claims (Devco) | Impaired. The City will retain any interest that it has in any letters of credit and performance bonds posted by the Debtors prior to the Effective Date, provided however, that the Debtors shall not pay any further premiums or renew or extend terms of any such letters of credit or performance bonds which shall expire pursuant to their terms. On the Effective Date, or as soon as practicable thereafter, the City of Colorado Springs will receive its *pro rata* share of the Devco Distributable Assets. The Devco Distributable Assets will first be used to make Distributions to the Devco Convenience Class Claims (Class 7B) then distributed in a *pro rata* fashion between the City of Colorado Springs, CO Claims (Devco) (Class 4B), and Devco General Unsecured Claims (Class 8B). | Unknown |
| 5A | Banning Other Secured Claims | Unimpaired. Banning does not anticipate that there will be any Banning Other Secured Claims. To the extent any Banning Other Secured Claims exist, Banning shall return the collateral to the holder of Such Banning Other Secured Claim. | 100% |
| 5B | Devco Other Secured Claims[6] | Unimpaired. Devco does not anticipate that there will be any Devco Other Secured Claims. To the extent any Devco Other Secured Claims exist, and | 100% |

---

[6] During the Debtors' chapter 11 cases, the Debtors obtained authority from the Bankruptcy Court to sell building lots in the ordinary course of business, and to pay liens at the closing of any sale. To the extent liens remain on the building lots, they will be assumed by the Buyer of the Devco assets. Other than certain mechanics' liens on the building lots, the Debtors are not aware of any other lien claims.

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|-------|------------------------------------------|-----------|--------------------|
|       |                                          | unless the Purchaser of the Devco assets agrees otherwise, the assets of Devco will be sold pursuant to a Sale Transaction, free and clear of all liens, security interests or other encumbrances on the assets, with any such lien, security interest or other encumbrance attaching to the proceeds of the sale. | |
| 6     | Priority Claims                          | Unimpaired. Debtors believe that no parties hold Priority Claims. To the extent that any such claims exist, the Stalking Horse Purchaser's bid includes up to $100,000 to be paid towards Administrative, Priority Tax, and Priority Claims. | 100% |
| 7A    | Banning Convenience Class Claims         | Impaired. Paid in the amount of 90% in Cash on the Effective Date or as soon as practicable thereafter. Under the Plan, unsecured claims which are allowed in the amount of $10,000 or less will be paid an amount equal to 90% of the amount of the Allowed claim. If a claim is for an amount in excess of $10,000, the creditor can elect to have such claim reduced to $10,000 so that, if allowed, it will be treated as a Banning Convenience Class Claim. | 90% |
| 7B    | Devco Convenience Class Claims           | Impaired. Paid in the amount of 90% in Cash on the Effective Date or as soon as practicable thereafter. Under the Plan, unsecured claims which are allowed in the amount of $10,000 or less will be paid an amount equal to 90% of the amount of the Allowed claim. If a claim is for an amount in excess of $10,000, the creditor can elect to have such claim reduced to $10,000 so that, if allowed, it will be treated as a | 90% |

| Class | Type of Allowed Claim or Equity Interest | Treatment | Estimated Recovery |
|-------|------------------------------------------|-----------|--------------------|
| | | Devco Convenience Class Claim. | |
| 8A | Banning General Unsecured Claims | Impaired. On the Effective Date, or as soon as practicable thereafter, Holders of Banning General Unsecured Claims will receive their *pro rata* share of the Banning Distributable Assets. The Banning Distributable Assets will first be used to make Distributions to the Banning Convenience Class Claims (Class 7A) then distributed in a *pro rata* fashion between the City of Colorado Springs, CO Claims (Banning) (Class 4A), and Banning General Unsecured Claims (Class 8A). | Estimated at 0% - 1% |
| 8B | Devco General Unsecured Claims | Impaired. On the Effective Date, or as soon as practicable thereafter, the Holders of Devco General Unsecured Claims will receive their *pro rata* share of the Devco Distributable Assets. The Devco Distributable Assets will first be used to make Distributions to the Devco Convenience Class Claims (Class 7B) then distributed in a *pro rata* fashion between the City of Colorado Springs, CO Claims (Devco) (Class 4B), and Devco General Unsecured Claims (Class 8B). | Estimated at 0% - 2% |
| 9 | Intercompany Claims | Impaired. Each Holder of an Allowed Intercompany Claim will not receive or retain any property or interest. | 0% |
| 10A | Banning Equity Interest Claims | Impaired. Equity of Banning will be canceled pursuant to the Plan. Each Holder of an Allowed Banning Equity Interest Claims Claim will not receive or retain any property or interest. | 0% |
| 10B | Devco Equity Interest Claims | Impaired. Equity of Devco will be canceled pursuant to the Plan. Each Holder of an Allowed Devco Equity | 0% |

Interest Claims Claim will not receive or retain any property or interest.

## ARTICLE IV.

## GENERAL PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

**Section 4.01       Unclassified Claims.**

### a.       Administrative Claims

i.       Administrative Claims include the costs and expenses of administration of the chapter 11 case of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code. Such costs include any actual, necessary costs and expenses of operating the Debtors' businesses and preserving the Debtors' estates, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their businesses, all compensation and reimbursement of expenses to the extent Allowed by the Court pursuant to Section 330 or Section 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtors' estates pursuant to Section 1930, Chapter 123 of Title 28 of the United States Code. Debtors anticipate that substantially all Administrative Claims will be paid in the ordinary course of business after the Petition Date, and the Stalking Horse Bid will satisfy all of the Debtors' obligations under the DIP Facility. Should any unpaid Administrative Claims exist as of the Effective Date of this Plan, those claims will be paid using funds set aside for Administrative and priority claims from the Sale Transactions. To the extent that any such claims exist, the Stalking Horse Purchaser's bid includes up to $100,000 to be paid towards Administrative, Priority Tax, and Priority claims.

ii.       Post-Petition Tax Claims

All requests for payment of Post-Petition Tax Claims, for which no bar date has otherwise been previously established, must be filed on or before the later of (i) sixty (60) days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any holder of any Post-Petition Tax Claim that is required to file a request for payment of such taxes and that does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtors, or any of their respective properties, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to, the Effective Date. The Debtors are paying all Post-Petition Tax Claims as they come due; however, certain taxing authorities conduct audits which may result in a post petition tax liability of which the Debtors are currently unaware. Should any unpaid Post-Petition Tax Claims exist as of the Effective Date of this Plan, those claims will be paid using funds set aside for Administrative and priority claims from the Sale Transactions. To the extent that any such claims exist, the Stalking Horse Purchaser's bid includes up to $100,000 to be paid towards Administrative, Priority Tax, and

Priority claims.

El Paso County, Colorado property taxes are paid one year in arrears. The Debtors' 2010 El Paso County property taxes were paid by the estate, pursuant to Court Order, in April 2011. The Debtors anticipate that certain portions of the El Paso County property taxes will need to be paid by each of the Debtors upon the sale of their respective real property. To the extent not paid, these taxes will be assumed by the Buyer.

### b. General

Subject to (x) the bar date provisions herein and (y) additional requirements for professionals and certain other entities set forth below, Plan Agent shall pay to each holder of an Allowed Administrative Claim, on account of their Administrative Claim and in full satisfaction thereof, Cash equal to the Allowed amount of such Administrative Claim on the Effective Date or as soon as practicable thereafter, unless the holder agrees or shall have agreed to other treatment of such Claim. Payment on an Administrative Claim that arose in the ordinary course of the Debtors' business will not be made until such payment would have become due in the ordinary course of the Debtors' business or under the terms of the Claim in the absence of the Chapter 11 Cases.

### c. Payment Of Statutory Fees

On or before the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the hearing on Confirmation, shall be paid in Cash equal to the amount of such Administrative Claim.

### d. Bar Date For Administrative Claims

#### i. General Provisions.

Except for (i) non-tax liabilities incurred in the ordinary course of business by the Debtors and (ii) Post-Petition Tax Claims, requests for payment of Administrative Claims must be filed and served on counsel for Debtors or the Plan Agent no later than (x) sixty (60) days after the Effective Date, or (y) such later date, if any, as the Court shall order upon application made prior to the end of such 60-day period. Holders of Administrative Claims (including, without limitation, professionals requesting compensation or reimbursement of expenses and the holders of any Claims for federal, state or local taxes) that are required to file a request for payment of such Claims and that do not file such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtors, the Plan Agent or any of their respective properties.

#### ii. Professionals.

All professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, inter alia, any compensation requested by any professional or any other Person for making a substantial contribution in the Liquidation Case) shall file and serve on the Debtors or Plan Agent an

application for final allowance of compensation and reimbursement of expenses no later than (i) sixty (60) days after the Effective Date, or (ii) such later date as the Court shall order upon application made prior to the end of such 60-day period. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on Debtors or Plan Agent and the professionals to whose application the objections are addressed on or before (i) sixty days after such application is filed and served or (ii) such later date as the Court shall order upon application made prior to the end of such 60-day period or upon agreement between the Debtors or Plan Agent and the affected professional. Any professional fees and reimbursements or expenses incurred by the Debtors or Plan Agent subsequent to the Effective Date may be paid by the Debtors or Plan Agent without application to or Order of the Court.

### iii. Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred post petition in the ordinary course of the Debtors' business (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims. Such Administrative Claims shall be paid by Debtors or Plan Agent pursuant to the terms and conditions of the Sale Transaction giving rise to such Administrative Claim, without any further action by the holders of such Claims.

### iv. Tax Claims.

All requests for payment of Post-Petition Tax Claims, for which no bar date has otherwise been previously established, must be filed on or before the later of (i) sixty (60) days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any holder of any Post-Petition Tax Claim that is required to file a request for payment of such taxes and that does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtors, or any of their respective properties, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to, the Effective Date. The Debtors is paying all Post-Petition Tax Claims as they come due; however, certain taxing authorities conduct audits which may result in a post petition tax liability of which the Debtors is currently unaware.

### e. Treatment of Priority Tax Claims.

Debtors do not anticipate any outstanding Priority Tax Claims. The Debtors do not anticipate that there will be any funds available to pay Priority Tax Claims as Priority Tax Claims. Should any unpaid Priority Tax Claims exist as of the Effective Date of this Plan, those claims will be paid using funds set aside for Administrative, Priority Tax, and Priority Claims from the Sale Transactions. To the extent that any such claims exist, the Stalking Horse Purchaser's bid includes up to $100,000 to be paid towards Administrative, Priority Tax, and Priority Claims.

**Section 4.02    Treatment of Classified Claims Against and Equity Interests in Debtors.**

   ***Class 1: DIP Credit Facility Claims***.  Class 1 shall consist of the claims of BDL Investors, LLC and Greenfield BLR Finance Partners, L.P., Lenders under the DIP Facility Credit Agreement.  On the Effective Date, to the extent that there are any other amounts outstanding under the DIP Credit Facility, pursuant to the Asset Purchase Agreement with the Stalking Horse Purchaser for the Debtors' assets in Banning, the Stalking Horse Purchaser will waive its rights to repayment under the DIP Credit Facility.[7]  Once such waiver has been made, the DIP Credit Facility shall be deemed terminated, and the lenders under the DIP Credit Facility shall take all reasonable action necessary to confirm the removal of any claims and liens on the properties and assets of the Debtors or Post-Effective Date Debtors securing the DIP Credit Facility Claim.

   The Holders of the Class 1 DIP Credit Facility Claims are Unimpaired and will be deemed to have accepted the Plan.

   ***Class 2:  Secured Claims of Term Lenders in Banning.***

   The Term Lenders shall, pursuant to § 1129(b)(2), (i) retain their security interest and liens against the Banning Assets, and (ii) receive deferred cash payments in an amount equal to the Allowed amount of their claim pursuant to the terms of the New Term Loan, as defined in the Plan, and in accordance with the terms and conditions of the Amended and Restated Senior Secured Term Loan Agreement.  Such deferred cash payments shall be made directly to the Term Lenders by the Stalking Horse Purchaser of Banning's assets.

   Class 2 is Impaired and therefore is entitled to vote on the Plan.

   ***Class 3:  Secured Claims of Revolver Lenders in Devco.***  Class 3 consists of the Secured Claims of the Revolver Lenders in Devco.  Treatment of the Secured Claims of the Revolver Lenders will be determined by the results of the auction for the assets of Devco.  Generally, on the Effective Date, or as soon as  practicable thereafter, the Holder of the Class 3 Secured Claims of the Revolver Lenders, if this Plan is confirmed, would accept, in full satisfaction, settlement, release and discharge of and in exchange for such Secured Claims, any amounts received pursuant to the sale of the Devco assets up to the amount of the Secured Claims of the Revolver Lenders.  In the event no party bids on the assets of Devco, this Plan will exclude treatment of the Secured Claims of Revolver Lenders, and disposition of the collateral securing such claims.

   Class 3 is Impaired and therefore is entitled to vote on the Plan.

---

  [7] To the extent that the Stalking Horse Purchaser is not the successful bidder at the Auction, any higher and better bid would likely, absent consent of the DIP Facility Lender, be required to repay the obligations still outstanding under the DIP Credit Agreement through the date of termination of the DIP Credit Agreement, plus any additional funding necessary to reach closing of the Sale Transaction.

***Class 4A – City of Colorado Springs, Colorado Claims (Banning)***.  Class 4A shall consist of the claims of the City of Colorado Springs, Colorado in Banning.

The City will retain any interest that it has in any letters of credit and performance bonds posted by the Debtors prior to the Effective Date, provided however, that the Debtors shall not pay any further premiums or renew or extend terms of any such letters of credit or performance bonds which shall expire pursuant to their terms.

In addition, on the Effective Date, or as soon as practicable thereafter, the City of Colorado Springs will receive its *pro rata* share of the Banning Distributable Assets.  The Banning Distributable Assets will first be used to make Distributions to the Banning Convenience Class Claims (Class 7A) then distributed in a *pro rata* fashion between the City of Colorado Springs, CO Claims (Banning) (Class 4A), and Banning General Unsecured Claims (Class 8A).

Class 4A is impaired and entitled to vote for the Plan.

***Class 4B – City of Colorado Springs, Colorado Claims (Devco)***.  Class 4B shall consist of the claims of the City of Colorado Springs, Colorado in Devco.

The City will retain any interest that it has in any letters of credit and performance bonds posted by the Debtors prior to the Effective Date, provided however, that the Debtors shall not pay any further premiums or renew or extend terms of any such letters of credit or performance bonds which shall expire pursuant to their terms.

In addition, on the Effective Date, or as soon as practicable thereafter, the City of Colorado Springs will receive its *pro rata* share of the Devco Distributable Assets.  The Devco Distributable Assets will first be used to make Distributions to the Devco Convenience Class Claims (Class 7B) then distributed in a *pro rata* fashion between the City of Colorado Springs, CO Claims (Devco) (Class 4B), and Devco General Unsecured Claims (Class 8B).

Class 4B is impaired and entitled to vote for the Plan.

***Class 5A: Banning Other Secured Claims***.  Class 5A consists of all other Secured Claims against Banning.  To the extent any Banning Other Secured Claims exist, they are unimpaired.  To the extent any Banning Other Secured Claims exist, and unless the purchaser of the Banning assets otherwise agrees, the assets of Banning will be sold pursuant to a Sale Transaction, free and clear of all liens, security interests or other encumbrances on the assets, with any such lien, security interest or other encumbrance attaching to the proceeds of the sale or the collateral will be returned to the claimant.

If a Banning Other Secured Claim Holder chooses to release and waive its security interest, such Banning Other Secured Claim will become and be treated as a Banning General Unsecured Claim.

The Holders of the Class 5A Claims are Unimpaired and will be deemed to have accepted the Plan.