| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No.: 10-13445 (KJC) |
| THE BANNING LEWIS RANCH | ) | |
| COMPANY, LLC, et al.,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Related docket Nos. 38, 109, 232, 390 |
| | ) | |
| | ) | **Hearing Date: July 28, 2011 at 11:00 a.m.** |
| | ) | **(proposed)** |

## RENEWED MOTION OF COLORADO SPRINGS TO TRANSFER VENUE

City of Colorado Springs, a Colorado Municipal Corporation and Home Rule City, on

behalf of itself and its Enterprise Colorado Springs Utilities ("Colorado Springs"), by its

attorneys Sherman & Howard L.L.C. and Sullivan Hazeltine Allinson LLC, hereby files this

Renewed Motion to Transfer Venue (the "Renewed Venue Motion"). In support of the Renewed

Venue Motion, Colorado Springs respectfully states as follows:

### SUMMARY

1.    The Court previously ruled that it would consider a renewed venue motion "if it

turns out that, as part of the sale process, the debtor proposes over the objection of the City . . . to

disturb any of the land use requirements or restrictions or any of the obligations under the recorded

agreements . . . ." *See* Venue Hearing Transcript (defined below), p. 136. Ultra Resources, Inc.

("Ultra"), the winning bidder for the assets of Debtor Banning Lewis Ranch Company, LLC

("Banning"), has now mounted a frontal assault on all land use regulations governing the real

---

[1] The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification numbers, are The Banning Lewis Ranch Company, LLC (4090) and Banning Lewis Ranch Development I & II, LLC (3461). The Debtors' corporate headquarters and the service address for each Debtor is 101 West Avenue, Jenkintown, Pennsylvania 19046.

property known as Banning Lewis Ranch, with the apparent acquiescence of the Debtors. Notably, the relief requested by Ultra would necessarily affect adversely all other annexors within Banning Lewis Ranch and throw into confusion the orderly development of both Banning Lewis Ranch and surrounding areas. In addition, Ultra's arguments require resolution of questions of Colorado law related to land use and a local government's police and regulatory powers.

2.      The Court should transfer venue to the United States Bankruptcy Court for the District of Colorado because:

    (a)    the planned orderly development of Banning Lewis Ranch, which is essential to the future of Colorado Springs, has been put into question by Ultra;

    (b)    Ultra's arguments that the Bankruptcy Court should wipe out local land use regulation in the Banning Lewis Ranch depend upon resolution of important and complex issues of Colorado law that include critical public policy concerns;

    (c)    the relief requested by Ultra would adversely impact all other annexors within Banning Lewis Ranch, as well as surrounding communities;

    (d)    the issues raised by Ultra will affect Colorado Springs, El Paso County, surrounding communities, and the metropolitan districts for Banning Lewis Ranch, which are quasi-governmental entities.

3.      In short, the interests of justice require that these cases be transferred to Colorado so that issues of local concern can be decided by Colorado courts.

4.      Colorado Springs incorporates and adopts by reference as if stated fully herein the Motion of Colorado Springs to Transfer Venue (Docket No. 38) (the "Original Venue Motion") and the evidence introduced at the hearing on December 8, 2010. See Transcript of December 8,

2010 hearing (Docket No. 232) ("Venue Hearing Transcript"). A copy of the Venue Hearing Transcript is attached to this Renewed Venue Motion as Exhibit A.[2]

## PARTIES, JURISDICTION, AND VENUE

5.      Banning Lewis Ranch Development I & II, LLC ("BLRD") and The Banning Lewis Ranch Co., LLC ("BLRC") (collectively, the "Debtors") filed their voluntary chapter 11 bankruptcy petitions on October 28, 2010. Both Debtors are limited liability companies formed under the laws of the State of Delaware. Both Debtors are authorized to conduct business in the State of Colorado.

6.      No statutory committees have been formed, and no trustees or examiners have been appointed.

7.      The City of Colorado Springs is a Colorado municipal corporation and home rule city. Colorado Springs Utilities is an enterprise of the City of Colorado Springs pursuant to Article X, Section 20 of the Colorado State Constitution and Article VII, Section 7-90 of the Charter of the City of Colorado Springs. Colorado Springs is a party in interest in these bankruptcy cases.

8.      This Court has jurisdiction over these bankruptcy cases pursuant to 28 U.S.C. § 1334.

9.      Pursuant to 28 U.S.C. § 1408, these bankruptcy cases may be commenced in this Court only because each of the Debtors are Delaware entities.

10.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[2] Terms not defined herein shall have the meaning given them in the Original Venue Motion.

11.    The statutory bases for the relief requested in this Motion are 11 U.S.C. § 105(a), 28 U.S.C. § 1412, and Fed.R.Bankr.P. 1014.

## BACKGROUND[3]

12.    On November 12, 2010, Colorado Springs filed the Original Venue Motion arguing that venue of their bankruptcy cases should be transferred to Colorado for the convenience of witnesses and the interests of justice. Debtors and other parties in interest (the pre-petition lenders and certain insiders) objected to the Original Venue Motion. The Court conducted an evidentiary hearing on the Original Venue Motion on December 8, 2010 (the "December 8, 2010 Venue Hearing").

13.    The Court denied the Original Venue Motion, without prejudice. At the December 8, 2010 Venue Hearing, the Court recognized the importance of the city planning regime and land use regulations. The Court specifically stated that Colorado Springs could renew the Original Venue Motion if Debtors made any effort "to disturb any of the land use requirements or restrictions or any of the obligations under the recorded agreements...." *See* Venue Hearing Transcript, p. 136.

14.    Then last week, on July 19, 2011, Ultra requested, in the broadest terms possible, that its purchase of the property be free and clear of each and every agreement between Colorado Springs and Banning. Ultra even insists that the sale be free and clear of easements that have already been transferred and dedicated. *See* Response of Ultra Resources, Inc. to (1) Colorado Springs' Response to (1) Colorado Springs' Limited, Anticipatory Objection and Reservation of

---

[3] Colorado Springs is filing today the Declaration of Patricia K. Kelly for the July 28th Hearing, which it incorporates and adopts by this reference as if stated fully herein; and the Declaration of Bruce McCormick in Support of Colorado Springs' Renewed Motion to Transfer Venue and in Support of Objections to Debtors' Sale Motions and Proposed Orders, which it incorporates and adopts by this reference as if stated fully herein.

Rights to the Motion of the Banning Lewis Ranch Co., LLC for an Order: (I) (A) Declaring the Stalking Horse Purchaser the Winning Bidder, (B) Assuming and Assigning Certain Executory Contracts and Unexpired Leases and (C) Granting Related Relief; or (II) in the Alternative (A) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m), (B) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief and Request for Adequate Protection Pursuant to 11 U.S.C. § 363(e); and (2) Colorado Springs' Limited, Anticipatory Objection and Reservation of Rights Concerning the Notices to Counterparties to Executory Contracts and Unexpired Leases That May Be Assumed and Assigned ("Ultra's Response") (Docket No. 390).

15.     Ultra proposes to eliminate the Annexation Agreement, recorded at Book 5557, Page 405, on September 23, 1988, adopted by the Colorado Springs City Council on March 8, 1988, City Council Resolution 47-88.  In addition, Ultra would eliminate all of the agreements, legislative acts, covenants running with the land, tariffs, regulations, and rules arising from and implementing the Annexation Agreement.  Partial listings of those agreements, legislative acts, covenants running with the land, and other recorded documents, and documents available on the Colorado Springs web site, were attached as Exhibits A and B to Colorado Springs' June 22, 2011 Limited Objection and Reservation of Rights to Debtor's Motion for an Order Declaring the Stalking Horse Purchase the Winning Bidder, etc. (Docket No. 341).

16.     Repeatedly during the December 8, 2010 Venue Hearing, the Court was assured that there was no anticipated intent to sell the property free and clear of the Annexation

Agreements and other land use restrictions. The importance of this issue to the Court was manifest to all from the Court's questions and comments during Debtors' counsel's closing:

> QUESTION (BY THE COURT): With respect to the proposed or the planned structure of a sale, is it anticipated that modification or alteration of what would – I'll generally characterize as land use restrictions – requirements, would be altered in connection with the sale process?

> ANSWER (BY MR. SIMON, COUNSEL FOR DEBTORS): Your Honor, I'm not aware of any proposed alterations of the existing agreements or land use issues. I will say, I don't think that the Debtors have the authority to modify or alter the City's police and zoning powers so I think, generally speaking, we can. I don't have any – I don't think there's any – we haven't filed bid procedures or a sale motion but my understanding is that there is no attempt to alter or amend anything with the City. Now I don't know if a prospective buyer – I have not talked to Eastdil about any prospective buyers if they might have a concern about an agreement but it's not the Debtors' intent. I think, as I stated at the outset, the Debtors' belief – current belief that many of these agreements are working or have worked. And they're modified when they don't, so.

> \* \* \*

> I think what the evidence shows is that these agreements are modified, amended, assigned, moved all the time in accordance with economic feasibility and growth. So I would expect that to continue, Your Honor.

> THE COURT: Okay. The reason I ask the question, if it's not already obvious, it seems to me that one of the keen interests that the City and its utilities arguably have is the risk – if, in fact, there is any – that a proposed sale is involved, will require that the buyer take free and clear of certain things. And, you know, I've seen lots of requests to the – that buyers be relieved of certain obligations whether they should be or shouldn't. And my focus here, given the context of the motion, would be on, as I said the land use –

> MR. SIMON: Right.

> THE COURT: - requirements.

6

Venue Hearing Transcript, pp. 91-92.

17.     In its ruling, the Court relied upon those assurances and made clear to all parties

that it would consider a renewed venue motion if the Annexation Agreement and other land use

restrictions were subsequently attacked, as is now the case.  At the December 8, 2010 Venue

Hearing, this Bankruptcy Court denied Colorado Springs' Original Venue Motion *without*

*prejudice* and there addressed the very situation that Ultra raised in the Ultra Response last week,

as follows:

> And now I'll get to the last part of what I have to say.  I'm denying
> the motion without prejudice because if it turns out that, as part of
> the sale process, the Debtor proposes over the objection of the
> City—and I'll give a caveat about that in a moment—to disturb
> any of the land use requirements or restrictions or any of the
> obligations under the reported agreements, I would consider a
> renewed venue motion at that time.  And I will tell you without
> respect to any timetable that I would approve beforehand in
> connection with DIP loan.  So, the Debtor has to be aware that it
> should develop that, unlike the Debtor has indicated and others
> who have joined, that we are going to get into the land use issues
> in any meaningful way, over the objection of the city, I would
> consider a renewed motion at that time.

Venue Hearing Transcript, p. 136.

18.     Since the December 8, 2010 Venue Hearing, Colorado Springs has raised at each

juncture of the sale process the necessity of respecting the city planning land use scheme

developed through the Annexation Agreement.  Until last week, July 19, 2011, there had never

been a specific request to eradicate that planning structure, its legislative enactments and all the

agreements recorded and running with the land.

19.     All that changed with Ultra's Response in which Ultra asks the Court to find that

"Ultra shall have no liability or obligations of any kind or nature whatsoever arising from or

relating to the [Colorado Springs] Agreements upon the Closing of the APA and the Sale of the Acquired Assets by the Debtor to Ultra, [and] the Acquired Assets may be sold by the Debtor to Ultra pursuant to the APA free and clear of the [Colorado Springs] Agreements and all rights, interests, claims, obligations, covenants, liabilities and requirements arising thereunder or related thereto ...." Ultra's Response, pp. 31 - 32.

## ARGUMENT

20.     Implicit in this Court's ruling at the December 8, 2010 Venue Hearing was the well established preference of bankruptcy courts to have important matters of public concern decided by local courts. *In re Condor Exploration, LLC*, 294 B.R. 370, 378 (Bankr. D. Colo. 2003) (a significant consideration in choice of venue is "a state's interest in having local controversies decided within its borders," (citation omitted); *In re Innovative Communication*, 358 B.R. 120, 127 (Bankr D. Del. 2006) (noting that the local public interest in the U.S. Virgin Islands is "great" where the debtor's own companies function as the telephone, newspaper, and other public communication vehicles in the U.S. Virgin Islands.) The relief requested by Ultra and its specious, unsupported arguments of changed circumstances represents the type of situation Judge Clark envisioned in *In re Abacus Broadcasting Corp.*, 154 B.R. 682, 684 (Bankr. W.D. Tex. 1993), where he stated: "the court's familiarity with milieu is...highly relevant."

21.     In addition, development of real property has always been a matter of inherent and essential local concern. *In re B.L. of Miami, Inc.*, 294 B.R. 325, 332 (Bankr. D. Nev. 2003) ("matters concerning real property have always been of local concern and traditionally are decided at the location of the property.")

22.     If the Court were to grant the relief requested by Ultra, the impact of that relief on other annexors subject to the covenants running with the land, legislative acts, deed restrictions, easement dedications, rules, regulations, tariffs, agreements and other numerous documents and acts of Colorado Springs will be uncertain.  Issues of local concern include what role the special districts will have, how future infrastructure will be financed, and whether other annexors, including those that are no loner contiguous to Colorado Springs, will continue to be subject to the Annexation Agreement.  Numerous agreements that run with the land and that are legislative acts, including several agreements finalized in recent years, would be adversely affected.

## CONCLUSION

For the reasons set forth in Colorado Springs' Original Venue Motion, in the Renewed Venue Motion, at the December 8th Venue Hearing, and for the reasons articulated by this Court in its December 8, 2010 ruling denying *without prejudice* Colorado Springs' Original Venue Motion, venue of these cases should now be transferred to the United States Bankruptcy Court for the District of Colorado.


//


//


//

Accordingly, Colorado Springs respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit B, transferring venue of these bankruptcy cases to the United States Bankruptcy Court for the District of Colorado and granting additional relief as the Court deems appropriate.

Dated this 26th day of July, 2011.

Respectfully submitted,

SULLIVAN • HAZELTINE • ALLINSON LLC

_William A. Hazeltine (DE Bar ID 3294)_
901 North Market Street, Suite 1300
Wilmington, DE 19801
Phone : 302-428-8191
Fax : 302-428-8195
E-Mail : whazeltine@sha-llc.com

AND

Peter A. Cal (Admitted Pro Hac Vice)
Mark L. Fulford (Admitted Pro Hac Vice)
SHERMAN & HOWARD L.L.C.
633 17th Street, Suite 3000
Denver, CO  80202
Phone:  303-297-2900
Fax:  303-298-0940
E-Mail: pcal@shermanhoward.com
        mfulford@shermanhoward.com

**ATTORNEYS FOR CITY OF COLORADO SPRINGS, A COLORADO MUNICIPAL CORPORATION AND HOME RULE CITY, ON BEHALF OF ITSELF AND ITS ENTERPRISE COLORADO SPRINGS UTILITIES**