# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
In re: :
: Chapter 11
:
THE BANNING LEWIS RANCH COMPANY, : Case No. 10-13445 (KJC)
LLC, *et al.*,[1] :
:
Debtors. : Jointly Administered
:
: Related to Doc. Nos. 319, 378, 388, 389 and 392
: **Hearing: July 28, 2011 at 11:00 a.m.**
:
---------------------------------------------------------------x

**ULTRA RESOURCES, INC.'S OMNIBUS REPLY IN SUPPORT OF PROPOSED ORDER: (I) APPROVING THE SALE OF THE BANNING LEWIS RANCH COMPANY, LLC'S ASSETS FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE; (II) ASSUMING AND ASSIGNING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) <u>GRANTING RELATED RELIEF</u>**

Ultra Resources, Inc. ("<u>Ultra</u>") files this Omnibus Reply (the "<u>Omnibus Reply</u>") in Support of Proposed Order: (I) Approving the Sale of The Banning Lewis Ranch Company, LLC's Assets Free and Clear of All Liens, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief (the "<u>Proposed Sale Order</u>").[2] In support of the Omnibus Reply, Ultra respectfully represents the following:

## **Factual Background**

---

[1] The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification number, are The Banning Lewis Ranch Company, LLC (4090) and Banning Lewis Ranch Development I & II, LLC (3461). The Debtors' corporate headquarters and the service address for each Debtor is 101 West Avenue, Jenkintown, Pennsylvania 19046.

[2] (Doc. No. 378).

1. On July 1, 2011, the Court entered its *Order: (I) Determining The Winning Bidder of the Banning Lewis Ranch Company, LLC's Assets at Auction; (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Winning Bidder Order") (Doc. No. 371). Pursuant to paragraph 17 of the Winning Bidder Order, the Debtor filed and duly served the Proposed Sale Order in a form approved by Ultra. Paragraph 18 of the Winning Bidder Order set July 19, 2011 at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing any objections to the form of the Proposed Sale Order.

2. On July 19, 2011, the City of Colorado Springs and its enterprise, Colorado Springs Utilities (collectively, the "City") filed Colorado Springs' Limited Objection and Reservation of Rights to the Proposed Order: (I) Approving the Sale of The Banning Lewis Ranch Company, LLC's Assets Free and Clear of All Liens, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief and Request for Adequate Protection Pursuant to 11 U.S.C. § 363(e) (the "City Objection") (Doc. No. 389). Also on July 19, 2011, KeyBank National Association ("KeyBank") filed the Agent's Statement of Position with Respect to Matters Put At Issue by City of Colorado Springs (the "KeyBank Objection") (Doc. No. 388).

3. On July 20, 2011, Associated Bank National Association ("Associated") filed the Limited Objection of Associated Bank, as Administrative Agent under Term Facility, to the Proposed Order: (I) Approving the Sale of The Banning Lewis Ranch Company, LLC's Assets Free and Clear of All Liens, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief and Request for Adequate Protection

Pursuant to 11 U.S.C. § 363(e) (the "Associated Objection") (collectively, with the City Objection and KeyBank Objection, the "Sale Order Objections") (Doc. No. 392).

4. In accordance with paragraph 21 of the Winning Bidder Order, Ultra files this Omnibus Reply in response to the Sale Order Objections and in support of the Proposed Sale Order.[3]

## Reply

### I. The City Objection.

5. Many of the concerns about the Proposed Sale Order raised by the City stem directly from the City's disagreement with Ultra over the threshold issues of whether (i) the executory contracts with the City can be rejected pursuant to Section 365 and (ii) whether the Debtor's Real Property[4] can be sold to Ultra free and clear of the CS Agreements and the rights, interests, covenants, obligations and liabilities asserted thereunder by the City under Section 363(f).[5] Ultra requests that the Court adjudicate these threshold issues, which have been addressed at length in Ultra's Response in accordance with paragraph 21 of the Winning Bidder

---

[3] Ultra does not waive, by the filing of the Omnibus Reply, any argument, to the extent deemed relevant and appropriate by the Court, it may have to oppose the Associated Objection as late-filed.

[4] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Ultra Resources, Inc.'s Response to (1) Colorado Springs' Limited, Anticipatory Objection and Reservation of Rights to the Motion of the Banning Lewis Ranch Co., LLC for an Order: (I)(A) Declaring the Stalking Horse Purchaser the Winning Bidder (B) Assuming and Assigning Certain Executory Contracts and Unexpired Leases and (C) Granting Related Relief; Or (II) In the Alternative (A) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m), (B) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief and Request for Adequate Protection Pursuant to 11 U.S.C. § 363(e); and (2) Colorado Springs' Limited Anticipatory Objection and Reservation of Rights Concerning the Notices of Counterparties to Executory Contracts and Unexpired Leases That May Be Assumed and Assigned (the "Response") (Doc. No. 390). The Response is hereby fully incorporated and adopted by reference herein.

[5] *See*, *e.g.*, City Objection, ¶¶ 2-4, 7, 9, 10, 13, 14.

Order, in approving the sale of the Real Property. As the Response explains, Ultra is not required to be bound by the CS Agreements once it acquires title to the Real Property, and Ultra's proposed ownership of the Real Property should be free of any contractual rights, interests, obligations or covenants arising pursuant to the CS Agreements. Inherent in the process of selling the Real Property free of these encumbrances, is the reality that the executory CS Agreements associated with the property are subject to rejection. The Proposed Sale Order's treatment of the CS Agreements is appropriate because it makes clear two important matters regarding the Sale. First, the Proposed Sale Order provides that the interests, rights, covenants, obligations and liabilities asserted by the City under the CS Agreements no longer attach to the Real Property once Ultra acquires title to it pursuant to Section 363(f). Second, the Proposed Sale Order provides for this Court's ruling that the CS Agreements are executory contracts which are not required to be assumed by Ultra, and that are, therefore, subject to rejection by the Debtor. Indeed, because of the City's positions, the Proposed Sale Order make clear a third matter that results from the Sale: that Ultra is not the successor of the Debtor with respect to those liabilities of the Debtor that Ultra does not designate as being Assigned Contracts pursuant to the APA.

6. The City also objects to the Proposed Sale Order on the basis that some of the property described as being owned by the Debtor in the legal description attached to the APA was previously transferred to the City.[6] However, although the APA and the accompanying legal description was made available to all interested parties no later than June 29, 2011 (when the Winning Bidder Order was entered),[7] the City still has not provided any details of these

---

[6] *Id*. at ¶ 11.

[7] The legal description of the Real Property included in Ultra's APA is the same as the legal description used in the Stalking Horse APA, which, upon information and belief, was the legal

4

alleged prior conveyances, stating instead only that it "is preparing a list of such transfers."[8] To the extent the Debtor, Ultra and other relevant parties are prepared to proceed with the Closing using the legal description attached to the APA (as corrected to account for the typographical errors Ultra has previously identified and shared with the Debtor and the City), the Court ought not delay Closing. If the City timely produces specific and detailed information about the alleged prior conveyances, of course, it is possible all parties could benefit from the review and evaluation of that information. Failing that, the Court should overrule this objection by the City.[9]

7. Also, the City argues that paragraphs 34 and 58 of the Proposed Sale Order should be deleted as there is no justification for a waiver of the stay instituted under FED. R. BANKR. P. 6004(h) and 6006(d).[10] Both these provisions explicitly contemplate the possibility of waiver by the Court. *See* FED. R. BANKR. P. 6004(h) and 6006(d). In fact, this Court has regularly waived the stay of orders under Sections 363 and 365. *See*, *e.g.*, *In re American Community Newspapers LLC*, No. 09-11446, *14 (KJC), 2009 WL 7215682 (Bankr. D. Del. June 2, 2009); *In re Verasun Energy Corp.*, No. 08-12606 (BLS), 2009 WL 7215669, *15 (Bankr. D. Del. Apr. 6, 2009). There are compelling reasons in this case to waive the stays instituted by FED. R. BANKR. P. 6004(h) and 6006(d).

8. In *In re Boscov's Inc.*, a case cited by the City, the court waived the automatic stay of orders under Sections 363 and 365. No. 08-11637 (KG), 2008 WL 4975882, *2

---

description provided in connection with the deed of trust executed in favor of KeyBank, as Administrative Agent, in 2007.

[8] City Objection, ¶ 11.

[9] Ultra hereby reserves its right to file a supplemental reply to the extent it is unable to resolve the legal/title description issues with the City.

[10] City Objection, ¶ 15.

5

(Bankr. D. Del. Nov. 21, 2008). That case held that "[a] court may reduce or waive the ten day stay period when there is a sufficient business need to close the transaction." *Id.* (citing *In re PSINET Inc.*, 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001)). Other courts have granted waivers of the stay in similar circumstances. In *Hower v. Molding Sys. Eng'g Corp.*, the Seventh Circuit upheld the lower court's waiver where a debtor had little money, had to make payroll and the objecting creditor had a slim chance of prevailing on appeal. 445 F.3d 935, 938 (7th Cir. 2006). Similarly, the First Circuit affirmed a lower court's waiver of the stay when the price of the sale under Section 363 was reasonable, the buyer was ready to complete the sale the next day, and there would be more costs incurred if the sale was delayed. *Yamaha Motor Corp., USA v. Perry Hollow Management Co., Inc.* (*In re Perry Hollow Management Co., Inc.*), 297 F.3d 34, 41 (1st Cir. 2002).

9. The Debtor's present funding is tenuous, at best, and presents an overwhelming business need to close the sale of the Real Property to Ultra as soon as possible. The Debtor's DIP financing has expired and while Associated has agreed to fund the Debtor's expenses for the time being, it is under no obligation to continue to do so in the future.[11] Without such support from Associated, the Debtor would be left with little to no source of liquidity to fund the bankruptcy case to its conclusion. Clearly, the Debtor's need for dependable funding qualifies, under the standard set forth in *Boscov's Inc.*, as sufficient justification for waiving the stay as provided for in FED. R. BANKR. P. 6004(h) and 6006(d). The lengthy appeals and certification process advocated by the City could doom the Debtor's proposed sale of the Real Property to Ultra. On the other hand, waiving the stay and allowing Ultra and the Debtor to proceed to immediate closing on the APA as

---

[11] Motion of the Debtors Pursuant to Sections 361, 363(c) and 363(e) of the Bankruptcy Code, Rules 4001(b) and (d) of the Bankruptcy Rules and Local Rule 4001-2 for Entry of Order Approving Continued Use of Cash Collateral and Providing Adequate Protection, ¶ 7, n. 2. (Doc. No. 399).

soon as possible will maximize the value of the estate, provide the Debtor with a desperately needed source of cash and facilitate the successful resolution of this bankruptcy case.

10. The City plans to seek certification of the dispute over the CS Agreements to the Colorado Supreme Court for decision.[12] The Colorado Appellate Rules do not permit U.S. Bankruptcy Courts to certify questions to the Colorado Supreme Court for decision. *See* COLO. APP. R. 21.1(a) ("The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, or United States Court of Claims…"); *see generally*, *e.g.*, *In re Phillips*, 139 P.3d 639, 641 (Colo. 2006) (agreeing pursuant to C.A.R. 21.1(a) to answer a question certified by the U.S. District Court for the District of Colorado); *Smith v. Walker*, 924 P.2d 155 (Colo. 1996) (resolving question certified by a U.S. District Court in connection with an appeal originating in bankruptcy court); *General Electric Capital Corp. v. Manager of Revenue and Exofficio Treasurer for the City and County of Denver* (*In re W. Pac. Airlines, Inc.*), 273 F.3d 1288, 1290-91 (10th Cir. 2001) (Colorado Supreme Court declined to answer question certified from a bankruptcy court).

## II. The KeyBank Objection.

11. The KeyBank Objection contends that any ruling on the issues raised by the City in its previous objections to the Sale Motion and the Response must be consistent between the estates of the Debtor and Devco, and must apply equally to the Debtor's sale and the Devco sale.[13] Ultra disagrees. Consummation of the APA and the Devco sale transaction, by virtue of the vastly different natures and intended uses of the potential purchasers, will necessarily put the respective properties in substantially different circumstances. This fact alone warrants separate adjudication of the effect of the CS Agreements on the potential purchaser of each property.

---

[12] City Objection, ¶ 16.

[13] KeyBank Objection, ¶ 17.

7

Different treatment with respect to the CS Agreements and the respective properties may be justified.[14] Such is the situation resulting from the separate sale transactions by the Debtor and Devco of their respective assets, including real property, to different buyers.

12. The CS Agreements do not create obligations that are, as KeyBank contends, "shared between the estates". Because the obligations contained in the CS Agreements are entirely contingent upon development for residential and commercial use, Devco, as the owner of more developed land, necessarily has a different set of obligations under the CS Agreements than does the Debtor. The Debtor and Devco are each parties to the CS Agreements in their individual capacity, not jointly. As it has made clear in its Response, Ultra intends to use the Real Property for different purposes than the proposed post-sale use of Devco's property. Thus, there is no factual or legal justification for automatically extending any ruling with respect to the City and the Debtor to Devco.

**III. The Associated Objection.**

13. The Associated Objection is primarily concerned with clarifying how the proceeds of the Debtor's sale of the Real Property to Ultra will be used. Ultra has no position with respect to the use of the Sales Proceeds (as defined in the Proposed Sales Order). Ultra's neutrality on this issue is appropriate and reflected in the language of paragraph 32 of the Proposed Sales Order as currently drafted, which provides that the net sale proceeds realized by the Debtor shall be held in escrow by

---

[14] Ultra takes no position with respect to the CS Agreements' continued applicability to Devco's property, and has undertaken no analysis of the issues implicated by a Devco rejection motion, such as whether the CS Agreements are executory contracts as to Devco. However, to the extent that Devco is a party to the CS Agreements, Ultra agrees that this Court's approval of Devco's rejection of the agreements as executory contracts would be effective as to its potential purchaser, for the reasons stated in the Response. Moreover, to the extent that the CS Agreements constitute executory contracts between the Debtor and Devco, the Debtor's rejection of the CS Agreements would have the same effect on Devco that it would on the City, with any rejection damages claims asserted by Devco against the Debtor being treated as prepetition unsecured claims against the Debtor.

the Debtor pending a further order of this Court regarding the disposition of such proceeds. If Associated is able to reach agreement with the Debtor on a proposed revision to the Proposed Sale Order addressing the disposition of the net sale proceeds by the conclusion of the Sale Hearing, Ultra would consider including such a mutually-agreed provision in the sale order ultimately submitted to this Court, provided that any such language in no way adversely affects Ultra.

14. Associated also objects to the conditions, as contained in the APA or codified in the Proposed Sale Order, to Ultra's obligations to consummate the purchase of the Real Property from the Debtor.[15] All of these conditions are standard in real estate and Section 363(b) transactions of this type. As such, Associated's objection to these conditions should be overruled.

[Continued on Next Page]

---

[15] Associated Objection, ¶ 5.

**Conclusion**

WHEREFORE, for all of the reasons discussed herein, Ultra requests that this Court (i) overrule the Sale Order Objections in their entirety; (ii) approve the Sale Motion and enter the Proposed Sale Order; and (iii) grant Ultra such other and further relief as to which it may be entitled.

Dated: Wilmington, Delaware
        July 26, 2011

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (No. 3553)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: gwerkheiser@mnat.com

- and -

Michael E. Foreman
Haynes & Boone, LLP
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989
Email: michael.foreman@haynesboone.com

-and-

Patrick L. Hughes
Haynes & Boone, LLP
1 Houston Center
1221 McKinney Street
Suite 2100
Houston, TX 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
Email: patrick.hughes@haynesboone.com

*Attorneys for Ultra Resources, Inc.*